**J. DAVID NICK, Esq. (**SB#157687)
99 Osgood Place, Ste 1
San Francisco, CA 94133
Tel: (415) 552-4444
Fax: (415) 358-5897

**EDITTE  LERMAN, Esq. (**SB#241471)
45060 Ukiah Street
P.O. Box 802
Mendocino, CA 95460
Tel: (707) 937-1711
Fax: (707) 937-2207

Attorneys for Plaintiff
ZACHARIAH JUDSON RUTLEDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

\* \* \* \* \* \*

| | |
|---|---|
| ZACHARIAH JUDSON RUTLEDGE, | CASE NO.:  CV 07-04274 CW |
| Plaintiff, | **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| COUNTY OF SONOMA, MICHAEL POTTS, RUSSEL L. DAVIDSON, JAMES PATRICK CASEY, CHRISTINE M. COOK, BEAU R. MARTIN, J. MICHAEL MULLINS, STEPHAN R. PASSALACQUA, GREG JACOBS, SONOMA COUNTY SHERIFF'S DEPARTMENT, SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE, and DOES 1 through 40. | Date:    June 12, 2008 Time:    2:00 p.m. Courtroom: 2 (4th Floor) Judge: Hon. Claudia Wilken |
| Defendants. | |

1    COMES NOW Plaintiff, Zachariah Rutledge, and respectfully requests that the Court

2 take judicial notice, pursuant to Rules 201 and 302 of the Federal Rules of Evidence, of the

3 following documents:

4  Exhibit 1 -    Search Warrant Affidavit;

5
6  Exhibit 2 -    Plaintiff's claim submitted to the Sonoma County Board of Supervisors, dated
                  March 6, 2007;

7  Exhibit 3 -    Sonoma County's denial of claim issued by Sonoma County Risk Manager, dated
8                  June 26, 2007;

9  Exhibit 4 -    Plaintiff's Application to Reinstate the Original Claim or in the Alternative for
                  Permission to Present a Claim not timely Presented, submitted to VCGCB, dated
10                 August 8, 2007;

11  Exhibit 5 -    Petition for Order Relieving Petitioner from Provisions of Govt Code § 945.4.
                   (without attached supporting exhibits) , filed on March 5, 2008 in the Superior
12                 Court of Sonoma County;

13  Exhibit 6 -    Notice of Hearing on Petition for Order Relieving Petitioner from Provisions of
14                 Govt Code § 945.4;

15  Exhibit 7 -    Denial of Plaintiff's claim issued by VCGCB, dated March 27, 2007;

16  Exhibit 8 -    Arrest Warrant.

17    A court may take judicial notice of matters of public record in ruling on a Rule 12(b)(6)

18 motion. _Lee v. City of Los Angeles_ (9th Cir. 2001) 250 F.3d 668, 689   Additionally, in accordance

19 with the Federal Rules of Evidence 301, the official record from the California Government

20 Claims Program at the Victim Compensation and Government Claims Board, formerly the State

21 Board of Control, concerning the untimely "claim" by plaintiff is subject to judicial notice. State

22 of California Courts take judicial notice of this document under California Evidence Code § 452(c)

23 regarding official acts of a legislative/executive department of a state. Further, in _Chas. L. Harney_

24 _v. State of California_ (1963) 217 Cal.App.2d 77, 85-86, the California Court of Appeal ruled that

25 the files of the Board of Control can be judicially noticed for purposes of a demurrer.

26
PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

2      Dated:  May 22, 2008

3      Respectfully submitted,

4

5      ------------------/s/------------------
       Editte Lerman

6      Attorney for Plaintiff
       Zachariah Rutledge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**DECLARATION OF SERVICE**

I, Editte D. Lerman, declare as follows:
I am a resident of the State of California, residing or employed in Mendocino, California.
I am over the age of 18 years and am not a party to the above-entitled action. My business
address is 45060 Ukiah Street P.O. Box 802, Mendocino C.A. 95460.

On May 23, 2008,

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

was filed and served upon the following parties via the Court's PACER-ECF electronic
filing system.

***Attorneys for Defendant Michael Potts***
EDMUND G BROWN, JR.
Attorney General of the State of California
JOHN P. DEVINE, ESQ.
Deputy Attorney General of the State of California
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

***Attorneys for Defendants County of Sonoma, Sonoma County Sheriff's
Department, Sonoma County District Attorney's Office, Stephan Passalacqua,
J. Michael Mullins, Greg Jacobs, Christine M. Cook, Russel L. Davidson,
James Patrick Casey, and Detective***
Beau M. Martin
Michael D. Senneff
Bonnie A. Freeman
SENNEFF FREEMAN & BLUESTONE, LLP
50 Old Courthouse Square, Suite 401
P.O. Box 3727
Santa Rosa, CA 95402-3729


I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed this 23rd day of May, 2008, at Mendocino, California.


---------------/s/-------------------
Edite Lerman

Exhibit 1

STATE OF CALIFORNIA · COUNTY OF SONOMA

# SEARCH WARRANT AND AFFIDAVIT

## (AFFIDAVIT)



FILE

MAY 13 2002

Clerk of the Superior Court of Calif.
County of Sonoma
_____ Deputy Clerk

<u>DETECTIVE BEAU R. MARTIN, SONOMA COUNTY SHERIFF'S DEPARTMENT,</u>
being sworn, says that on the basis of the information contained within the Search Warrant and Affidavit and the attached and incorporated **Statement of Probable Cause**, he/she has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)    NIGHT SEARCH REQUESTED: YES ( ) NO (✓)

Prepared with the assistance of or reviewed by:

_____
Deputy District Attorney

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SONOMA.** Proof by Affidavit having been made before me by **DETECTIVE BEAU R. MARTIN**, that there is Probable Cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524, as indicated below by "X"(s) in that it:

——————   was stolen or embezzled

__X__   was used as the means of committing a felony

__X__   is possessed by a person with the intent to use it as a means of committing a public offense or is possessed by another to whom he/she may have delivered it for the purpose of concealing it or preventing its discovery

__X__   is evidence which tends to show that a felony has been committed or that a particular person has committed a felony

——————   tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3, has occurred or is occurring.

AFF/SW-1

## YOU ARE THEREFORE COMMANDED TO SEARCH:

1. **21914 Duncan Road, Monte Rio, County of Sonoma:** more particularly described as a single story, single family residence, gray in color with white trim, and a dark brown composition roof. The front door faces the east. The windows are trimmed with light colored bare wood. The house is tied into number 21912 for power. The residence is located to the rear of and northeast of number 21912. The numbers 21914 appear on a tile address plate over the front carport area.

2. **20240 Chapel Street, Monte Rio, County of Sonoma:** more particularly described as a two story dwelling, with the lower floor being a separately rented apartment not associated with the suspect. The dwelling is light green with dark green trim. The residence has a black composition roof. The front door faces the north and the numbers 20240 appear on the front entry walkway, and also separately above the front doorway. The dwelling is enclosed by an unfinished fence line with over grown shrubs and briar bushes. The suspect rents a room within the top floor of the dwelling and the room is located in the southwest corner of the top floor.

Said search to include all rooms, attics, basements and other parts located within the aforementioned residence; the surrounding grounds and any storage areas, trash containers and outbuildings of any kind located thereon and specifically designated for the sole use of said residence.

3. Any and all vehicles under the dominion or control of any and all tenants of the aforementioned residence.

## FOR THE FOLLOWING PROPERTY:

1. Photographs of scene and adjacent areas;
2. Measurements and sketches of scene and adjacent areas;
3. Weapons; such as knives, bludgeons, guns, ropes or other restraining devices;
4. Expended and unexpended bullets, cartridge casings, waddings and other projectiles;
5. Objects, or portions thereof, possessing suspected bullet damage;
6. Any and all instruments used to aid and abet in the commission of the crime;
7. Clothing of the suspect(s) and victim(s);
8. Photographs and film, developed or undeveloped, from the scene;
9. Written material pertaining to the victims and/or homicide such as journals, diaries, ledgers, and hand written notes. Also to include correspondence containing names, addresses, and phone numbers of victim(s) and possible suspect(s) and witness(es);

AFF/SW-2

10. Written material containing statements showing ill feelings, threats and other possible motives between victim(s) and possible suspect(s);

11. Written material showing ownership and/or possession of firearms, ammunition and any other weapons associated with this crime;

12. Written material showing ownership or occupancy of building, structure, residence, room or vehicle;

13. Alcohol, medications, narcotics, dangerous drugs and other intoxicants, as well as paraphernalia for the use or sale of the preceding, including but not limited to syringes, spoons, inhalers, roach clips, bottle caps, scales, balloons, condoms and/or cutting agents;

14. Articles of personal property tending to establish the identity of persons in control of any premises, storage areas or containers being searched, such as utility company receipts, rent receipts, charge card receipts, tax receipts, airplane tickets and other receipts, checks, deposit slips, savings account passbooks, passports, drivers licenses, vehicle registration/titles, land titles, escrow papers, legal documents, Social Security cards, Food Stamps, Medi-Cal cards, insurance bills and/or policies, medical records, prescriptions and prescription bottles, doctor bills, hospital bills, cancelled mail, addressed envelopes, photographs, weapons with serial numbers, keys and safes;

15. Computer equipment including processors, monitors, keyboards, terminals, hard disk drives, floppy disk drives, tape drives, floppy disks (diskettes), modems, cartridges, tapes, computer disks (CD-ROM's), compact disks (CD's), laser disks, video cassettes, recording devices and players for any such recording media, and any information or data stored in a media capable of being read by a computer or other electronic data storage device.

16. Any and all electronic day planners located within said residence for any and all evidence pertaining to this case;

You are authorized to defeat any and all security and/or passwords.

AND TO SEIZE IT IF FOUND and bring it forthwith before me, or this court, at the courthouse of this court. Any item seized during the lawful service of the search warrant shall be disposed of in accordance with law by the Sonoma County Sheriff's Department upon adjudication of the case. The officers serving the search warrant are hereby authorized, without necessity of further court order, to return seized items to any known victim(s) if such items have been photographically documented.

This Search Warrant and incorporated Affidavit were sworn to and subscribed before me this ____ day of May, 2002, at 2:13 A.M./P.M. Wherefore, I find Probable Cause for the issuance of this Search Warrant and do issue it.

AFF/SW-3

_____ NIGHT SEARCH APPROVED: YES ( ) NO (X)
(Signature of Magistrate)
Judge of the Superior Court, County of Sonoma
State of California

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

AFF/SW-4

11/01/2005  18:11    707-565-2762                SO CO D A SOUTH END

## STATEMENT OF PROBABLE CAUSE

I am presently assigned to the Sonoma County Sheriff's Department Investigations Bureau, Violent Crimes Division, and have been so assigned since August of 2000. Prior to that, I was assigned to the Sonoma County Sheriff's Department Patrol Division from February of 1995 until August of 2000. Prior to that, I was employed as a Correctional Officer with the Sonoma County Sheriff's Department from November of 1988 until February of 1995.

During my employment as a law enforcement officer, I have assisted in the service of numerous search warrants including stolen property, narcotics, and homicide cases.

I attended the 704-hour Basic P.O.S.T. Training Academy (1994) and hold Basic (1996) and Intermediate (2001) P.O.S.T. certificates. Both as a Correctional Officer and Deputy Sheriff, I have received the following specialized training: a 200-hour P.O.S.T. Correctional Officer Academy (1988); an 80-hour Defensive Tactics/Use of Force Instructor's course (1993); a 16-hour Interview and Interrogation course (1993); a 16-hour 11550 H&S Drug Influence Recognition Course (1993); a 24-hour Gang Recognition course (1994); a 24-hour Cal-Gang computer system course taught by the Sonoma County Sheriff's Department (1998); an 8-hour course of training to conduct official Interception of Wire Communication, as authorized in Chapter 13 of the California Penal Code, offered by the Department of Justice (1998); a 24-hour Bombs and Explosive Devices course (1998); a 32-hour Criminal Street Gang and Criminal Intelligence course provided by the Department of Justice and the Attorney General's Office (1999); a 32-hour Advanced Highway Interdiction course (Desert Snow – 1999); a 16-hour P.O.S.T. Internal Affairs course (2000); a 24-hour California Homicide Investigators Association Training Seminar (2000); a 40-hour Behavior Analysis Investigative Interview and Interrogation Techniques course offered by the Behavior Analysis Training Institute (2001); a 76-hour Homicide Death Investigation course offered by the California Department of Justice Training Center (2001); a 36-hour Investigation of Officer Involved Shooting course offered by the California Department of Justice Advanced Training Center (2001); a 16-hour "Investigation of Crime: Bugs, Bones and Bodies" bi-annual training conference offered by The Center for Medicolegal Research and Consultation (2001) and a 40-hour Cold Case Investigation course offered by the California Department of Justice Advanced Training Center (2001). Further, I have received training and qualify as an instructor in PepperBall (2000), Chemical Agents (2000) and Police Close Defense (2000).

During my employment as Correctional Officer, I held several collateral assignments, including Gang Recognition Officer, Drug Influence Recognition, Use of Force/Defensive Tactics Instruction and assisted in writing the departmental policy and procedure regarding use of force.

During my employment as a Deputy Sheriff, I have held several collateral assignments, including Use of Force/Defensive Tactics Instructor, Impact Weapons Instructor, Less Lethal – Pepperball Instructor, Chemical Agents Instructor, Tactical Response Team member, Honor Guard, Rifle Team member and Bicycle Patrol.

In addition to the above courses, I attend legal update classes on a yearly basis and attend annual 24-hour Block Training courses provided by the Sonoma County Sheriff's Department, which include a variety of P.O.S.T certified courses.

Furthermore, as a Deputy Sheriff, I maintain a basic knowledge of current laws relating to Fourth Amendment, Search and Seizure Rules. This is accomplished by reviewing such publications as Legal Update, PORAC News Bulletins and the Sonoma County Sheriff's Department Pre-event Training Bulletins.

On May 8, 2002, at 0800 hours, the Honorable Judge Elliott Daum of the Sonoma County Superior Court issued an arrest warrant for Zachariah Ruthledge for two counts of 187(a) PC, to wit murder.

Ruthledge was surveilled from his primary residence of 21914 Duncan Drive, which is located at the northwest corner of Duncan Drive and Highway 116 in Monte Rio. Surveillance continued to the town of Guerneville where Detectives Russ Davidson and Brad Burke contacted Ruthledge.

At 1045 hours Ruthledge was contacted and subsequently arrested pursuant to the arrest warrant. During the contact with Ruthledge, he advised detectives that an hour prior to the contact he began moving into 20420 Chapel Street in Monte Rio, but stated that his primary residence is still 21914 Duncan Road, Monte Rio.

At 1115 hours I made contact with Teresa Littlefield, the primary resident at 20420 Chapel Street in Monte Rio. She confirmed that Ruthledge began moving in this morning, and that he was share-renting a room within the dwelling. She escorted me through the residence and identified Ruthledge's room through the open doorway. I observed items she identified as belonging to Ruthledge inside of the room. The room was secured pending service of a search warrant.

It is my experience and training that the search and/or seizure of the above described properties are necessary in proving the crime, the circumstances involved related to the crime, and to circumstantially identify the perpetrator of the crime. The evidence of dominion and control as described is necessary in establishing dominion and control over the premises and often assists in identifying the perpetrator, as it is common for the victim to be familiar with the perpetrator prior to the crime. Such evidence is normally left or maintained upon said premises by those in control or by those visiting such

11/01/2005  16:11    707-565-2782

premises, and that a thorough search of the premises is necessary in order to establish the location of the crime, it's extent and the circumstances surrounding the crime.

Based on my experience and expertise, along with the information documented above, I believe that evidence relating to the homicides of **Horst Hans Grablmann** and **Jason Aaron Blore** will be found on the premises located at **21914 Duncan Road, Monte Rio, County of Sonoma**; and **20420 Chapel Street, Monte Rio, County of Sonoma**.

I swear under the penalty of perjury that the aforementioned facts are true and accurate to the best of my knowledge. Signed this _8__ day of May , 2002, at Santa Rosa, California.

DETECTIVE BEAU R. MARTIN

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

PC-3

Exhibit 2

SUBMIT TO:
Board of Supervisors
575 Administration Dr. 100A
Santa Rosa, CA 95403

## COUNTY OF SONOMA CLAIM FORM
(Government Code Section 910. et seq.)

For Board of Supervisors' Data Stamp Only

Claim is Against: ☒ County of Sonoma  OR  ☐ _____ District/Agency

Please check one: ☒ New Claim  ☐ Amended Claim

**(Instructions on back of form. If more space is needed, attach additional pages.)**

1. Name of Claimant: _Zachariah_ _Judson_ _Rutledge_
   First          Middle          Last

2. Address: _45060 Ukiah Street, P.O. Box 802, Mendocino, CA 95460_
   Number    Street         City        State      ZIP

3. Phone Number: Area Code: _707_  Number: _937-1711_

4. Name, Address and Phone No. of person(s) to receive notices. (If same as above, write "same".)
   _Editte Lerman, Esq. P.O. Box 802, Mendocino, CA 95460_

5. Date/Time of loss, damage or injury: Month: _May_  Day: _8_  Year: _2002_  Time: _10:00 AM._

6. Location of loss, damage or injury: _Initial injury occured at "Cinnabar" shop at_
   _14045 Armstrong Woods Road, Guerneville, CA. and continued to October 10, 2006._

7. Description of loss, damage or injury: _See attached additional page_

8. How did the loss, damage or injury occur? _All losses and damages arose out of the May 8, 2002_
   _arrest of claimant and are documented in the files of the Sonoma County Superior Court Case_
   _Nos. SCR32528 and MCR 44363._

9. Name(s) of County employee(s) causing loss, damage or injury, if known: _All members of the prosecutorial_
   _team connected to Sonoma County Superior Court Case Nos. SCR32528 and MCR443363. See Atta_

10. Amount claimed at present including estimated amount of any prospective loss: _Est. $4,000,000.00_
    _(Four Million Dollars)_

11. Name(s) and addresses of witnesses, doctors and/or hospitals: _____

**Claim must be signed and dated by claimant or person acting on claimant's behalf.**

Signature: _[signature]_

Date: _March 6, 07_

Distribution: Original: Clerk of the Board; Copy: Risk Management

s:\liability\claimform\claimfrm.doc(09/30/02)

For Risk Management Data Stamp Only

# Law Office of
# E.D. Lerman, Esq.

45060 Ukiah St.
PO Box 802
Mendocino, CA 95460
(707) 937-1711

March 6, 2007

Attachment to COUNTY OF SONOMA CLAIM FORM submitted by Zachariah Rutledge

Sonoma County Board of Supervisors
575 Administration Dr. 100A
Santa Rosa, CA 95403

Re:    Tort claims in connection to *People v. Rutledge*

The following is a continuation and attachment to COUNTY OF SONOMA CLAIM FORM dated March 6, 2007.

Each numbered paragraph corresponds to respective numbered sections within the attached COUNTY OF SONOMA CLAIM FORM.

7.    All damages and injuries are fully documented in, and are connected to, Sonoma County Superior Court  Case Nos.: SCR 32528 and MCR 443363. All documents on file in Sonoma County Superior Court  Case Nos.: SCR 3528 AND MCR 443363, are hereby incorporated within this claim. Damages and injuries including: violations of civil rights provided by the 1st, 4th, 5th, and 6th amendments of the U.S. Constitution and Art 1 §§ 1, 2, 4, 6, 7, 13, 5, and 24, assault, battery, libel, slander, abuse of process, , due process violations, excessive force, physical brutality, denial of medical attention, medical malpractice, negligence, verbal abuse and harassment, interference with family relationships, false accusation, forensic fraud, conspiracy, false imprisonment, false arrest, false accusation, intentional wrongs, false representation – the production of false affidavits in support of arrest and search warrant, overt acts or the purpose of depriving claimant his rights provided under the U.S. Constitution and the California State Constitution.

9.    The following are the known Sonoma County employees causing loss, damage and injury: Russell Davidson, Bradford J. Burke, Bruce Rochester, Dr. Luders, Dr. Hibbard, Dr. Malarik, James Casey, Greg Jacobs, Michael Potts, Christine Cook, Dan Carr, Diana Gomez, Stephen Passalaqua, Officer Shmidt, Officer Bennet, Officer Weber, Officer Bogue, Officer Betcher, Officer McAlvain, Officer Ricketson, Officer Ridenhour, Detective Delancy, and Does 1-100.

Sincerely,

E. D. Lerman Esq.

Exhibit 3



575 Administration Drive, Suite 116B
Santa Rosa, CA 95403
Telephone (707) 565-2331
Fax (707) 565-3770
www.sonoma-county.org

ANN GOODRICH, *HR Director*



OPPORTUNITY · DIVERSITY · SERVICE

*Recruitment • Classification • Employee Relations • EEO • Training • Risk Management*

June 26, 2007

Editte Lerman, Esq.
45060 Ukiah Street
P. O. Box 802
Mendocino, CA 95460

**SUBJECT:       NOTICE OF REJECTION OF CLAIM**
**CLAIMANT:      Zachariah Rutledge v. County of Sonoma**
**DATE OF LOSS:  10/10/2006**
**CLAIM NO:      GC020484**

Dear Ms. Lerman:

The claim you presented to the Sonoma County Board of Supervisors on March 7, 2007 has been referred to the Risk Manager pursuant to Board of Supervisors Resolution No. 66798 and California Government Code Section 935.4.

NOTICE IS HEREBY GIVEN that said claim was rejected on June 26, 2007.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. (See California Government Code Section 945.6.) You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

This notice applies only to causes of action arising under California law for which a claim is mandated by the California Government Tort Claims Act, California Government Code sections 900 et. seq. Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

If you would like to discuss your claim further, please call Cecilia Quiambao at (707) 565-2885.

Sincerely,

Marciá Chadbourne
Risk Manager

MC/geb

c:      Stephan R. Passalacqua, District Attorney

Exhibit 4

# Law Office of
# E.D. Lerman, Esq.

45060 Ukiah St.
PO Box 802
Mendocino, CA 95460
(707) 937-1711

August 8, 2007

    Re:  Denied claim G566507 for Zachariah Rutledge

Government Claims Program
400 R. Street, 5th Floor
Sacramento, CA 95814

   The following is an initial application to the public entity to reinstate the original claim or in the alternative for permission to present claim not timely presented[1].

   Cal Gov Code § 911.2 provides in part:

   (a) A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the **accrual** of the cause of action.

   Cal Gov Code § 901 provides in part:

   For the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 912, and 945.6, **the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued** within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon.

   Cal Gov Code § 911.4 provides in part:

   (a) When a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim.

   (b) The application shall be presented to the public entity as provided in Article 2 (commencing with Section 915) within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim. The proposed claim shall be attached to the application.

   (c) In computing the one-year period under subdivision (b), the following shall apply:

   (2) The time shall not be counted during which the person is detained...

---

[1] Note: this application is submitted as a precaution, while <u>not</u> stipulating or admitting that the original claim, claim number G566507, was untimely filed. Claimant believes that the claim was timely filed.

Page 1 of 2
Request to reinstate claim or in the alternative for permission to present claim not timely presented.

"The entire sequence of events giving rise to the injury is regarded as the 'occurrence from which the damage arose,' for damages can be assessed accurately only when the sequence is completed and the total injury taken into account." Natural Soda Products Co. v. Los Angeles (1943) 23 Cal. 2d 193, 203  See also, Lee v. Los Angeles County Metropolitan Transportation Auth. (2003) 107 Cal. App. 4th 848 (an action for continuous and repeated damage to real property based on inverse condemnation and nuisance, the cause of action does not accrue until the situation has stabilized.)  Therefore, the claimant may treat the entire sequence of events at the occurrence from which the claim arose and compute the time to present a claim from the last event in the series.

This immediate matter arose out of the arrest, and detainment of the claimant which occurred on May 8, 2002.  The detainment continued until the claimant's release, on September 24, 2006.  Thus, the accrual of the cause of action did not occur until September 24, 2006.  Additionally, time in which the claimant was detained, or in custody, "shall not be counted" for purposes of submitting an alleged late claim. Therefore, the claimant's claim was timely filed.

Please, reinstate the attached claim, or in the alternative, permit the claim to be filed untimely.

Sincerely,

E. D. Lerman Esq

Attachments:    verdict, initial claim filed

Request to reinstate claim or in the alternative for permission to present claim not timely presented.

Exhibit 5

/

1  **E.D. Lerman, Esq.** (SB#241471)
   45060 Ukiah St.
2  P.O. Box 802
   Mendocino, CA 95460
3  Tel :(707) 937-1711
   Fax:(707) 937-2209
4
   **Attorney for Defendant**
5  **Zachariah Rutledge**

6

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                           COUNTY OF SONOMA
9                                * * * * * *

10  In the matter of ZACHARIAH RUTLEDGE )        Case No.:
                                        )          SCV  242473
11  ZACHARIAH RUTLEDGE                  )
                                        )        **PETITION FOR ORDER RELIEVING**
12                 Petitioner,          )        **PETITIONER FROM PROVISIONS**
                                        )        **OF GOVT CODE § 945.4**
13  v.                                  )
                                        )
14                                      )
                                        )        Date:
15  MICHAEL POTTS                       )        Time:
                                        )        Dept:
16                                      )
                                        )
17                 Respondent.          )

18

19      Petitioner, acting under Government Code § 946.6, petitions the Court as follows:

20  1.    Petitioner ZACHARIAH RUTLEDGE, is an individual, who at the time of the

21  underlying incident was a resident of Sonoma County. Petitioner is presently a resident of

22  the County of Placer, California.

23  2.    Respondent MICHAEL POTTS is was at the time of the incident a local entity of the

24  State of California within the meaning of Part 3 (beginning with Section 900) of Division 3.6 of

25  Title 1 of Government Code.

26                                  Page 1 of 4
        PETITION FOR ORDER RELIEVING PETITIONER FROM PROVISIONS OF GOVT CODE § 945.4

ENDORSED
FILED

MAR 5 - 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

3.      On August 8, 2007, Petitioner, submitted to the California Victim Compensation and
Government Claims Board of respondent, as its governing board, a written application for leave
to present a late claim for damages on behalf of petitioner under Government Code §§9911.4
and 911.6.  A copy of the attached application, designated as **Exhibit A**, is incorporated in this
petition. The application was denied by Respondent's failure to respond

4.      Petitioner's claim is based on a causes of action for violations of Petitioner's civil rights
including but not limited to unlawful search and seizure, and violations of due process, and torts
including but not limited to false arrest, false imprisonment, assault battery, which accrued on
September 24, 2006, and for which a claim was presented within the 6-month period provided
by Government Code §911.2.  However, Respondent deemed Petitioner's claim to be untimely.
For additional circumstances relating to the cause of action, and for the information required by
Government Code §910, reference is made to the proposed claim attached to the application
previously presented to the respondent, designated as **Exhibit B**, which is attached to and
incorporated in this petition.

5.      If the Government is correct that the claim was untimely, the reason that no claim was
presented within the 6-month time limit under Government Code §911.2 is that the Petitioner
was incarcerated pending trial, during which the injury continued.   The Petitioner was being
charged for two courts of murder with special circumstances, and was being held without bail.
While the Petitioner was incarcerated, the Petitioner, neither believed that he was required to
file a claim while his injury is ongoing, nor could the Petitioner risk retaliation by the
Government for filing the claim while he was incarcerated and facing criminal charges of such a
serious nature.   Petitioner's fear of retaliation was supported by the fact that the Government
has fabricated evidence against the Petitioner in an effort to support their prosecution in the
underlying criminal case.

1   6.    If the matter did not accrue on September 24, 2006, the failure to present the claim

2   within the 6-month time limit under Government Code §911.2 was through mistake,

3   inadvertence and excusable neglect, where the Petitioner believed that the injury connected to

4   his claim was ongoing, and did not reach completion until September 24, 2006.  If the injury

5   reached its completion at any time prior to September 24, 2006, Petitioner could not file a claim

6   because it may jeopardize the underlying criminal matter and Petitioner believed that he would

7   suffer retaliation by members and/or agents of Respondent's prosecutorial team.

8   7.    Petitioner's application to the respondent's governing board, described in paragraph 2,

9   was made within a reasonable time after the cause of action accrued, as more particularly shown

10  by the attached application, designated as **Exhibit A**, is incorporated in this petition.

11

12   WHEREFORE, petitioner respectfully requests that this petition be granted and that this Court

13  order that petitioner be relieved from the requirements of Government Code §945.4.

14

15        Date: March 4, 2008

16

17

        E.D. Lerman, Esq.
18      Attorney for Petitioner
        **Zachariah Rutledge**
19

20

21

22

23

24

25

26                                   Page 3 of 4
        PETITION FOR ORDER RELIEVING PETITIONER FROM PROVISIONS OF GOVT CODE § 945.4

1

**VERIFICATION**

2          I, Editte Lerman, declare as follows:

3          I, Editte Lerman, am an attorney at law licensed to practice in the State of

4   California and am an attorney of record for Petitioner herein.

5          I have read the foregoing Petition for Order Relieving Petitioner From Provisions

6   of Gove Code § 945.4, and have personal knowledge, and information and belief that

7   the matters set forth therein are true and correct, and on that basis allege them to be true

8   and correct. In accordance with California Civil Procedure Code section 446, I am

9   verifying this Petition because I have knowledge, and information and belief, of the

10  events and facts providing the basis for this Petition, and the Petitioner does not have

    that complete knowledge.

11         I declare under penalty of perjury under the laws of the State of California that

12  based upon my personal knowledge and information and belief, the foregoing is true and

13  correct and that this verification was executed on March 4, 2008 in Mendocino,

14  Mendocino County, California.

15

16  _____
    E.D. Lerman
    Attorney for Petitioner
17  **Zachariah Rutledge**

18

19

20

21

22

23

24

25

26                          Page 4 of 4
    PETITION FOR ORDER RELIEVING PETITIONER FROM PROVISIONS OF GOVT CODE § 945.4

Exhibit 6

1  **E.D. Lerman, Esq. (SB#241471)**
   45060 Ukiah St.
2  P.O. Box 802
   Mendocino, CA 95460
3  Tel :(707) 937-1711
   Fax:(707) 937-2209
4
   **Attorney for Defendant**
5  **Zachariah Rutledge**

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                         COUNTY OF SONOMA
9                            * * * * * *

10 In the matter of ZACHARIAH RUTLEDGE )    Case No.:    SCV 242473
                                        )
11 ZACHARIAH RUTLEDGE                   )    **NOTICE OF MOTION AND**
                                        )    **HEARING ON PETITION FOR**
12              Petitioner,             )    **ORDER RELIEVING PETITIONER**
                                        )    **FROM PROVISIONS**
13 v.                                   )    **OF GOVT CODE § 945.4**
                                        )
14                                      )
                                        )    Date:  JUL - 9 2008
15 MICHAEL POTTS                        )    Time:  3 p.m
                                        )    Dept:  2c
16                                      )
                                        )    3035 CLEVELAND AVE STE 200
17              Respondent.             )    SANTA ROSA CA 95403

18      TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO RESPONENT

19 MICHAEL POTTS AND HIS ATTORNEY OF RECORD, THE ATTORNEY GENERAL OF

20 THE STATE OF CALIFORNIA:

21      PLEASE TAKE NOTICE that on the above date and time, or as soon thereafter as the

22 matter may be heard in the above-entitled Court, located at 3035 Cleveland Ave. Ste 200, Santa

23 Rosa, CA 95403, Petitioner by and through counsel, will and hereby does move and petition this

24

25                              Page 1 of 2
26 NOTICE OF MOTION AND HEARING ON PETITION FOR ORDER RELIEVING PETITIONER FROM
                      PROVISIONS OF GOVT CODE § 945.4

1   Honorable Court for the issuance of an order Relieving Petitioner from the provisions of

2   Government Code § 945.4.

3        This motion and petition will be made on the grounds that the underlying acts of the

4   Respondent accrued on September 24, 2006, the Petition for Order Relieving Petitioner From

5   Provisions of Govt Code § 945.4, the points and authorities therein, on such supplemental

6   memoranda of points and authorities as may hereafter be filed with the court, on all the papers

7   and records on file in this action, and on such oral and documentary evidence as may be

8   presented at the hearing of the motion.

9        Respectfully submitted,

10

11       Date: April 7, 2008

12

13  E.D. Lerman, Esq.

14  Attorney for Petitioner
    **Zachariah Rutledge**

15

16

17

18

19

20

21

22

23

24

25

26

Exhibit 7

 COUNTY OF SONOMA
**HUMAN RESOURCES DEPARTMENT**
OPPORTUNITY · DIVERSITY · SERVICE

575 Administration Drive, Suite 116B
Santa Rosa, CA 95403
Telephone (707) 565-2331
Fax (707) 565-3770
www.sonoma-county.org

ANN GOODRICH, *HR Director*



*Recruitment · Classification · Employee Relations · EEO · Training · Risk Management*

June 26, 2007

Editte Lerman. Esq.
45060 Ukiah Street
P. O. Box 802
Mendocino, CA 95460

| | |
|---|---|
| **SUBJECT:** | **NOTICE OF REJECTION OF CLAIM** |
| **CLAIMANT:** | Zachariah Rutledge v. County of Sonoma |
| **DATE OF LOSS:** | **10/10/2006** |
| **CLAIM NO:** | **GC020484** |

Dear Ms. Lerman:

The claim you presented to the Sonoma County Board of Supervisors on March 7, 2007 has been referred to the Risk Manager pursuant to Board of Supervisors Resolution No. 66798 and California Government Code Section 935.4.

NOTICE IS HEREBY GIVEN that said claim was rejected on June 26, 2007.

## **WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. (See California Government Code Section 945.6.) You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

This notice applies only to causes of action arising under California law for which a claim is mandated by the California Government Tort Claims Act, California Government Code sections 900 et. seq. Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

If you would like to discuss your claim further, please call Cecilia Quiambao at (707) 565-2885.

Sincerely,

*Marcia Chadbourne*

Marcia Chadbourne
Risk Manager

MC/geb

c:    Stephan R. Passalacqua, District Attorney

Exhibit 8

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SONOMA

THE PEOPLE OF THE STATE OF CALIFORNIA,

                                       Plaintiff,

vs.

ZACHARIAH JUDSON RUTLEDGE

                                      Defendant

)
)
)
)
)
)
)
)
)
)
)
)

COURT NO. MCR 398506
D.A. NO.      DAR-443724
DECLARATION IN SUPPORT
OF WARRANT OF ARREST
MADE UNDER
Section 2015.5 C.C.P.

**FILED**

MAY 0 8 2002

Clerk of the Superior Court of California
County of Sonoma
By
Deputy Clerk

THE UNDERSIGNED HEREBY DECLARES:

That he is employed as an authorized representative of the SONOMA COUNTY SHERIFF'S DEPT.

That the violation of Section 187(a)( 2 counts), Section 459( 1 count) of the PENAL CODE, Felonies; were investigated by the SONOMA COUNTY SHERIFF'S DEPT, and were committed by ZACHARIAH JUDSON RUTLEDGE.

That Declarant, by means of personal contact or by means of written communication has obtained information from other officers and from other persons who have knowledge of the above-mentioned offense. The reports and statements of such officers and other persons are attached hereto and incorporated by reference as though fully set forth; that he has reviewed each of these written reports and statements which consist of 17 pages; these reports and statements contain information from victim, witness and others concerning the criminal offense for which this Complaint is being sought;

That this Declaration is made and filed herein for the purpose of showing probable cause for the issuance of a Warrant of Arrest for the above-named Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this  8  day of  MAY , 2002 at Santa Rosa, California.

SONOMA COUNTY SHERIFF'S DEPT

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

## SONOMA COUNTY SHERIFF'S DEPARTMENT
## NARRATIVE/STATEMENT

| | |
|---|---|
| CASE NUMBER | 981024-11 |

| DATE/TIME | INCIDENT/CRIME | | |
|---|---|---|---|
| 10/23/98 | 187(a) PC | | |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE

The following is a case summary.

On Saturday, October 24, 1998, at 8:17 A.M., the Sonoma County Sheriff's Department Communications Center received a telephone call from Mr. OTTO MEYER. MEYER stated that he was present at 21565 Duncan Road, Monte Rio, to check on the resident, HORST "HANS" GRAHLMANN. MEYER had been attempting to contact GRAHLMANN by telephone between Friday, October 23, 1998, at 4:00 P.M. and Saturday, October 24, 1998, at 8:00 A.M. and repeatedly received a busy signal.

Upon MEYER's arrival at the residence, he found the gate to the driveway at GRAHLMANN's residence closed but unlocked. MEYER stated this was unusual. When MEYER reached the top of the driveway, he found his friend of 30 years, GRAHLMANN, deceased in the front yard of the residence. While searching the inside of the residence for a telephone, MEYER discovered a second deceased person in the living room. MEYER used GRAHLMANN's cellular telephone, which he found in GRAHLMANN's silver VW Rabbit, to call 9-1-1.

Deputies Paul Gregg and Chuck Herzog arrived at the residence and confirmed the presence of two deceased persons. Additionally, they secured the residence and the scene. Detectives from the Violent Crimes Investigations Unit and the Crime Scene Investigations Unit were dispatched to investigate.

At 10:24 A.M., I arrived at the residence. The driveway to the residence is at the end of Duncan Road, where the road is closed by a County gate. The distance between the bottom of the gated driveway and GRAHLMANN's residence is just over 4/10th of a mile. Animal Regulation Officers had to contain GRAHLMANN's two Rotweiller dogs.

There is a circular driveway in front of the residence, starting at the top of the gated driveway. The front of the residence has a deck that extends along the front of the residence, around the north end and around to the backside. There was a silver colored VW Rabbit parked at the south west corner of the front yard. The vehicle was registered to GRAHLMANN. On the ground, near the driver's side of the parked VW Rabbit, there was a knife enclosed within a sheath (#CF-1). The backside of the sheath was facing upward. There was a light blue colored substance on the tip of the knife's blade.

GRAHLMANN was on the ground leaning against the seat of a bench. The bench was located near the south edge of the raised center section of the circular driveway. There did not appear to be any blood on the wood portion of the bench but there was a small amount of bloodstains on the outside of the right metal support leg. GRAHLMANN was laying on this left leg with his upper torso bent over forward. GRAHLMANN's right elbow, forearm, and the outside of his right hand were in direct contact with the ground. Due to this, his head was suspended about 10 to 12 inches from the ground level. His face was oriented downward and there was a

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|
| | | |

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | | | |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

S̶  NOMA COUNTY SHERIFF'S DEPARTMENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME | INCIDENT/CRIME |
|---|---|
| 10/23/98 | 187(a) PC |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |
|---|---|---|
| NARRATIVE: | | |

substantial amount of blood and apparent human tissue matter on the ground directly below his head. Between GRAHLMANN's right index and middle finger, I observed a cigarette butt. There was a tear in GRAHLMANN's T-shirt at the top of his right shoulder.

Directly behind GRAHLMANN, there was a 12-ounce bottle of Beck's beer. The bottle was on the ground, laying about 12 to 14 inches behind him. On the ground, located at the right end of the bench, there was a dark colored baseball cap. The bill of the cap was oriented toward the end of the bench and had fabric tears/damage on the left side.

There was one 7.62 x 39mm empty cartridge casing located on the elevated area behind where GRAHLMANN was located (CF-53). This is the center area, which is surrounded by the circular driveway. I attempted to determine the location from where the bullets originated that caused three bullet holes in the west wall and passed through the kitchen. Detective Flick inserted a laser light source in the holes from inside the back wall of the kitchen cabinet. The laser light took us back toward the far-west edge of the property, on the west side of the parked VW Rabbit. From there, we recovered two additional 7.62 x 39mm empty cartridge casings from the area of the west end of the front yard (CF-55 and CF-56). This portion of the property descends to the closed portion of Duncan Road.

We recovered two expended bullets (#CF-16 and CF-17a), bullet fragments, and shingles with holes in them from the front (west) wall of the residence.

There was a ladder on the deck leading to the roof. There was also a bucket with material consistent with tar for roof repair.

The Honorable Mark Tansil of the Sonoma County Courts issued a search warrant for GRAHLMANN's residence. On the floor of the entryway, just inside the front door, I found a metal earring with apparent tissue on it (CF-26). Upon entering the living room from the entryway, there were two pieces of human tissue and an empty 12-ounce bottle of "Becks" beer on the floor, near a speaker on the west (front) wall.

Victim BLORE's body was laying prone, with his hands underneath his body. I observed blood on the bottom of his shoes. His brain was on the floor, between his legs. The left side of BLORE's body was parallel to and in contact with the south living room wall. The wall was finished with vertical, wood boards. The first board from the east-end of the wall had a bullet hole in it with hair and tissue matter around the hole. The third board from the east-end of the wall also had a bullet hole in it. This hole was relatively lower that the other hole. Behind the wall, lodged between two pieces of wood, there was an expended bullet (CF-54). The right side of BLORE's body was in contact with the back of a black colored, metal computer table. There was blood and tissue on the ceiling above BLORE's location and on the track lighting on the ceiling.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|
| | | |

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | COPIES TO |
|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | ☐ FOLLOW-UP<br>☐ INVESTIGATIONS<br>☐ PATROL | |

```
□ SUPPLEMENT        SONOMA COUNTY SHERIFF'S DEPARTMENT      CASE NUMBER
□ FOLLOW-UP                    NARRATIVE/STATEMENT            981024-11
□ STATEMENT
```

| DATE/TIME | INCIDENT/CRIME | | |
|---|---|---|---|
| 10/23/98 | 187(a) PC | | |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE:

From the floor of the living room, there were two, 7.62 x 39mm empty cartridge casings (CF-27 and CF-28). When representatives of the Sonoma County Coroner's Office and I rolled BLORE's body over for removal, I noticed a telephone handset underneath his body. The handset was connected to the telephone on the end of the computer table.

Detective Flick and I processed the kitchen for evidence. The kitchen is accessed through a doorway from the north end of the living room. The kitchen is on the extreme north end of the residence. The first cabinet north of the refrigerator on the west wall, was covered with two side by side doors. The cabinet door immediately adjacent to the refrigerator had two bullet holes through it. The adjoining cabinet door had bullet damage. We later lined up the three holes in the kitchen cabinets to with three bullet holes contained on the two shingles on the west wall of the residence. One of the bullets impacted a bottle of olive oil, chocolate syrup and a microwave oven. We recovered a bullet from the kitchen floor (#CF-37).

While searching the southeast bedroom, we located a travel bag with papers relating to a labor dispute between GRAHLMANN and MARK C. WHEELER.

The five empty cartridge casings recovered from the scene had the same headstamp: "TCW 7.62 x 39." According to California Department of Justice Senior Criminalist, John Yount, the 7.62 x 39 caliber ammunition is fired by the AK-47, a similar rifle known as the SKS and a less common rifle known as the Ruger Mini-30. The SKS rifle was commonly sold at retail gun dealers and at traveling gun shows.

While processing the initial crime scene, I assigned Detective Tom Dulaney to conduct a neighborhood canvass for witnesses. Detective Dulaney contacted Mr. CHARLIE MARCUM, who resides on Duncan Road, about 1/10th mile downhill from GRAHLMANN's driveway. MARCUM stated that last night, (Friday 10-23-98), between 5:00 and 7:00 P.M., he was standing on his porch. There, he caught a glimpse of a vehicle driving by his property, heading up the hill toward GRAHLMANN's driveway. Only GRAHLMANN's driveway and the County gate closing Duncan Road to through traffic are uphill from MARCUM's residence. Shortly after hearing the vehicle pass by, he heard either somebody opening the County access gate or the gate to GRAHLMANN's property. Within five to fifteen minutes of hearing the gate open, he heard a loud gunshot in the area. He described the shot as either being very close or coming from a "high-powered rifle." Within another five to fifteen minutes after the first shot, he heard at least six additional shots. MARCUM said during the second barrage of shots, he thought he heard someone shouting.

Detective Dulaney contacted RONALD and JOYCE SVETLIK at 21914 Duncan Road. They had no information to provide but their son, ZACHARIAH RUTLEDGE, was also present. ZACHARIAH stated that he lived in the dwelling behind his parent's home. He stated he arrived home from work on the previous

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | □ FOLLOW-UP | COPIES TO |
|---|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | | □ INVESTIGATIONS □ PATROL | |

<table>
<tr><td>☐ SUPPLEMENT<br>☐ FOLLOW-UP<br>☐ STATEMENT</td><td colspan="2">S. NOMA COUNTY SHERIFF'S DEPARTMENT<br>NARRATIVE/STATEMENT</td><td>CASE NUMBER<br>981024-11</td></tr>
</table>

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | |
|---|---|---|---|

| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | ZONE |
|---|---|---|---|

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE:

day at 4:30 P.M. After returning home, he went to Guerneville with a friend named "MIKE DRAY". They socialized with friends in Guerneville, then returned home on Saturday at 2:00 A.M. He stated he was provided a ride home by a subject named "THOMAS SPENCER."

In August 1999, Mr. Robert M. Thompson, a Firearms and Toolmark Examiner with the Bureau of Alcohol, Tobacco and Firearms, examined the five cartridge casings and three of the expended bullets. According to his report, the "Tula Cartridge Works" in Russia manufactured the cartridge casings. The marks produced on the steel cartridge casings during firing and ejection most closely resemble those produced by the "SKS" rifle. However, other semi-automatic and full-automatic firearms chambered for the 7.62 x 39mm caliber, such as the "AK" style rifles should also be considered. There was insufficient similarity of individualizing characteristics to identify them as having been fired in one firearm.

The three bullets are 7.62 x 39mm caliber full steel jacketed hollow point bullets. There was insufficient similarity of individualized characteristics to identify them as having been fired from one barrel. Mr. Thompson added that there are some unaccountable differences with one of the three expended bullets and one of the five fired casings. The differences may be an indication that more than one firearm was used at the scene. I later had a telephone conversation with Mr. Thompson concerning this. He stated this does not conclude that there were two firearms, but that for his purposes, there were insufficient similarities to conclude that all bullets and casings were fired from one firearm.

On Monday, October 26, 1998, Forensic Pathologist Thomas Gill performed an autopsy on both victims. The victims were identified as HORST GRAHLMANN, age 57 and JASON A. BLORE, age 26, an employee of GRAHLMANN. The cause of death for both victims was gunshot wounds. There were no bullets recovered from the victims but Dr. Gill recovered a bullet fragment from BLORE's chest plate. A ring matching the ring found just inside the front door of GRAHLMANN's residence was removed from BLORE's left nipple.

GRAHLMANN was a self-employed businessman who owned several bars and restaurants in Guerneville and San Francisco. BLORE was a local resident who worked for GRAHLMANN.

During the initial days of the investigation, I requested detectives interview associates of the victims such as OTTO MEYER, THOMAS LYNCH, PETER HACKETT and BLORE's girlfriend, VELA (no last name). The probable suspects named during the tape-recorded interviews were MARK WHEELER, KEN FERGUSON and JASON BOWERS.

During the background inquiry on victim BLORE, we learned that he was due to be sentenced on November 4, 1998, in Department 12 of the Sonoma County Courts for a felony assault upon JASON A. BOWERS.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP<br>☐ INVESTIGATIONS<br>☐ PATROL | COPIES TO |
|---|---|---|---|---|---|

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

S. ...OMA COUNTY SHERIFF'S DEPA...MENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME | INCIDENT/CRIME |
| 10/23/98 | 187(a) PC |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |

NARRATIVE:

MARK WHEELER had a well-known financial/labor dispute with GRAHLMANN over work performed at the Hiding Place Restaurant. OTTO MEYER told me that on the Monday before GRAHLMANN died (10-19-98), GRAHLMANN told MEYER that WHEELER came to his Monte Rio residence and demanded the money that he was owed for this labor while grading the property behind the Hiding Place. GRAHLMANN told MEYER that he replied to WHEELER, "When donkeys can fly...I'll pay you."

On October 27, 1998, I interviewed Ms. KATHY CORBELL, the manager of the Rainbow Cattle Company Bar in Guerneville, which was owned by GRAHLMANN. CORBELL stated that GRAHLMANN owned a bar in Guerneville last known as Norton's. The manager of Norton's was KEN FERGUSON who CORBELL stated embezzled twenty to thirty thousand dollars from the business in two months. GRAHLMANN closed the business just about the same time he left for his annual vacation to Germany. She characterized GRAHLMANN as heartbroken when he learned that FERGUSON had been embezzling from him. CORBELL estimated that GRAHLMANN had only been home from Germany for about two weeks at the time of his death. CORBELL stated that when FERGUSON managed the bar for GRAHLMANN, GRAHLMANN gave him a black VW Rabbit. When GRAHLMANN returned from Germany, he and BLORE went to FERGUSON's trailer in Forestville and took the vehicle back in order to give it to BLORE's girlfriend, VELA. CORBELL stated that very few people are allowed at GRAHLMANN's residence but FERGUSON had been there before. CORBELL also knew that WHEELER had a dispute over $4,500 in labor that WHEELER felt was owned to him by GRAHLMANN.

On the same date, I interviewed Mr. PETER HACKETT, who identified himself as a business partner with GRAHLMANN. HACKETT met GRAHLMANN in 1986 and managed GRAHLMANN's bar the Zeit Geist in San Francisco. HACKETT acknowledged that there had been recent tension between he and GRAHLMANN. HACKETT has been in the process of opening the Stumptown Brewery, which is located next to GRAHLMANN's restaurant, The Hiding Place, on River Road in Guerneville. Together, they planned to convert the beach area behind the two businesses into a camping resort area. GRAHLMANN had employed MARK WHEELER, who HACKETT described as a "nut", to grade the beach. HACKETT stated WHEELER's partner is MARK KUCHLER. HACKETT stated that GRAHLMANN disclosed to him that he had to pull out his shotgun to get WHEELER off his property (there was a shotgun found at GRAHLMANN's residence). The last time HACKETT saw GRAHLMANN was on Friday, October 23, 1998, between 12:30 and 1:30 P.M. when he saw BLORE and GRAHLMANN at the hardware store in Guerneville. HACKETT stated that GRAHLMANN commonly carried large sums of currency with him, especially when he returned from his bars in San Francisco.

On October 28, 1998, I met with OTTO MEYER and THOMAS LYNCH. According to MEYER, GRAHLMANN left for his annual trip to Germany on September 10, 1998. GRAHLMANN asked MEYER to check on his residence everyday to feed the chickens and water the plants. On September 11, 1998,

| STATEMENT NAME | SIGNATURE | DATE/TIME |

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP | COPIES TO |
| RUSSELL DAVIDSON | 665 | | | ☐ INVESTIGATIONS ☐ PATROL | |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

S...OMA COUNTY SHERIFF'S DEPA...TMENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME 10/23/98 | | INCIDENT/CRIME 187(a) PC | | | |
|---|---|---|---|---|---|
| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | | ZONE |
| CHANGE | | FROM: | | TO: | |

NARRATIVE:

MEYER went to GRAHLMANN's residence and found the body of one dead chicken near the coop. Two days later, MEYER found five more chickens in the same condition. When GRAHLMANN returned on September 30, 1998, MEYER told him of the chickens. GRAHLMANN immediately accused WHEELER since WHEELER gave him the chickens and had once beheaded an injured chicken in GRAHLMANN's presence. MEYER also confirmed that GRAHLMANN usually kept five to ten thousand dollars in his residence.

TOM LYNCH provided an account where MARK WHEELER's ex-boyfriend, MARK KUCHLER made it known to people that someone had stolen $10,000 from his and WHEELER's residence. KUCHLER was also involved in the grading behind the Hiding Place.

On the same date, I met with Mr. STEVE JACKSON at his business, King's Sport and Tackle in Guerneville. I asked JACKSON and his employee, DEBBIE BECKER, if they sell 7.62 x 39mm caliber ammunition. JACKSON sells them by the box. The ammunition sold by JACKSON had the same headstamp as the empty cartridges found at the scene. JACKSON stated that most likely, all retailers in the area would sell the same brand because it all comes from the same national distributor. JACKSON sells the SKS rifle and he allowed us to view his firearms transaction records. We did not find a record corresponding to any of the named suspects.

On October 29, 1998, I attempted to contact MARK KUCHLER at his residence in Santa Cruz. I learned from his neighbor and his father that he left for Mexico on Monday, October 26, 1998. KUCHLER's father, Mr. MARI KUCHLER, stated that his son expressed to him that he had not been paid for two recent jobs and out of frustration, decided to vacation in Mexico for 3 months.

On October 30, 1998, at 2:00 P.M., DEBBIE BECKER from King's Sport and Tackle telephoned me as a follow-up to my inquiry at their store. She told me that a person named "ZACK", age 21 to 22 years with red/blond hair, purchased 7.62 x 39mm ammunition on Monday, October 5, 1998. BECKER had no further information to provide at the time.

On October 30, 1998, I contacted KEN FERGUSON who agreed to an interview. FERGUSON stated he entered into a business agreement with GRAHLMANN by becoming the manager of "Norton's" at GRAHLMANN's River Theater property in June 1998. FERGUSON stated that GRAHLMANN told him he would pay the left over bills from the River Theater but he didn't. Instead, FERGUSON stated he operated Norton's from the income of the bar and worked without salary. By September 1998, FERGUSON told GRAHLMANN he needed additional capital and they mutually agreed to shut down the bar. FERGUSON acknowledged that two days after he opened Norton's, GRAHLMANN gave he and his wife, MARGORIE ROUSH, a 1986 VW Rabbit. When GRAHLMANN returned from Germany, he and BLORE arrived at

| STATEMENT NAME | | | SIGNATURE | | DATE/TIME | |
|---|---|---|---|---|---|---|
| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO | |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

S. .IOMA COUNTY SHERIFF'S DEPA. .MENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | |
| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | ZONE |
| CHANGE: | | FROM: | TO: |

NARRATIVE

FERGUSON's residence and retrieved the vehicle. FERGUSON stated he and his wife have been to GRAHLMANN's residence before. I asked FERGUSON to account for his whereabouts last Friday during the afternoon and evening. He stated he was at home with his wife and his neighbor "KATHY" also saw him.

FERGUSON and his wife consented to search of their trailer and vehicles to which no evidence was located. During an interview with ROUSH, she stated that FERGUSON never left their trailer park on Friday, October 23, 1998.

On November 1, 1998, the Honorable Lawrence Antolini of the Sonoma County Courts issued a search warrant for MARK C. WHEELER's residence.

On November 3, 1998, Sheriff's Department personnel and I contacted WHEELER at his residence. WHEELER invited us in and agreed to an interview concerning the murders. WHEELER stated he has known GRAHLMANN for eight years and until August, GRAHLMANN employed him doing bulldozing work behind the Hiding Place. When the County stopped the work due to lack of permits, GRAHLMANN refused to pay him for his time. Since then, WHEELER filed a claim with the State Labor Board. WHEELER stated he had been to GRAHLMANN's residence "hundreds" of times. I later confirmed with the State Department of Labor that on August 18, 1998, WHEELER filed a labor claim against GRAHLMANN for the sum of $8,750.

WHEELER characterized his homosexual relationship with MARK KUCHLER as violent. WHEELER stated he was home alone on Friday, October 23, 1998, during the afternoon and evening. WHEELER acknowledged giving GRAHLMANN the live chickens but denied killing any of them.

WHEELER denied any involvement in the two murders, agreed to a search of his residence and to submit to an elimination polygraph examination. While shutting WHEELER's front door, I noticed bloodstains on the inside of the door. I also noticed the window frame on the front of the residence was painted blue and had a gouge mark in the wood. WHEELER stated that he painted the residence and used his knife to score the paint where the sliding window frame met the trim. WHEELER did not know where the knife was.

We seized the following items from WHEELER's residence: a blue window frame with gouges, a door with three bloodstains, $9,360 in United States currency contained in a zip-lock bag and found concealed within a sofa, one bloodstain from a kitchen door frame, one bloodstain from the threshold between the living room and utility room doorway, a nylon jacket with bloodstains on the collar and one bloodstain from the doorway of the master bedroom. Additionally, the Honorable Mark Tansil issued a search warrant authorizing the removal of a blood sample from WHEELER. On November 12, 1998, we obtained a sample of WHEELER's blood pursuant to the search warrant.

| STATEMENT NAME: | SIGNATURE | DATE/TIME: |

| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |

Page 7 of 17

SONOMA COUNTY SHERIFF'S DEPARTMENT
NARRATIVE/STATEMENT

| | | | CASE NUMBER 981024-11 |
|---|---|---|---|

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | |
|---|---|---|---|

| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | ZONE |
|---|---|---|---|

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE

On November 9, 1998, I delivered the $9,360 in United States currency seized from WHEELER's residence to the United Stated Secret Service with a request for their laboratory to process each bill for the presence of latent fingerprint impressions. I provided them with known comparison fingerprints from GRAHLMANN, BLORE and WHEELER.

On November 30, 1998, WHEELER telephoned me. I asked him to explain the presence of a large sum of money since he stated in his previous interview that he only earned a few hundred dollars since his release from Santa Cruz County Jail on October 10, 1998. He stated he earned it from several people for small jobs but did not identify anyone specific. I asked him why we found it secreted in a sofa and he refused to answer. He did add that he did not know the money was present in his sofa because it had been missing since June. He identified "JAY" the manager at Odd Fellows Park as a witness that WHEELER had complained of missing money since last June. I asked him about the presence of blood in his residence to which he explained that it was the result of an abusive relationship with MARK KUCHLER.

On December 2, 1998, I received a telephone call from KUCHLER. He stated he lived with WHEELER from 1997 to August 1998. I asked him about the presence of blood on WHEELER's door and he stated that should be his blood since he broke a window with his hand. He stated he was upset about missing money. He stated the money he was missing was $9,300, contained in a clear zip-lock bag.

On December 4, 1998, during an interview with MICHAEL RATHBUN, the owner of the BullPen bar in Guerneville, he stated that WHEELER and KUCHLER told him that GRAHLMANN owed them $10,000 for the grading work behind the Hiding Place. RATHBUN characterized WHEELER and KUCHLER's relationship as volatile. RATHBUN confirmed that KUCHLER told him that WHEELER stole eight or nine thousand dollars from him. WHEELER later told RATHBUN that KUCHLER probably got drunk and hid it somewhere in WHEELER's residence. Lastly, RATHBUN stated that KUCHLER told him the source of the currency was payment for a tree-cutting job that they did for the owner of the Sebastopol Cemetery.

On December 16, 1998, I served a search warrant on the Custodian of Records for Pacific Bell requesting telephone billing records corresponding to GRAHLMANN's residential account (707/865-1583). The last outgoing telephone call made from GRAHLMANN's residence was on Friday, October 23, 1998, at 3:02 P.M., to the law offices of Mr. ANDREW MARTINEZ (707/526-3913). I contacted Mr. MARTINEZ' employee, TRACY MEYER, who stated that Mr. MARTINEZ was representing BLORE in his upcoming sentencing hearing. BLORE telephoned the office in reference to that matter. MEYER recalled that the last time she spoke with BLORE, he told her he was working on his boss' roof.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

S   IOMA COUNTY SHERIFF'S DEPA   MENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | |
|---|---|---|---|
| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | ZONE |
| CHANGE: | FROM: | | TO: |

NARRATIVE:

On December 18, 1998, I interviewed Mr. ROBERT MURPHY who told me he is acquainted with a subject named KEN FERGUSON. MURPHY stated that he was recently at the Russian River Pub where he had a chance meeting with FERGUSON and his wife, MARJORIE. During a conversation about the murders, FERGUSON volunteered that the type of firearm used was a "point 762 or something like that." FERGUSON also stated that BLORE was reaching for a telephone when he was shot. These two facts were never made public or shared with witnesses during the investigation. MURPHY was alerted by FERGUSON's statement because he did not think this was public information.

On December 22, 1998, I received a report from the United States Secret Service. They developed one fingerprint on the currency which was not made by GRAHLMANN, BLORE, WHEELER or two bar managers employed by GRAHLMANN.

On December 29, 1998, KEN FERGUSON agreed to a second interview at the Sheriff's Department. During the interview, FERGUSON acknowledged that he knew the firearm used was a 7.62 caliber and that BLORE was reaching for a telephone when he was shot. I confronted him about his source of this information and he stated that MARJORIE's son, STEVEN POTTER, is a student studying for a career in law enforcement. He stated POTTER is friendly with a Sonoma County Sheriff's Deputy who shared the information with him. At the conclusion of the interview, FERGUSON agreed to submit to a polygraph examination concerning his involvement and knowledge of the murders. Mr. Douglas Mansfield with the California Department of Justice administered the examination to FERGUSON. At the conclusion of the examination, Mansfield told me that FERGUSON displayed no deception while responding to all relevant questions.

Later that evening, I met with FERGUSON's stepson, STEVEN POTTER. POTTER acknowledged that while riding with a patrol deputy, the deputy shared these two facts about the crime scene with him. POTTER later shared them with FERGUSON and his mother. POTTER stated that the deputy did not know that his stepfather was a potential suspect.

During the investigation, I contacted licensed firearms dealers in Sonoma and Santa Cruz Counties and did not find a sales record corresponding to the sale of a SKS or AK-47 rifle to any of the named suspects.

On January 4, 1999, Mr. PETER HACKETT, who by his own statement, had a "falling out" over business matters with GRAHLMANN, agreed to a second interview at the Sheriff's Department. At the conclusion of the interview, Douglas Mansfield, from the California Department of Justice administered a polygraph examination to HACKETT. Mansfield informed me that HACKETT displayed no deception while responding to all relevant questions.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|

S.  OMA COUNTY SHERIFF'S DEPA.  .MENT
NARRATIVE/STATEMENT

| | | CASE NUMBER |
|---|---|---|
| | | 981024-11 |

| DATE/TIME | INCIDENT/CRIME |
|---|---|
| 10/23/98 | 187(a) PC |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |
|---|---|---|
| | | |

NARRATIVE:

On July 6, 1999, Senior Criminalist Michael Potts prepared a report concerning his forensic examination of the evidence seized from the scene and in WHEELER's residence. The substance on the nylon jacket and the six suspected bloodstains were all found to be human blood. The knife and its sheath found at the scene did not contain human blood. The tape lifts from the back of BLORE's shirt contained burned powder particles and animal hair. The paint on the tip of the knife (CF-1) was different from the paint on the window frame, seized at WHEELER's residence.

By August 1999, Senior Criminalist Caroline Garcia completed DNA analysis of the bloodstains and the known blood samples from GRAHLMANN, BLORE and WHEELER. She concluded that all the bloodstains except for the bloodstain from the threshold between the living room and utility room, could not have come from BLORE, GRAHLMANN or WHEELER. The bloodstain from the living room/utility room threshold contains a mixture of DNA. During September 1999, Criminalist Sharyl Barney completed additional DNA analysis of the remaining bloodstain. She concluded that GRAHLMANN and BLORE are excluded as possible contributors to the stain found on the floor between the utility room and the living room.

On Tuesday, January 12, 1999, I interviewed JASON BOWERS at his residence. BOWERS stated he did not like GRAHLMANN or BLORE and added he was glad BLORE had been killed. BOWERS still had a scar on his face caused by BLORE when he struck BOWERS in the face with a bar glass. BOWERS stated that he was living in a state funded group home in Cotati at the time of the murders. BOWERS was sentenced to reside there for six months by the Court for an assault conviction. BOWERS stated when he learned of the murders in the newspapers, he discussed it with the head counselor, ANITA STORMS. He told her he might be considered a suspect and STORMS reminded him that the group home maintains records of his whereabouts.

Later the same day, I interviewed ANITA STORMS, the head counselor at the residential group home. She confirmed that BOWERS was committed to their facility from April to November 1998, for a misdemeanor conviction. According to the logs provided by STORMS, on Friday, October 23, 1998, at 8:00 A.M., BOWERS left the facility to pickup his paycheck at the Double Tree Hotel in Rohnert Park and returned at 10:30 A.M. BOWERS' counselor, JULIE SKINNER, M.A., indicated on the log that BOWERS stayed home all day Friday, except to attend an A.A. meeting. On Saturday, October 24, 1998, at 7:25 A.M., there was a log entry that BOWERS went to bed at 10:30 P.M. on the previous evening (10-23-98) and appeared to sleep through the night. At 7:25 A.M., BOWERS went to work.

In an effort to corroborate the above, I inquired into BOWERS' criminal history record with the California Department of Justice. BOWERS had a court action on March 16, 1998, where criminal proceedings were suspended on an unspecified charge under 1370 PC (SCR-26463).

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|
| | | |

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | | | |

| ☐ SUPPLEMENT<br>☐ FOLLOW-UP<br>☐ STATEMENT | S(  OMA COUNTY SHERIFF'S DEPA(  MENT<br>NARRATIVE/STATEMENT | CASE NUMBER<br>981024-11 |
|---|---|---|

| DATE/TIME<br>10/23/98 | INCIDENT/CRIME<br>187(a) PC | | |
|---|---|---|---|

| CODE<br>S | NAME (LAST, FIRST, MIDDLE)<br>RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE<br>21565 Duncan Road, Monte Rio | ZONE |
|---|---|---|---|

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE:

On January 14, 1999, the Honorable Judge Hardcastle issued a search warrant authorizing representatives of the Sonoma County Sheriff's Department and Pacific Bell to install a Dialed Number Recorder (DNR) on the telephone accounts corresponding to MARK WHEELER and MARK KUCHLER.

On January 20, 1999, I interviewed Mr. JIM JOHNSON, the owner of the Pleasant Hill Cemetery in Sebastopol. He confirmed he paid MARK KUCHLER over $11,000, in the form of four checks, for tree clearing work last year.

On April 27, 1999, I interviewed Mr. JAY GENOVESE, an employee at the Odd Fellows Park, where WHEELER resides. I spoke with him because KUCHLER told me that he previously complained to GENOVESE that someone stole ten thousand dollars cash from WHEELER's residence prior to the service of the search warrant at WHEELER's residence. During the interview, GENOVESE confirmed KUCHLER's account concerning the missing money.

Based on the data captured by the Dialed Number Records connected to WHEELER and KUCHLER's telephone accounts, I made application for a wire communication interception under 629.50 PC.

On June 2, 1999, The Honorable Heather Morse, Presiding Judge of the Santa Cruz County Superior Court, issued the court order authorizing wire communication interception on KUCHLER's telephone account.

On June 4, 1999, The Honorable Mark Tansil, Presiding Judge of the Sonoma County Superior Court, issued the court order authorizing wire communication interception on WHEELER's telephone account.

During the intercept, WHEELER told KUCHLER of his plan to take a polygraph examination at my request. KUCHLER became upset with him and encouraged him not to take it. WHEELER and KUCHLER discussed the money found in WHEELER's residence. WHEELER told KUCHLER he wanted to keep $4,000 of the money if it was released from evidence. KUCHLER accused WHEELER of "burning" him for the nine thousand dollars.

WHEELER contacted me and stated that he would take the polygraph examination if he was assured in writing, that all the items seized from his residence on November 3, 1998, would be returned to him if he was cleared as a suspect. Deputy District Attorney Phil Abrams approved the agreement.

On June 10, 1999, Mr. Douglas Mansfield from the California Department of Justice administered the elimination polygraph examination to WHEELER. He questioned and examined WHEELER concerning his knowledge or involvement in the murders and the source of the currency found in his residence. According to

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE<br>RUSSELL DAVIDSON | ID<br>665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP<br>☐ INVESTIGATIONS<br>☐ PATROL | COPIES TO |
|---|---|---|---|---|---|

☐ SUPPLEMENT
☐ FOLLOW-UP          SONOMA COUNTY SHERIFF'S DEPARTMENT          CASE NUMBER
☐ STATEMENT          NARRATIVE/STATEMENT                         981024-11

| DATE/TIME | INCIDENT/CRIME |
|---|---|
| 10/23/98 | 187(a) PC |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHANGE: | FROM: | TO: |
|---|---|---|

NARRATIVE:

Mr. Mansfield, WHEELER displayed no deception in his answers to all relevant questions. I later released all the items seized from WHEELER's residence to him.

On June 11, 1999, MARK KUCHLER agreed to meet Detective Dulaney and I at the Santa Cruz County Sheriff's Department for an interview. KUCHLER reminded us that he accused WHEELER of stealing $10,000 cash from him before the murders occurred. KUCHLER stated he left for Mexico three days after the murders but that was a coincidence. He left because of his troubles with WHEELER and that he lost a $30,000 wood cutting job. This is consistent with the information provided by KUCHLER's father during his interview on October 29, 1998.

KUCHLER had no suspect information to provide concerning the murders of GRAHLMANN and BLORE. At the conclusion of the interview, KUCHLER agreed to submit to an elimination polygraph examination. Jeannie Overall from the California Department of Justice administered the polygraph examination. Ms. Overall stated that KUCHLER displayed no deception in his answers to all relevant questions.

I displayed a Polaroid photograph of the knife found at the scene (#CF-1) during all interviews conducted from the onset of this investigation. Nobody could recall GRAHLMANN or BLORE owning the knife.

On July 13, 1999, this department issued a press release, releasing photographs of the knife (CF-1) to the public asking for assistance. The press release pictured the knife and described it as likely being dropped by the suspect during the shooting. It also detailed the $100,000 reward set forth by GRAHLMANN's estate. Additionally, this case was profiled on the television program, "America's Most Wanted."

On August 20, 1999, I returned to King's Sport and Tackle in Guerneville. I had previously inquired with the owner, STEVE JACKSON and his employee, DEBBIE BECKER, on October 28, 1998, concerning their sales of 7.62 x 39mm rifles and ammunition. While there, BECKER asked me, "Anything else ever develop with that ZACK guy?" I recalled that she telephoned me after my initial inquiry at the business. On that occasion, she informed me that she recalled selling a subject named "ZACK" 7.62 x 39mm caliber ammunition prior to the murders. I told her that the name "ZACK" had not come up during the investigation thus far.

On Tuesday, September 7, 1999, I received a telephone message from VELA, BLORE's girlfriend at the time of his death. She stated that she recently received second hand information from an acquaintance RUBY TISCHOFF, that the knife (#CF-1) pictured in the Santa Rosa Press Democrat belonged to "ZACK RUTLEDGE."

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | | | |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

SONOMA COUNTY SHERIFF'S DEPARTMENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | |
| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | ZONE |
| CHANGE: | FROM: | | TO: |

NARRATIVE:

At 12:00 P.M., I telephoned BECKER at King's and asked her again to tell me about the subject that she twice reported to me. She stated that she recently learned that his full name is ZACK RUTLEDGE. She described him as a strange guy who bought the same caliber of ammunition that I previously inquired about at their store. On that occasion during the purchase, "ZACK" had a knife on his right side. After the homicides, the same subject came into the store looking at knives in their display case. BECKER recognized him and asked him what happened to his other knife to which the subject replied that he had lost it. I asked BECKER if she could identify the subject and she stated she could. She used to be socially acquainted with the subject on a first name basis but when he came in the store to purchase the ammunition, he was acting "strange." BECKER added she had not seen him in a while by the time he came in and purchased the ammunition.

I inquired with Sheriff's Department records and located a ZACHARIAH JUDSON RUTLEDGE, D#-159276. I used his booking photograph dated July 13, 1999, to prepare a photographic line-up. According to his D-file, RUTLEDGE was placed on probation by the Sonoma County Courts for a 12020(a) PC conviction in 1997. During RUTLEDGE's three arrests in Sonoma County since 1996, he has indicated 21912 Highway 116, Monte Rio, as his residence during the booking process. This address in on the corner of Highway 116 and Duncan Road.

I spoke with RUTLEDGE's Probation Officer, Stacy Pannis, who confirmed RUTLEDGE's address, adding that it was the cabin behind his mother's house. She described RUTLEDGE as highly suspicious of everyone and who has expressed his hostility toward homosexuals during interviews with her. His condition of probation includes a Fourth Amendment search and seizure waiver.

I met with DEBBIE BECKER at King's Sport and Tackle. I displayed the photographic line-up to her and asked her if she recognized anyone within the array of six photographs. She immediately pointed to RUTLEDGE in position #2 and stated, "That's ZACK who came in and bought the ammunition." I asked her to confirm the type of ammunition she was referring to and she handed me a box of 7.62 x 39mm hollow point ammunition manufactured by Tula Cartridge Works (TCW). She added that was the same brand they were selling last year.

BECKER estimated that RUTLEDGE came into the store about two to two-and-a-half weeks before the homicides. BECKER recalled that she provided me with the exact date that RUTLEDGE purchased the ammunition. She recalled this because she referenced a calendar when she called me on October 30, 1998. She described RUTLEDGE as "strange" and "spaced out" when he purchased the ammunition. RUTLEDGE was also wearing a knife in a sheath on his right hip. She stated the knife was contained in a brown sheath, which was attached to his belt. She could not describe the knife because it was in the sheath. BECKER stated that RUTLEDGE came into the store and paid cash for either two or three boxes of TCW 7.62 x 39mm caliber ammunition.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

SC... OMA COUNTY SHERIFF'S DEPAR... AENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME 10/23/98 | INCIDENT/CRIME 187(a) PC | | | |
|---|---|---|---|---|
| CODE S | NAME (LAST, FIRST, MIDDLE) RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE 21565 Duncan Road, Monte Rio | | ZONE |
| CHANGE: | | FROM: | TO: | |

NARRATIVE:

BECKER stated that about a week after I made my initial inquiry with the business (10-28-98), RUTLEDGE came into the store and was looking at knives in their display case. BECKER waited on him and asked him what happened to his other knife he had on his belt. RUTLEDGE replied that he lost it.

On September 9, 1999, I went to RUTLEDGE's address for the purpose of conducting a probation search. There, I met RUTLEDGE's parents, RONALD and JOYCE SVETLIK. RONALD told us they lived in the front house and RUTLEDGE has lived off and on in the cabin behind their house. RONALD agreed to a search of RUTLEDGE's cabin and offered to unlock it for us. RONALD escorted us to the cabin and unlocked the front door. RONALD stated he started to remodel the cabin three days ago. He stated the property inside the cabin belongs to RUTLEDGE but he only stays there once in a while.

There were two garbage cans outside of RUTLEDGE's residence, full of scrap wood that RONALD stated came from within RUTLEDGE's residence during the remodeling over the previous three days. I removed four random pieces with blue paint on them (#RD-25 to RD-28). I found indicia in the name of ZACHARIAH RUTLEDGE from within a desk (RD-29). From within the residence, I collected a piece of wood with blue paint (RD-30a). The piece of wood was within papers and collected from a closet floor, just off the entryway. Within the papers (#RD-30) and the piece of wood (RD-30a), there was a disposable camera. I later had the film developed through our Crime Scene Investigations Unit and found it contained personal photographs of RUTLEDGE.

On September 10, 1999, I conducted a tape-recorded interview with RONALD SVETLIK. RONALD acknowledged that he granted us permission to enter and process the cabin behind his residence. He stated that his step-son, ZACHARIAH RUTLEDGE, moved into the cabin behind his residence just before RUTLEDGE's 18th birthday and lived there by himself ever since. RONALD stated his address is 21914 Duncan Road and RUTLEDGE's address is 21912 Duncan Road. RONALD stated that the blue paint inside RUTLEDGE's residence has been there for years. I asked him who painted the inside blue and he replied it would have been RUTLEDGE.

On September 17, 1999, I interviewed ZACHARIAH RUTLEDGE at the Sheriff's Department Investigations Bureau. We reminded him of the two names he provided to Detective Dulaney on October 24, 1998. RUTLEDGE stated he does not know TOM SPENCER but he does know SPENCER TOMASVARY. RUTLEDGE thought that DRAY's last name might be BUETOW. I asked RUTLEDGE if he was hanging out with them the night before Detective Dulaney came to his house to speak with him. RUTLEDGE stated, "Yeah." RUTLEDGE stated he never met GRAHLMANN and denied purchasing ammunition before the murders.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|
| DETECTIVE RUSSELL DAVIDSON | ID 665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |

| ☐ SUPPLEMENT<br>☐ FOLLOW-UP<br>☐ STATEMENT | S...OMA COUNTY SHERIFF'S DEPA... MENT<br>NARRATIVE/STATEMENT | CASE NUMBER<br>981024-11 |
| --- | --- | --- |

| DATE/TIME<br>10/23/98 | INCIDENT/CRIME<br>187(a) PC | | | |
| --- | --- | --- | --- | --- |
| CODE<br>S | NAME (LAST, FIRST, MIDDLE)<br>RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE<br>21565 Duncan Road, Monte Rio | | ZONE |
| CHANGE: | | FROM: | TO: | |

NARRATIVE:

On September 27, 1999, I interviewed Mr. JAMES LARRY LEWIS, JR. JAMES stated he has known RUTLEDGE for about seven years. JAMES stated RUTLEDGE was okay growing up but prior to the killings, RUTLEDGE got into drugs and "tweaked out." JAMES stated that RUTLEDGE told him that he had turned gay. JAMES stated that on two occasions, about a year to a year and a half ago, he dropped RUTLEDGE off near GRAHLMANN's residence on Duncan Road. JAMES recalled the Rotweiller dogs. RUTLEDGE told JAMES he worked there doing yard work or house cleaning.

JAMES stated that two weeks before the murders, RUTLEDGE telephoned JAMES from a bar and told him that JASON had "sucker punched" him. RUTLEDGE went to JAMES' house where they shared some marijuana. RUTLEDGE told JAMES that "JASON kicked my ass." JAMES stated that RUTLEDGE owned a knife with a sheath and that JAMES had borrowed it from RUTLEDGE. After the previous conversation, RUTLEDGE called JAMES and asked him for his knife back. RUTLEDGE asked JAMES where he could get his hands on a gun, preferably an "SK." RUTLEDGE told him he needed to go hunting and asked JAMES if he could borrow his binoculars. JAMES never knew RUTLEDGE to hunt. About two hours later, RUTLEDGE arrived at JAMES' residence and retrieved his knife.

JAMES' description of RUTLEDGE's knife is consistent with the knife collected as #CF-1, including the fact that the strap on the sheath went over the thumb guard. I showed him a photograph of Item #CF-1 and he stated "Nope, that's it." I pointed out the blue substance on the tip and asked him if it was present when he had it. He stated he sharpened it and there was nothing blue on the blade. I asked JAMES if he ever saw the knife and sheath that he returned to RUTLEDGE again. He stated, "Nope, 'Cept for uh, when I opened up the newspaper and it was there."

Separately, I interviewed JAMES' father, JAMES LARRY LEWIS. Mr. LEWIS lives in Guerneville with his son, JAMES LARRY LEWIS, JR. LEWIS stated that his son has a friend named ZACK RUTLEDGE. LEWIS has been acquainted with RUTLEDGE for about a year and a half and would commonly see RUTLEDGE twice a week. LEWIS stated that a few days after the newspaper article displaying the knife found at the scene appeared in the Press Democrat, his son informed him that he was positive the knife belonged to ZACK RUTLEDGE. Further, his son stated that RUTLEDGE lived down the street from HANS and that RUTLEDGE had been to HAN's residence before. LEWIS had not seen the Press Democrat article.

I asked LEWIS if he recalled RUTLEDGE carrying a knife. LEWIS stated that when RUTLEDGE would come over to visit his son or when he would see RUTLEDGE in downtown Guerneville, RUTLEDGE always had a fixed blade knife in a sheath attached to his belt. I asked LEWIS if he has ever seen RUTLEDGE with the knife since the two murders occurred. He replied he could not recall seeing the knife since the murders and has not seen RUTLEDGE in six months. I asked LEWIS to describe RUTLEDGE's knife. He stated it had a patterned bone handle, white and dark brown in color. The total length was about 14 inches. The

| STATEMENT LINE: | | SIGNATURE | | DATE/TIME: |
| --- | --- | --- | --- | --- |
| DETECTIVE<br>RUSSELL DAVIDSON | ID<br>665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP<br>☐ INVESTIGATIONS<br>☐ PATROL | COPIES TO |

☐ SUPPLEMENT
☐ FOLLOW-UP
☐ STATEMENT

SC_OMA COUNTY SHERIFF'S DEPAR_IENT
NARRATIVE/STATEMENT

CASE NUMBER
981024-11

| DATE/TIME | INCIDENT/CRIME |
|---|---|
| 10/23/98 | 187(a) PC |

| CODE | NAME (LAST, FIRST, MIDDLE) | LOCATION OF OCCURRENCE | ZONE |
|---|---|---|---|
| S | RUTLEDGE, ZACHARIAH JUDSON | 21565 Duncan Road, Monte Rio | |

| CHARGE: | FROM: | TO: |
|---|---|---|

NARRATIVE

sheath was brown leather. I showed LEWIS a picture of Item #CF-1 (knife and sheath) and asked him if it was consistent or inconsistent with RUTLEDGE's knife. LEWIS viewed the photographs and stated, "Looks just like it. It's consistent."

On October 28, 1999, Attorney Monte Hansen brought his client, RUTLEDGE, to the Sheriff's Department for an elimination polygraph examination. During the pre-examination interview, RUTLEDGE stated he did not know GRAHLMANN or BLORE. The polygraph examiner, Jeannie Overall, showed RUTLEDGE a photograph of GRAHLMANN and RUTLEDGE stated he has never seen him before. She showed him a picture of BLORE and he recalled seeing him about two years ago when BLORE was a bartender at the Stumptown Brewery. Overall also showed RUTLEDGE a photograph of the knife found at the scene (#CF-1) and asked him if it was his knife. During the examination, Overall asked RUTLEDGE if he shot HANS, if he shot BLORE, if he knew where the gun was and if the knife in the picture was his. At the end of the interview, Overall confronted him with the results indicating that he had not told the truth in his responses to the four questions. RUTLEDGE asked to leave and he was allowed to leave the building.

During RUTLEDGE's interview on September 17, 1999, Detective Dulaney and I questioned him concerning his whereabouts during the evening hours the night before Detective Dulaney came to his residence on Saturday, October 24, 1998. RUTLEDGE stated he was with DRAY BUETOW and SPENCER TOMASVARY. I recognized both names. In 1996, as a Violent Crimes Detective, I investigated a case where BUETOW was charged with 261.5 PC. As of November 1999, BUETOW had an outstanding multiple count arrest warrant charging 261.5 PC and his whereabouts were unknown. Further, SPENCER TOMASVARY was a victim of a robbery in 1996. I investigated the robbery and met with him on one occasion to show him a photographic line-up.

On November 12, 1999, I interviewed TOMASVARY. I told him we were investigating ZACHARIAH RUTLEDGE as a possible suspect in the killing of GRAHLMANN and BLORE. I told TOMASVARY that during our interview with RUTLEDGE, he made reference to being with him and BUETOW during at least part of the Friday evening immediately preceding the Saturday morning when the crime was discovered. TOMASVARY stated he did go out with RUTLEDGE during 1998 but not very often. TOMASVARY could not specifically recall going out with RUTLEDGE near the time of the murders. He recalled when the murders occurred because at that time, he lived with his mother on Santa Clara Avenue in Monte Rio. Santa Clara Avenue is off of Duncan Road. I asked him if he ever went out with RUTLEDGE and BUETOW at the same time. TOMASVARY stated that although he was acquainted with BUETOW and RUTLEDGE, he was certain that the three of them never went out together in his vehicle. He stated he drove a brown Ford LTD in October 1998, which is consistent with RUTLEDGE's description of TOMASVARY's vehicle.

STATEMENT NAME _____ SIGNATURE _____ DATE/TIME _____

| DETECTIVE | ID | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP ☐ INVESTIGATIONS ☐ PATROL | COPIES TO |
|---|---|---|---|---|---|
| RUSSELL DAVIDSON | 665 | | | | |

| ☐ SUPPLEMENT<br>☐ FOLLOW-UP<br>☐ STATEMENT | SONOMA COUNTY SHERIFF'S DEPARTMENT<br>NARRATIVE/STATEMENT | CASE NUMBER<br>981024-11 |
|---|---|---|

| DATE/TIME<br>10/23/98 | INCIDENT/CRIME<br>187(a) PC | | |
|---|---|---|---|

| CODE<br>S | NAME (LAST, FIRST, MIDDLE)<br>RUTLEDGE, ZACHARIAH JUDSON | LOCATION OF OCCURRENCE<br>21565 Duncan Road, Monte Rio | ZONE |
|---|---|---|---|

| CHANGE: | FROM: | TO: |
|---|---|---|

**NARRATIVE**

In August 2000, I received a report from California Department of Justice Senior Criminalist, Michael L. Potts. His report details his microscopic examination of the blade of the knife (CF-1), which revealed paint consisting of four different colored layers: 1) a blue-colored topcoat, over 2) a turquoise layer, covering 3) a white layer, followed by 4) a tan colored bottom layer. Further analysis of this paint showed it to be an architectural type paint. Paint of similar type, color and color layer sequence was also found on the piece of plaster board of Item RD-27 and on the wood of Item RD-30a, collected from RUTLEDGE's residence. Therefore, the paint on the knife could have come from a source painted with the same color paint and with the same layer sequence as the paint on Items RD-27 and RD-30a.

In the summer of 2001, Sonoma County Sheriff's Department Detective Brad Burke located DRAY BUETOW. By this time, BUETOW was a Level 1 inmate, working as a cook at the Pelican Bay State Prison. BUETOW agreed to an interview with Detective Burke. BUETOW could recall the time of the murders because he recalled the press coverage and everybody talking about it in Guerneville. BUETOW was acquainted with RUTLEDGE and TOMASVARY but confirmed that they were never out together. BUETOW stated that he recalled seeing RUTLEDGE at a party during that time but did not arrive there or leave the party with RUTLEDGE. He had no contact with RUTLEDGE during the time of the murders.

| STATEMENT NAME | SIGNATURE | DATE/TIME |
|---|---|---|

| DETECTIVE<br>RUSSELL DAVIDSON | ID<br>665 | DATE/TIME OF REPORT | APPROVED BY | ☐ FOLLOW-UP<br>☐ INVESTIGATIONS<br>☐ PATROL | COPIES TO |
|---|---|---|---|---|---|