**J. David Nick** (SB#157687)
99 Osgood Place, Ste 1
San Francisco, CA 94133
Tel: (415) 552-4444
Fax: (415) 358-5897

**E. D. Lerman** (SB#241471)
45060 Ukiah Street
P.O. Box 802
Mendocino, CA 95460
Tel: (707) 937-1711
Fax:(707) 937-2209

Attorneys for Plaintiff
ZACHARIAH JUDSON RUTLEDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

* * * * * *

| | |
|---|---|
| ZACHARIAH JUDSON RUTLEDGE, | CASE NO.: CV 07-04274 CW |
| Plaintiff, | **THIRD AMENDED COMPLAINT FOR DAMAGES FOR: VIOLATION OF CIVIL RIGHTS INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; FALSE ARREST AND IMPRISONMENT; UNLAWFUL SEIZURE; SLANDER AND LIBEL; AND FOR DAMAGES UNDER THE CALIFORNIA BANE ACT AND THE CALIFORNIA TORT CLAIMS ACT** |
| vs. | |
| COUNTY OF SONOMA, MICHAEL POTTS, RUSSEL L. DAVIDSON, JAMES PATRICK CASEY, CHRISTINE M. COOK, J. MICHAEL MULLINS, STEPHAN R. PASSALACQUA, SONOMA COUNTY SHERIFF'S DEPARTMENT, SONOMA COUNTY DISTRICT ATTORNEY'S OFFICE, and DOES 1 through 40. | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      In the underlying criminal case, People v. Rutledge, Sonoma County Superior Court case number MCR-443363 and related case no. SCR32528 (hereinafter "underlying criminal matter"), Plaintiff, Zachariah Rutledge was acquitted of all charges connected to a 1998 murder of two Russian River-area men, ending a four-year legal battle.  During the investigation and prosecution of the double murder trial the police and prosecutors engaged in a campaign of misconduct, which included misleading the magistrate, falsification, fabrication and concealment of evidence.  At one point, the underlying criminal matter was dismissed after a state criminalist admitted that he gave false testimony about the prosecution's key evidence and laboratory tests during a preliminary hearing.  Nonetheless, prosecutors re-filed the charges and the case reached trial.  Jurors took less than two days to return a verdict of not guilty on two counts of murder and one count of burglary.

2.      This case also addresses the defendants' actions involving an ongoing conspiracy and practice of withholding and concealing exculpatory evidence in criminal matters, in a wholesale violation of the constitutional rights of the plaintiff.  Defendants have engaged in, and continue to engage in, an ongoing pattern of callous, malicious and oppressive disregard for the rights of all citizens, as set forth specifically below.  In committing the despicable acts alleged herein, Defendants have deprived the plaintiff of his constitutional rights under the color of authority and law.

**GENERAL ALLEGATIONS**

3.      This action arises under the Civil Rights Act of 1871, 42 U.S.C. Sections 1983, 1985 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.  This Court has jurisdiction of the federal claims under 28 U.S.C. Section 1331, 1332, 1343(3) 1343(4), 2201, and 2202.  This court has pendent jurisdiction over the state claims.

4.      This action also arises under the California Tort Claims Act (California

Government Code[1] Gov Code §§ 810 et seq), the California Bane Act (California Civil Code[2] § 52.1) and Article I, Sections 13, 15 and 17 of the California Constitution[3].

5.    Plaintiff, ZACHARIAH JUDSON RUTLEDGE (hereinafter "PLAINTIFF") was at all times mentioned herein a citizen of the United States, the State of California and a resident of the County of Sonoma.

6.    Defendant, COUNTY OF SONOMA (hereinafter "COUNTY") is a political subdivision of the State of California.

7.    Defendants, COUNTY OF SONOMA, DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY (hereinafter "DA'S OFFICE"), and SONOMA COUNTY SHERIFF'S DEPARTMENT (hereinafter "SHERIFF"), acting through its agents and employees, hereinafter named, under the color of law, statute, ordinance, regulation, custom or usage, and with the apparent authority of the COUNTY OF SONOMA, DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY, and SONOMA COUNTY SHERIFF'S DEPARTMENT, violated PLAINTIFF'S Fourth, Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution, in violation of 42 U.S.C. §§ 1983, 1985 and his rights under Article I, Sections 13, 15 and 17 of the Cal Const.

8.    The acts of the defendants that constitute deprivation of PLAINTIFF'S civil rights and are the basis of the claims in this action include, in part:

a. Denial of Fourth, Fifth and Fourteenth Amendment rights:

i. By unlawfully and wrongfully seizing PLAINTIFF'S person without probable cause, causing his unlawful detention and incarceration on serious charges based on facts that they knew or should have known were false;

ii. By unlawfully and wrongfully seizing PLAINTIFF'S person in clear violation of due process.

---

[1] California Government Code is hereinafter "CGC".

[2] California Civil Code is hereinafter "CCC".

[3] California Constitution is hereinafter "Cal Const".

b. Denial of Fourth, Fifth and Fourteenth Amendment rights:

   i. By knowingly and willfully submitting false data and evidence regarding an investigation that led to PLAINTIFF'S arrest;

   ii. By knowingly and willfully uttering false testimony at PLAINTIFF'S preliminary hearing that led to PLAINTIFF'S holding order on murder charges;

   iii. By conspiring to suborn perjured police and forensic criminalist testimony;

   iv. By knowingly, willfully, and wrongfully concealing information that would have assisted PLAINTIFF in his defense against serious criminal charges.

c. Denial of PLAINTIFF'S Fourth, Fifth, Sixth and Fourteenth Amendment rights:

   i. By failing to timely disclose "Brady" material, exculpatory evidence, to PLAINTIFF'S defense counsel;

   ii. By concealing discoverable information from PLAINTIFF'S defense counsel;

   iii. By presenting, permitting and encouraging known perjured testimony to be produced at PLAINTIFF'S preliminary hearing and trial in the underlying criminal matter.

   9.   Defendant, SENIOR CRIMINALIST MICHAEL POTTS (hereinafter "POTTS"), and DOES 1 through 10, are sued herein in their individual capacities, were, in performing the acts alleged herein, acting under the color of law as agents of the California Department of Justice Bureau of Forensic Services (hereinafter "DOJ"), employed by DOJ, in an individual capacity, within the course and scope of their employment, and in performing all of the acts alleged herein, Defendants acted under color of the statutes, ordinances, regulations, customs and usages of the DOJ, and under the official policy, custom and practice of DOJ.

   10.   Defendant, MICHAEL POTTS', official duties as a SENIOR CRIMINALIST, under the California Department of Justice was to conduct investigations of crimes and to conduct examinations of crime scenes for physical evidence, and in complex cases make all types of chemical analyses such as alcohol determinations, toxicological analyses of foods and body viscera and fluids; test for drugs and explosives, and various types of microchemical tests; make the difficult microscopic, chemical, and serological tests on blood and other physiological fluid stains; identify and compare hair, fibers, soil, paint, glass, building materials and other

substances in forensic cases; make visual, microscopic and other technical examinations and comparisons of tool marks, firearms and other weapons, bullets, cartridge cases and ammunition; make casts; make and develop photographs and photomicrographs using black and white and color films; use complex measuring, recording and testing instruments and devices; prepare evidence and exhibits and testify in court as expert witnesses; assist local law enforcement officers and prosecutors in analyzing and interpreting evidence; write reports and correspondence; give instruction in this field at peace officer training schools; and provide forensic research, application, advanced casework, methodology development, and training to State and/or local forensic scientists and law enforcement agencies, as defined by California State Personnel Board.

11.    Defendants, DETECTIVE RUSSEL L. DAVIDSON (hereinafter "DAVIDSON") and DOES 11 - 20 were employed by the SONOMA COUNTY SHERIFF'S DEPARTMENT at the time PLAINTIFF was arrested and incarcerated and are sued herein in their individual capacities, as they were acting according to individual and/or official capacities, in the course and scope of their duty, and in performing all of the acts alleged herein, Defendants acted under color of state law and under the official policy, custom and practice of SONOMA COUNTY SHERIFF'S DEPARTMENT.

12.    Defendants, MICHAEL POTTS (hereinafter "POTTS") and DOES 1 through 10, sued herein in their individual capacities, were, in performing the acts alleged herein, acting as agents of THE SONOMA COUNTY SHERIFF'S DEPARTMENT, and acting according to individual capacities, within the course and scope of their duty, and in performing all of the acts alleged herein, Defendants acted under color of the statutes, ordinances, regulations, customs and usages of the SONOMA COUNTY SHERIFF'S DEPARTMENT, and under the official policy, custom and practice of the SONOMA COUNTY SHERIFF'S DEPARTMENT.

13.    Defendants, DISTRICT ATTORNEY J. MICHAEL MULLINS (hereinafter "MULLINS"), DISTRICT ATTORNEY STEPHAN R. PASSALACQUA (hereinafter "PASSALACQUA"), DEPUTY DISTRICT ATTORNEY JAMES PATRICK CASEY

**THIRD AMENDED COMPLAINT**

(hereinafter "CASEY"), DEPUTY DISTRICT ATTORNEY GREG JACOBS (hereinafter "JACOBS"), ASSISTANT DISTRICT ATTORNEY CHRISTINE M. COOK (hereinafter "COOK"), and DOES 21 – 30, are sued herein in their individual capacities, were employed by the DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY[4] (hereinafter "D.A.'s OFFICE"), or were acting according to individual and/or official capacities, within and outside, the course and scope of their employment, and, in performing all of the acts alleged herein, Defendants acted under color of the statutes, ordinances, regulations, customs and usages of the D.A.'s OFFICE, and under the official policy, custom and practice of the D.A.'s OFFICE.

14.    Defendants, DISTRICT ATTORNEY J. MICHAEL MULLINS and DISTRICT ATTORNEY STEPHAN R. PASSALACQUA, are sued herein in their individual capacities, were in performing the acts alleged herein, also acting as agents of the DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY, in a supervisor capacity, were acting according to individual and/or official capacities, in the course and scope of their employment, in performing the acts alleged herein that are connected to their supervisory duties within the D.A.'s OFFICE, and acted under color of the statutes, ordinances, regulations, customs and usages of the D.A.'s OFFICE, and under the official policy, custom and practice of the D.A.'s OFFICE.

15.    Defendants, DEPUTY DISTRICT ATTORNEY JAMES PATRICK CASEY and DEPUTY DISTRICT ATTORNEY GREG JACOBS, are sued herein in their individual capacities, were in performing the acts alleged herein, also acting as agents of the DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY, in an investigative capacity, and were acting according to individual and/or official capacities, in the course and scope of their duty and employment, and acting outside the scope of their duty, in performing the acts alleged herein that are connected to their investigative duties within the D.A.'s OFFICE, Defendants acted under color of the statutes, ordinances, regulations, customs and usages of the D.A.'s

---

[4] DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY is hereinafter "D.A.'s OFFICE".

**THIRD AMENDED COMPLAINT**

OFFICE, and under the official policy, custom and practice of the "D.A.'s OFFICE.

16.    Defendants, DEPUTY DISTRICT ATTORNEY JAMES PATRICK CASEY and DEPUTY DISTRICT ATTORNEY GREG JACOBS, are sued herein in their individual capacities, were in performing the acts alleged herein, also acting as agents of the SONOMA COUNTY SHERIFF'S DEPARTMENT, and were acting in an investigative capacity, according to individual and/or official capacities, in the course and scope of their duty; and in performing all of the acts alleged herein, Defendants acted under color of the statutes, ordinances, regulations, customs and usages of the SONOMA COUNTY SHERIFF'S DEPARTMENT, and under the official policy, custom and practice of the SONOMA COUNTY SHERIFF'S DEPARTMENT.

17.    The true names and capacities of Defendants DOES 1 through 30 are unknown to the PLAINTIFF.  Each of these fictitiously named parties has acted as agent of or in concert with the named defendants in the matters referred to herein and is responsible in some manner for the damages suffered by PLAINTIFF.  PLAINTIFF will amend this complaint to add the names and capacities of such defendants when ascertained.

## FACTUAL ALLEGATIONS

18.    On, or about, August 3, 2000, POTTS authored a forensic laboratory report, which concerned his forensic examination of the evidence seized from the scene of the homicide in the underlying criminal matter, and items collected from PLAINTIFF'S residence. POTTS reported that the paint on the knife had the same color and color layer sequence, and the same type of paint as the paint on the samples collected from RUTLEDGE'S residence.

19.    POTTS stated facts that were false for the purposes of connecting PLAINTIFF to a double murder, which occurred on, or about, October 23, 1998.  The false facts were included in the forensic laboratory report with malice and reckless disregard of the truth.  Said facts will be pled in further detail at paragraph 23 (C).

1    20.    On, or about, May 8, 2002, CASEY, commanded DAVIDSON to draft a

2    Declaration in Support of Warrant of Arrest, which was dated May 8, 2002.

3    21.    On, or about, May 8, 2002, CASEY ordered DAVIDSON to arrest PLAINTIFF.

4    22.    On, or about, May 8, 2002 DAVIDSON authored a Declaration in Support of

5    Warrant of Arrest, which was dated May 8, 2002, under the direct supervision of CASEY.

6    23.    The May 8, 2002, Declaration in Support of Warrant of Arrest, submitted by

7    DAVIDSON to the magistrate, included statements which provided that:

8    A.)   On October 27, 2008, BECKER, a witness in the underlying criminal matter, provided

9        statements to DAVIDSON that connected Plaintiff to the purchase of 7.62 x 39 mm

10        ammunition on Monday, October 5, 1998, prior to the murders. On September 7, 1999,

11        BECKER provided statements that connected petitioner to a knife that was consistent with

12        the knife discovered at the scene of the crime.  On September 7, 1999, she also provided

13        statements that showed that Petitioner "lost" his knife during the month of the murders.

14        Specifically, some of the statements attributed to BECKER in the Narrative were as follows:

> "On October 30, 1998, at 2:00 P.M., DEBBIE BECKER from King's Sport and Tackle telephoned me as a follow-up to my inquiry at their store.  She told me that a person named "ZACK," age 21 to 22 years with red/blond hair, purchased 7.62 x 39mm ammunition on Monday, October 5, 1998."

> "[On or about September 7, 1999,] BECKER estimated that RUTLEDGE came in to the store about two to two-and-a-half weeks before the homicides.  BECKER recalled that she provided me with the exact date that Rutledge purchased that ammunition. She recalled this because she referenced a calendar when she called me on October 30, 1998.  [….. ] RUTLEDGE was also wearing a knife in a sheath on his right hip.  She stated that the knife was contained in a brown sheath, which was attached to his belt. […]  BECKER stated that RUTLEDGE came into the store and paid cash for either two or three boxes of TCW 7.62 x 39 mm caliber ammunition."

> "[On or about September 7, 1999,] She stated that she recently learned that his full name is ZACH RUTLEDGE.  She described

him as a strange guy who bought that same caliber of ammunition that I previously inquired about at their store.  On that occasion during the purchase, "ZACK" had  knife on his right side.  After the homicides, the same subject came into the store looking at knives in their display case.  BECKER recognized him and asked him what happened to his other knife to which the subject replied that he had lost it."

B.)  On September 27, 2008, JAMES LEWIS JR., a witness in the underlying criminal matter, provided statements to DAVIDSON, suggesting that defendant was the owner of a knife that was similar to one located at the crime scene.  Specifically, the statements attributed to LEWIS in the Narrative are as follows:

"James stated that two weeks before the murders, Rutledge telephoned James from a bar and told him that Jason had "sucker punched" him.  Rutledge went to James' house where they shared some marijuana.  Rutledge told James that "Jason kicked my ass."  James stated that Rutledge owned a knife with a sheath and that James had borrowed it from Rutledge.   After the previous conversation, Rutledge called James and asked him for his knife back.  Rutledge asked James where he could get his hands on a gun, preferably an "SK."   Rutledge told him he needed to go hunting and asked James if he could borrow his binoculars.  James never knew Rutledge to hunt.  About two hours later, Rutledge arrived at James' s residence and retrieved the knife.

"James' description of Rutledge's knife is consistent with the knife collected as #CF-1, including the fact that the strap on the sheath went over the thumb guard.  I showed him a photograph of Item #CF-1 and he stated "Nope, that's it."  I pointed out the blue substance on the tip and asked him if it was present when he had it.  He stated he sharpened it and there was nothing blue on the blade.  I asked James if he ever saw the knife and sheath that he returned to Rutledge again.  He stated, "Nope, 'Cept for uh, when I opened up the newspaper and it was there."

C.)  In August 2000 MICHAEL POTTS, submitted a forensic report which provided that PLAINTIFF was the owner of a knife found at the scene of the murders.  Specifically, one of the statements, within the report, attributed to POTTS in the Narrative is as follows:

"In August 2000, I received a report from California Department of Justice Senior Criminalist, Michael L. Potts.  His report details

1
2
3
4
5
6

his microscopic examination of the blade of the knife (CF-1), which revealed paint consisting of four different colored layers: 1) a blue-colored topcoat, over 2) a turquoise layer, covering 3) a white layer, followed by 4) a tan colored bottom layer. Further analysis of this paint showed it to be an architectural type paint. Paint of similar type, color, and color layer sequence was also found in the piece of plaster board of Item RD-27 and on the wood of Item RD-30a, collected from RUTLEDGE's residence. Therefore, the paint on the knife could have come from a source painted with the same color paint and with the same layer sequence as the paint on Items RD-27 and RD-30a."

7      24.     The aforementioned statements identified within Paragraph 23 were false.

8      25.     CASEY, POTTS, and DAVIDSON agreed to present a false affidavit containing
9  false evidence to the magistrate through the Declaration in Support of Warrant of Arrest that
10 was dated May 8, 2002.

11     26.     DAVIDSON possessed knowledge that statements contained within the
12 Declaration in Support of Warrant of Arrest were false, including those statements attributed to
13 POTTS, LEWIS, and BECKER.

14     27.     POTTS possessed knowledge that statements attributed to himself, which were
15 contained within the Declaration in Support of Warrant of Arrest, were false.

16     28.     CASEY possessed knowledge that statements contained within the Declaration
17 in Support of Warrant of Arrest were false.

18     29.     CASEY and DAVIDSON agreed to omit known exculpatory evidence from the
19 Declaration in Support of Warrant of Arrest in an effort to deceive and mislead the magistrate
20 into issuing the requested Arrest Warrant attached to PLAINTIFF.

21     30.     DAVIDSON omitted exculpatory evidence from the Declaration in Support of
22 Warrant of Arrest Made in an effort to deceive and mislead the magistrate into issuing the
23 requested Arrest Warrant attached to PLAINTIFF.

24     31.     DAVIDSON omitted from the affidavit the fact that the statements made by
25 BECKER were made after a July 13, 1999 press release issued by the Sonoma County Sheriff,

26

1    which released photographs of the knife and asked for assistance in the investigation of the

2    murders, while also offering a $100,000.00 reward for information in the case.

3        32.    DAVIDSON omitted from the affidavit the fact that he knew that the statements

4    attributed to BECKER were unreliable and false, and failed to inform the magistrate that the

5    statements made by BECKER were not reliable, since she may have been seeking to recover the

6    $100,000.00 reward offered by the victim's estate.

7        33.    DAVIDSON omitted from the affidavit the fact that he knew that the statements

8    attributed to JAMES LEWIS JR. were unreliable and false.

9        34.    DAVIDSON omitted from the affidavit the fact that he knew that the statements

10   attributed to POTTS were false.

11       35.    POTTS omitted from the affidavit the fact that he knew that the statements

12   attributed to himself were false.

13       36.    On, or about, May 8, 2002, CASEY made the decision to arrest PLAINTIFF.

14       37.    On, or about, May 8, 2002 CASEY, DAVIDSON and DOES 11-20 arrested

15   PLAINTIFF.

16       38.    During PLAINTIFF'S arrest, DAVIDSON and DOES 11-20 used law

17   enforcement authority to effectuate the arrest, and detention, with the use of handcuffs, and a

18   threat of lethal force.

19       39.    On, or about, May 8, 2002 CASEY, DAVIDSON and DOES 11-20 imprisoned

20   PLAINTIFF.

21       40.    Plaintiff was held captive and imprisoned under a threat of lethal force, and

22   while imprisoned, Plaintiff, was subjected to threats of physical force, and beatings, was

23   subjected to the use of handcuffs, and was confined and locked in a cell.

24       41.    On, or about, May 8, 2002 CASEY, DAVIDSON and DOES 11-20 unlawfully

25   searched PLAINTIFF'S residence, pursuant to an invalid search warrant. CASEY, DAVIDSON

26

1    and DOES 11-20 possessed knowledge that the search warrant was not valid at the time of the

2    search.

3        42.    At no time during PLAINTIFF'S arrest did any of the officers have probable

4    cause to arrest PLAINTIFF.

5        43.    PLAINTIFF did not consent to his detention or his arrest, nor did he resist in any

6    manner.

7        44.    PLAINTIFF did not consent to a search of his residence at any time.

8        45.    On, November 15, 2002, POTTS provided false testimony at PLAINTIFF'S

9    preliminary hearing in the underlying criminal matter, wherein POTTS testified that "the paint

10   on the knife matches the paint on the other two items [items from PLAINTIFF'S residence], not

11   only in color, but also layer sequence and type of paint."  POTTS further testified that: "we're

12   talking about separate layers and four different colored layers as well. And also the paint on this

13   is the architectural type paint in that it's different in chemical composition from paint that you

14   would find like, for instance, on automobiles and things of that nature," and "It not only

15   matches in color, in other words, the color of the paint on People's 13 and 13 is the same as the

16   paint on the knife, but also it's layer sequence, and the colors of each of those layers is the same

17   that appears on the knife matches the same chemical composition of each of those layers that

18   you can see on People's 12 and 13."

19       46.    Prior to the November, 2002, preliminary hearing in the underlying criminal

20   matter, PLAINTIFF requested the prosecution to disclose all laboratory bench notes, and

21   analyses connected to the forensic examination of the paint samples.

22       47.    On October 30, 2002, the Court, in the underlying criminal matter, ordered the

23   prosecution to provide in whatever form they exist, that is any and all notes pertaining to

24   forensic tests or analysis performed in this case.

25

26

48.    Prior to the November, 2002, preliminary hearing in the underlying criminal matter, POTTS informed CASEY and DAVIDSON that there was only one article on paint comparison in scientific literature that he was able to find.  POTTS told DAVIDSON that the article allowed him to come to a scientific opinion which could be presented at the preliminary hearing.  POTTS told DAVIDSON that the article may not apply to the case because of its extreme age, being 40 plus years old, and because of the fact that it came from a completely different country, Wales.  (The study will be hereinafter identified as the Wales Study.)  POTTS also told CASEY that the study might not be applicable to the Rutledge case.

49.    Prior to the November, 2002, preliminary hearing in the underlying criminal matter, CASEY read the Wales Study, and found that the article was a foundation for a strong buttress of the tests done on the paint samples.

50.    During the November, 2002, preliminary hearing in the underlying criminal matter, POTTS testified that the paint on the knife and the wallboard matched, since all four layers matched between the paint on the knife and wallboard, and based upon the Wales Study there was a million to one chance that the paint would match.

51.    Prior to the November, 2002, preliminary hearing in the underlying criminal matter, CASEY refused to disclose all of POTTS' bench notes and refused to disclose the Wales Study.

52.    Prior to the November, 2002, preliminary hearing in the underlying criminal matter, POTTS informed CASEY that he needed to perform additional tests on the paint in order to confirm, or eliminate, the match between the paint on the knife and the paint on the samples retrieved from PLAINTFF'S residence.

53.    CASEY concealed from PLAINTIFF that POTTS required additional tests.

54.    In the month of April, 2004, PLAINTIFF discovered POTTS' concealment of exculpatory evidence, when PLAINTIFF'S defense investigator Chris Reynolds discovered a

memo which was written by POTTS to Deputy District Attorney James Casey (said memo is hereinafter "Jim/Mike note"), which stated that he is releasing only a third of his forensic laboratory notes he had regarding his investigation of the evidence in the underlying criminal matter. The Jim/Mike note was accidentally discovered by Chris Reynolds when reviewing mental health records submitted to prosecution mental health expert Park Dietz by the prosecution at the office of Park Dietz in southern California in April 2004. The Jim/Mike note was drafted just prior to the preliminary examination, and was sent to the office of Park Dietz after JACOBS took over the criminal case from CASEY.

55.     JACOBS did not disclose the Jim/Mike note to PLAINTIFF during the underlying criminal matter.

56.     JACOBS knew about the falsity of the statistical evidence provided by POTTS, JACOBS still sought to introduce testimony of POTTS at trial, used the statistical evidence in support of his opposition to petitioner's motions and repeatedly told the Court that he had given PLAINTIFF all exculpatory evidence. JACOBS never disclosed that Potts's testimony was false as to the use of statistics or in any way attempted to correct the statistical testimony of POTTS.

57.     Despite JACOBS' knowledge that the statistical evidence was false he continued to hide the fact through a contrivance of representing to the Court he was not seeking to present that testimony at trial.

58.     JACOBS continued to fail to correct this false evidence despite having been urged by the Department of Justice itself that full disclosure be made.

59.     The Jim/Mike note was never produced by any member of the prosecutorial team of the underlying criminal matter.

60.     On January 27, 2004, POTTS provided assistant district attorney JACOBS information, wherein POTTS admitted to presenting false testimony at the preliminary

examination of the underlying criminal matter. More particularly, POTTS sent a January 27, 2004, letter to JACOBS, at the direction of JACOBS, in which POTTS stated that "In review of the transcript of my testimony at the preliminary hearing on November 15, 2002, I realize I had over-simplified the explanation regarding the examinations I conducted on the knife and the wood molding." POTTS stated in his letter that he mislead the Magistrate when he testified that he conducted a chemical analysis on the paint on the molding, stating:

> "My response on page 172, lines 21 through 24, [of the preliminary examination transcript] implies that I conducted a chemical analysis of the paint on the molding. In fact, I had only performed a microscopical computation of the paint on the knife with the paint on the molding."

POTTS further stated in his letter that he mislead the Magistrate at the preliminary examination when he testified that he performed an analysis on each individual colored layers of paint on the knife, stating:

> "Furthermore, in reviewing the transcript, it could be interpreted that I performed an analysis on each individual colored layer of paint on the knife. In fact, because the paint on the knife was in the form of a smear, I was unable to fully separate the paint transfers into distinct individual layers; and therefore, analysis was conducted on more than one layer at the time."

61.    On May 19, 2004, POTTS clarified, during a pretrial motion in the underlying criminal matter, that he did not conduct a separate analysis on each individual paint layer on the knife.

62.    The precise date when PLAINTIFF discovered the January 27, 2004, letter from POTTS to JACOBS is unknown at this time.

63.    During the second preliminary hearing of the underlying criminal matter, the Prosecution offered the statements of JAMES LARRY LEWIS, JR. as evidence linking the PLAINTIFF to the crimes charged.

64.     On, or about, March 26, 2006, during an interview of JAMES LARRY LEWIS, JR., by PLAINTIFF'S investigator, PLAINTIFF discovered that the statements made by LEWIS to DAVIDSON in the underlying criminal action, and the statements that he made during the preliminary hearing, were false.

65.     During the April 2006, preliminary hearing in the underlying criminal matter, the People offered the statements of BECKER as evidence linking the Petitioner to the crimes charged.

66.     On April 21, 2006, at the conclusion of the preliminary hearing, the Court found that the People offered sufficient evidence to hold Petitioner to answer.

67.     During the prosecution of the underlying criminal matter JACOBS knew of the existence of exculpatory evidence and that it was in the possession of the prosecutorial team. The PLAINTIFF requested the exculpatory evidence from the prosecutor during the prosecution of the underlying criminal matter.  JACOBS interfered with the disclosure of the exculpatory evidence and knowingly withheld the exculpatory evidence.  JACOBS continued to withhold the exculpatory evidence despite having been urged by the Department of Justice (DOJ) that full disclosure be made.

68.     On June 30, 2006, Chief Deputy District Attorney Diana E. Gomez submitted PEOPLE'S PROPOSED WITNESS LIST for the trial in the underlying criminal matter.  The witness list included James Lewis, Jr., Deborah Becker and Mike Potts.

69.     The trial in the underlying criminal matter began, on or about, August 4, 2006 and ended on September 29, 2006. (hereinafter "TRIAL.")

70.     During the trial, PLAINTIFF discovered that the statements made by DEBBIE BECKER were false. PLAINTIFF also discovered during the TRIAL, that BECKER made the false statements in an attempt to claim the $100,000.00 reward announced by the Sonoma County Sheriff on or about July 13, 1999.

**THIRD AMENDED COMPLAINT**

71.    During the TRIAL, PLAINTIFF discovered that the statements made by DAVIDSON, which were attributed to DEBBIE BECKER were false. PLAINTIFF also discovered during the trial, that DAVIDSON knew that the statements he attributed to DEBBIE BECKER were false.

72.    Additionally, during the TRIAL, PLAINTIFF discovered that DAVIDSON, knowingly withheld evidence from the magistrate during the preliminary hearing and within the search warrant affidavit that demonstrated that DEBBIE BECKER made the false statements in an attempt to claim the $100,000.00 reward.

73.    Furthermore, during the TRIAL, PLAINTIFF discovered that the October 30, 1998, statement attributed to BECKER, within the Declaration in Support of Warrant of Arrest, was false.  Said statement provided evidence that BECKER made statements connected to PLAINTIFF, prior to the July 13, 1999, announcement of the $100,000.00 reward.  PLAINTIFF also discovered during the TRIAL, that DAVIDSON knew that said statements he attributed to BECKER were false.

74.    During the TRIAL, PLAINTIFF further discovered that the statements made by DAVIDSON, which were attributed to JAMES LARRY LEWIS, JR. were false. PLAINTIFF also discovered during the TRIAL, that DAVIDSON knew that the statements he attributed to JAMES LARRY LEWIS, JR. were false.

75.    During the prosecution of the underlying criminal matter CASEY had knowledge of the existence of exculpatory evidence that was in the possession of the prosecutorial team. The PLAINTIFF requested the exculpatory evidence from the prosecutor during the prosecution of the underlying criminal matter.  CASEY knowingly withheld the exculpatory evidence.

76.    CASEY and JACOBS entered into an agreement to withhold the exculpatory evidence during the prosecution of the underlying criminal matter.

77.    D.A.'s OFFICE has presented a history and pattern of practice of withholding exculpatory evidence, which was addressed by the Sonoma County Grand Jury.

78.    MULLINS, in a supervisory capacity, failed to establish procedures and regulations to ensure communication of all relevant information on each case to every lawyer who deals with a criminal matter; failed to supervise or train assistant district attorneys to disclose exculpatory evidence; and failed to supervise or train assistant district attorneys to refrain from the use of perjured testimony while engaging in the prosecution of criminal matters.

79.    MULLINS, in a supervisory capacity, enacted and/or maintained policies within D.A.'s OFFICE that established discovery procedures that interfered with the disclosure of exculpatory evidence to defendants in a criminal action.

80.    PASSALACQUA, in a supervisory capacity, failed to establish procedures and regulations within the D.A.'s OFFICE to ensure communication of all relevant information on each case to every lawyer who deals with it; failed to supervise or train assistant and deputy district attorneys on the disclosure of exculpatory evidence during the prosecution of criminal cases; and failed to supervise or train assistant district attorneys to refrain from the use of perjured testimony while engaging in the prosecution of criminal matters, which perpetuated the D.A.'s OFFICE'S policy to conceal exculpatory evidence from a defendant in a criminal matter being prosecuted by the D.A.'s OFFICE.

81.    MULLINS and PASSALACQUA, in their supervisory capacity, maintained policies within the D.A.'s OFFICE which established discovery procedures that interfered with the disclosure of exculpatory evidence to defendants in a criminal action.

82.    Defendants, COUNTY, D.A.'s OFFICE, and SONOMA COUNTY SHERIFF'S DEPARTMENT, failed to supervise or properly train the individual defendants, each of them,

1 and through their lack of proper supervision and training permitted these individuals to commit

2 some or all of the acts complained of in the preceding paragraphs.

3    83.    Defendants, COUNTY, D.A.'s OFFICE, and SONOMA COUNTY SHERIFF'S

4 DEPARTMENT, violated the PLAINTIFF'S civil rights under the Fifth, Sixth and Fourteenth

5 Amendments to the United States Constitution, as follows:

6    a. In failing to prevent the individual defendants, each of them, from using falsified
    evidence and withholding exculpatory evidence in criminal matter, after learning that

7    these officers and agents had falsified evidence, and withheld exculpatory evidence
    from criminal defendants;

8

9    b. In failing to timely notify the PLAINTIFF that these officers and agents had
    falsified evidence, the individual defendants, each of them, withheld exculpatory

10    evidence from PLAINTIFF, and had knowledge of the problem or should have
    known the problem existed;

11

12    c. In failing to notify the PLAINTIFF'S attorney that defendants, each of them, were
    falsifying evidence in their case files.

13

14    84.    The DISTRICT ATTORNEY'S OFFICE OF SONOMA COUNTY, and

15 SONOMA COUNTY SHERIFF'S DEPARTMENT are agencies of the COUNTY OF

16 SONOMA and functions under the umbrella of the Sonoma county government. Therefore, the

17 acts and policies of the police department are, in effect, the acts and policies of the COUNTY

18 OF SONOMA.

19    85.    As a result of the actions of the Defendants, each of them, PLAINTIFF was

20 arrested, held for approximately four years in jail without bail, was forced to stand trial, and was

21 found to be not guilty of all counts by a jury of his peers and was released on September 29,

22 2006.

23    86.    While PLAINTIFF was in the custody of the SONOMA COUNTY SHERIFF'S

24 DEPARTMENT and the COUNTY OF SONOMA, PLAINTIFF suffered injury and illness.

25 PLAINTIFF requested medical care to treat the illness and injury.  PLAINTIFF was denied

26 adequate medical care, resulting in injury to his health, strength, and activity, sustaining injury

1  to his nervous system, skeletal system, and person, all of which injuries have caused, and

2  continue to cause PLAINTIFF great mental and physical pain and suffering.  PLAINTIFF is

3  informed and believes and thereon alleges that such injuries will result in some permanent

4  disability to him.

5    87.    On, or about, October 10, 2006, COOK issued statements to a radio broadcast,

6  where she provided public statements which were presented to the public as facts, which in her

7  words were "to set the record straight on a few points."  COOK stated that PLAINTIFF was not

8  found innocent, stating specifically, "finding a person not guilty, does not mean they are

9  innocent."  COOK also stated that that PLAINTIFF miserably failed the polygraph test

10  connected to the double murder investigation.  COOK'S false statements regarding the

11  polygraph examination were more particularly, "Mr. Rutledge took a polygraph examination.

12  He, uh, it was a valid polygraph examination.  He was represented by counsel who authorized

13  his taking of that examination and he failed it miserably, the worst results that Department of

14  Justice Examiner had ever seen in her career."  The forgoing statement is false. COOK made

15  further statements implying that PLAINTIFF was guilty of murder, being more particularly

16  stating that "when they found him not guilty, they did not find him innocent."

17    88.    On, or about, October 27, 2006, PLAINTIFF demanded in writing that COOK

18  retract all false statements made by COOK, on or about, October 10, 2006.

19    89.    COOK failed to retract said statements.

20    90.    PLAINTIFF filed timely claims for damages with both COUNTY and the State

21  of California, which possess jurisdiction over all defendants.  Said claims were subsequently

22  denied and the complaint filed in this case was filed within a six-month period after the denials.

23    91.    As a result solely of the acts of the defendants, PLAINTIFF was denied

24  fundamental rights, was deprived of liberty, and was forced to answer criminal charges of the

25  most heinous nature.

26

92.    In addition, PLAINTIFF was forced to undergo the mental anguish and strain of these proceedings and will bear lasting and permanent mental scars of the ordeal, in addition to a permanent scar to his standing in the community.

93.    The acts of the defendants, each of them, were wanton, willful, unlawful, malicious, vicious, and without regard for the system of justice in these United States.

### ACCRUAL OF ACTION FOR FALSE ARREST

94.    As alleged herein, allegations in support of probable cause, within the Declaration in Support of Warrant of Arrest, were based upon statements attributed to POTTS, DEBBIE BECKER, and JAMES LEWIS JR, each of which, if were true, would independently support probable cause for arrest.

95.    As alleged herein, on May 8, 2002, DAVIDISON submitted to the magistrate his Declaration in Support of Warrant of Arrest.

96.    As alleged herein, DAVIDISON possessed knowledge that the statements, within his Declaration in Support of Warrant of Arrest, that were attributed to POTTS, DEBBIE BECKER, and JAMES LEWIS JR. were false.

97.    At some point in time after January 27, 2004, as alleged herein, PLAINTIFF discovered that the statements attributed POTTS were knowingly false.

98.    At some point during, or after, the month of April 2004, as alleged herein, PLAINTIFF discovered that DEFENDANTS deliberately withheld exculpatory evidence from the magistrate, which would have mitigated statements attributed POTTS.

99.    On or about March 26, 2006, as alleged herein, PLAINTIFF discovered that the statements attributed JAMES LEWIS JR, were knowingly false.

100.    During the TRIAL, as alleged herein, PLAINTIFF discovered that the statements attributed BECKER were knowingly false.

101. During the TRIAL, as alleged herein, PLAINTIFF discovered that DEFENDANTS deliberately withheld exculpatory evidence from the magistrate, which would have mitigated statements attributed BECKER.

102. Therefore, PLAINTIFF could not allege a cause of action for false arrest until the time of the TRIAL, when PLAINTIFF discovered that the statements attributed to BECKER and/or LEWIS were knowingly false.

## TOLLING – WHILE CRIMINAL CHARGES WERE PENDING

103. California State Personnel Board, provides that a CRIMINALIST employed by the Department of Justice an investigator.

104. California Penal Code § 830.1 (b) provides that investigators of the Department of Justice are peace officers.

105. POTTS is employed by the Department of Justice as SENIOR CRIMINALIST, therefore, POTTS was a peace officer.

106. California Government Code § 945.3 provides that any applicable statute of limitations for filing and prosecuting a civil action for money or damages against a peace officer are tolled during the period that the charges are pending before a superior court in the underlying criminal matter.

107. Charges were pending before the California Superior Court in the underlying criminal matter, until September 29, 2006.

108. Therefore, the statute of limitations for all causes of action alleged herein were tolled until September 29, 2006.

## TOLLING – WHILE PLAINTIFF WAS IMPRISONED

109. In California, pursuant to California Code of Civil Procedure § 352.1, a person entitled to bring an action, is, at the time the cause of action accrued, imprisoned on a criminal

charge, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

110.    Plaintiff was imprisoned until September 26, 2006.

111.    Therefore, if any of the causes of action alleged herein accrued while PLAINTIFF was imprisoned, the statute of limitations of those causes of action are tolled up to two years.

**FIRST CAUSE OF ACTION**
**INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Entitling relief under CGC § 810 et seq**
**(ALL DEFENDANTS)**

112.    PLAINTIFF refers to and incorporates herein Paragraphs 1 through 111 above.

113.    Defendants' conduct was outrageous, intentional and malicious, or at the least grossly negligent, exhibiting a reckless disregard for PLAINTIFF'S rights.

114.    As a proximate result of the acts of Defendants, each of them, PLAINTIFF suffered severe emotional distress in the form of humiliation, mental anguish, anxiety, emotional distress, alienation and physical distress.

115.    Defendant's conduct, as herein alleged, was not privileged.

116.    As a direct and proximate result of defendant's conduct, PLAINTIFF was injured in mind and body and has suffered general damages in an amount to be determined by proof at trial.

117.    As a further proximate result of the aforementioned acts of Defendants, each of them, PLAINTIFF was required to and did employ physicians to examine, treat and care for PLAINTIFF, and incurred additional medical expenses in amounts not yet ascertained. PLAINTIFF has been informed and believes and thereon alleges that he will incur additional medical expenses in the future, the exact amounts of which are currently unknown.

118.    By reason of the aforementioned despicable acts of Defendants, each of them, PLAINTIFF was prevented from attending to his usual business and thereby lost earnings and

1  revenues in amounts not yet ascertained.  PLAINTIFF is informed and believes and thereon

2  alleges that he will be deprived from attending to his usual business for a period in the future

3  which cannot yet be ascertained, and will thereby sustain further loss of earning in amounts

4  according to proof.

5      119.    As a further direct and proximate result of Defendants' unlawful actions as

6  alleged herein, PLAINTIFF suffered physical, emotional and other monetary damages entitling

7  him to compensation, and damages under the California Tort Claims Act, CGC § 810 et seq.

8

9                          **SECOND CAUSE OF ACTION**
                        **FALSE ARREST AND FALSE IMPRISONMENT**
10                    **Entitling relief under 42 U.S.C. Sections 1983 and 1985**
               **(DEFENDANTS: COUNTY OF SONOMA, SONOMA COUNTY SHERIFF'S**
11                **DEPARTMENT, CASEY, JACOBS, DAVIDSON, and POTTS)**

12     120.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1

13  though 119 above.

14     121.    As herein alleged, PLAINTIFF was falsely arrested by Defendants. COUNTY,

15  SHERIFF, CASEY, DAVIDSON and POTTS, under color of law, and unlawfully held captive

16  against his will without valid warrant or any valid order of commitment or any other legal

17  authority of any kind.  PLAINTIFF was arrested pursuant to an invalid arrest warrant, which

18  was issued without probable cause pursuant to an affidavit, which contained materially false

19  information and omitted exculpatory information, which without the inclusion of the false

20  information, and/or exclusion of exculpatory information, within the supporting affidavit, the

21  warrant would not have issued.  Said false statements and omissions were made in conscious

22  disregard for the truth and/or were intentionally made by DAVIDSON, POTTS AND CASEY,

23  knowing said statements to be false, and knowing the existence of said exculpatory evidence.

24  For the forgoing reasons, Defendants, each of them, falsely arrested PLAINTIFF in violation of

25  PLAINTIFF'S civil rights  under the Fourth Amendment.

26

122.    As herein alleged, PLAINTIFF was also unlawfully and falsely imprisoned, by Defendants, each of them, against his will, without valid warrant or any valid order of commitment or any other legal authority of any kind.   Under a color of law COUNTY, SHERIFF, CASEY, DAVIDSON and POTTS imprisoned PLAINTIFF pursuant to an invalid arrest warrant, which was issued without probable cause pursuant to a falsified affidavit in violation of PLAINTIFF'S civil rights under the Fourth Amendment. PLAINTIFF continued to be imprisoned pursuant to a holding order, which was issued without probable cause pursuant to falsified evidence presented by Defendants to the magistrate, and by the Defendants' withholding and concealment of exculpatory evidence from the magistrate, at both of the preliminary hearings in the underlying criminal matter.   For the forgoing reasons, Defendants, each of them, falsely imprisoned PLAINTIFF in violation of PLAINTIFF'S civil rights  under the Fourth Amendment.

123.    As a proximate result of the acts of Defendants as alleged, PLAINTIFF suffered physical and emotional injuries all of which have caused, and continue to cause, PLAINTIFF great mental, physical and nervous pain and suffering.   PLAINTIFF is informed and believes and thereon alleges that these injuries will result in some permanent disability to him.   As a result of these injuries, PLAINTIFF has suffered general damages in amounts not yet ascertained.

124.    As a further proximate result of Defendants' acts, PLAINTIFF has been damaged in that he has been required to expend money and incur obligations for legal services, medical services, drugs, and other sundries reasonably required in the treatment and relief of the injuries herein alleged in amounts not yet ascertained.

125.    As a further proximate result of the acts of Defendants, PLAINTIFF has incurred, and will continue to incur, legal, medical and related expenses.  The full amount of the aforementioned expenses are not known to PLAINTIFF at this time.

126.    As a further proximate result of the acts of defendant, PLAINTIFF was prevented from attending to his usual occupation and thereby lost earnings to his damage in amounts not yet ascertained.

127.    As a further proximate result of Defendants' actions, PLAINTIFF'S present and future earning capacity has been greatly impaired in amounts not yet ascertained.

128.    The aforementioned acts of Defendants in falsely arresting and imprisoning PLAINTIFF were willful and malicious, or grossly negligent, and were intended to oppress and cause injury to PLAINTIFF.

129.    As a further direct and proximate result of Defendants' unlawful actions, which were willful, wanton, malicious and oppressive or negligent as alleged herein, PLAINTIFF suffered physical, emotional and other damages entitling him to compensation under 42 U.S.C. Sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

### THIRD CAUSE OF ACTION
### FALSE ARREST
### Entitling relief under CGC § 810 et seq, and CCC § 52.1
### (DEFENDANTS: COUNTY OF SONOMA, SHERIFF, CASEY, DAVIDSON, POTTS)

130.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 though 129 above.

131.    On or about, May 8, 2002 defendant's CASEY and DAVIDSON executed an arrest warrant for the arrest of PLAINTIFF.  The arrest warrant was obtained in violation of State Constitution Article I Section 13 in that DAVIDSON, under the orders and direction of CASEY, presented to a magistrate a false affidavit in support of the arrest warrant that contained materially false information, which without its inclusion in the supporting affidavit the warrant would not have issued, and omitted exculpatory information, which without the exclusion of exculpatory information the warrant would not have issued.  Said false statements

1  and omissions were made in conscious disregard for the truth and/or were intentionally made by

2  Defendants knowing said statements to be false.

3      132.    As herein alleged, PLAINTIFF was also falsely arrested by Defendants,

4  COUNTY, and POTTS, and unlawfully held captive against his will, maliciously and without

5  valid warrant or any order of commitment or any other legal authority of any kind by

6  COUNTY, CASEY, DAVIDSON and POTTS.    PLAINTIFF was arrested and imprisoned

7  pursuant to an invalid arrest warrant, which was issued without probable cause pursuant to a

8  falsified affidavit in violation of his Fourth Amendments rights provided by the Constitution of

9  the United States and Article I Section 13 of the California Constitution.

10     133.    The arrest and imprisonment was made without PLAINTIFF'S consent, lawful

11  authority and without privilege.

12     134.    The false arrest and imprisonment was made under color of law and was

13  accomplished by the use of threats, intimidation, or coercion.

14     135.    As a proximate result of the acts of Defendants as alleged, PLAINTIFF suffered

15  physical and emotional injuries all of which have caused, and continue to cause, PLAINTIFF

16  great mental, physical and nervous pain and suffering.    PLAINTIFF is informed and believes

17  and thereon alleges that these injuries will result in some permanent disability to him.    As a

18  result of these injuries, PLAINTIFF has suffered general damages in amounts not yet

19  ascertained.

20     136.    As a further proximate result of Defendants' acts, PLAINTIFF has been damaged

21  in that he has been required to expend money and incur obligations for legal services, medical

22  services, drugs, and other sundries reasonably required in the treatment and relief of the injuries

23  herein alleged in amounts not yet ascertained.

24

25

26

**THIRD AMENDED COMPLAINT**

137.   As a further proximate result of the acts of Defendants, PLAINTIFF has incurred, and will continue to incur, legal, medical and related expenses.  The full amount of the aforementioned expenses are not known to PLAINTIFF at this time.

138.   As a further proximate result of the acts of defendant, PLAINTIFF was prevented from attending to his usual occupation and thereby lost earnings to his damage in amounts not yet ascertained.

139.   As a further proximate result of Defendants' actions, PLAINTIFF'S present and future earning capacity has been greatly impaired in amounts not yet ascertained.

140.   The aforementioned acts of Defendants in falsely arresting and imprisoning PLAINTIFF were willful and malicious, or grossly negligent, and were intended to oppress and cause injury to PLAINTIFF.

141.   As a further direct and proximate result of Defendants' unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation, and punitive damages under the California Tort Claims Act, CGC § 810 et seq and the California Bane Act, CCC § 52.1.

**FOURTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
**Entitling relief under CGC § 810 et seq, and CCC § 52.1**
**(DEFENDANTS: COUNTY OF SONOMA, SHERIFF, CASEY,**
**JACOBS, DAVIDSON, and POTTS)**

142.   PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 though 141 above.

143.   On or about, May 8, 2002 defendant's SHERIFF, CASEY and DAVIDSON executed an arrest warrant for the arrest of PLAINTIFF.  The arrest warrant was obtained in violation of State Constitution Article I Section 13 in that DAVIDSON, under the orders and direction of  CASEY, presented to a magistrate a false affidavit in support of the arrest warrant that contained materially false information, which without its inclusion in the supporting

1   affidavit the warrant would not have issued.  Said false statements were made in conscious

2   disregard for the truth and or were intentionally made by DAVIDSON knowing said statements

3   to be false.

4        144.    As herein alleged, PLAINTIFF was falsely arrested by Defendants, COUNTY,

5   SHERIFF, CASEY, DAVIDSON and POTTS, and unlawfully held captive against his will and

6   falsely imprisoned maliciously and without valid warrant or any order of commitment or any

7   other legal authority of any kind.

8        145.    As herein alleged, PLAINTIFF was falsely imprisoned by Defendants,

9   COUNTY, SHERIFF, CASEY, JACOBS, DAVIDSON and POTTS, and unlawfully held

10  captive against his will and falsely imprisoned maliciously and without valid warrant or any

11  order of commitment or any other legal authority of any kind.

12       146.    The arrest and imprisonment was made under color of law and was accomplished

13  by the use of threats, intimidation, or coercion.

14       147.    As a proximate result of the acts of Defendants as alleged, PLAINTIFF suffered

15  physical and emotional injuries all of which have caused, and continue to cause, PLAINTIFF

16  great mental, physical and nervous pain and suffering.  PLAINTIFF is informed and believes

17  and thereon alleges that these injuries will result in some permanent disability to him.  As a

18  result of these injuries, PLAINTIFF has suffered general damages in amounts not yet

19  ascertained.

20       148.    As a further proximate result of Defendants' acts, PLAINTIFF has been damaged

21  in that he has been required to expend money and incur obligations for legal services, medical

22  services, drugs, and sundries reasonably required in the treatment and relief of the injuries

23  herein alleged in amounts not yet ascertained.

24

25

26

149.    As a further proximate result of the acts of Defendants, PLAINTIFF has incurred, and will continue to incur, legal, medical and related expenses.  The full amount of the aforementioned expenses are not known to PLAINTIFF at this time.

150.    As a further proximate result of the acts of defendant, PLAINTIFF was prevented from attending to his usual occupation and thereby lost earnings to his damage in amounts not yet ascertained.

151.    As a further proximate result of Defendants' actions, PLAINTIFF'S present and future earning capacity has been greatly impaired in amounts not yet ascertained.

152.    The aforementioned acts of Defendants in falsely arresting and imprisoning PLAINTIFF were willful and malicious, or grossly negligent, and were intended to oppress and cause injury to PLAINTIFF.

153.    As a further direct and proximate result of Defendants' unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation, and damages under the California Tort Claims Act, CGC § 810 et seq, and compensation, and damages under the California Bane Act, CCC § 52.1.

**FIFTH CAUSE OF ACTION**
**FALSE IMPRISONMENT – COMMON LAW TORT**
**Entitling relief under CGC § 810 et seq and CCC § 52.1**
**(DEFENDANTS COUNTY OF SONOMA, SHERIFF, CASEY,**
**JACOBS, DAVIDSON, and POTTS)**

154.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 though 153 above.

155.    As herein alleged, PLAINTIFF was falsely arrested by Defendants, COUNTY, SHERIFF, CASEY, DAVIDSON and POTTS, unlawfully held PLAINTIFF captive against his will and falsely imprisoned PLAINTIFF maliciously and without valid warrant or any order of commitment or any other legal authority of any kind.

156.    On or about, May 8, 2002 defendant's CASEY and DAVIDSON executed an arrest warrant for the arrest of PLAINTIFF.    The arrest warrant was obtained in violation of State Constitution Article I Section 13 in that DAVIDSON, under the orders and direction of CASEY, presented to a magistrate a false affidavit in support of the arrest warrant that contained materially false information, which without its inclusion in the supporting affidavit the warrant would not have issued.    Said false statements were made in conscious disregard for the truth and or were intentionally made by DAVIDSON knowing said statements to be false.

157.    As herein alleged, PLAINTIFF was falsely imprisoned by Defendants, COUNTY, SHERIFF, CASEY, JACOBS, DAVIDSON and POTTS, and unlawfully held captive against his will and falsely imprisoned maliciously and without valid warrant or any order of commitment or any other legal authority of any kind.

158.    The arrest and imprisonment was made under color of law and was accomplished by the use of threats, intimidation, or coercion.

159.    As a proximate result of the acts of Defendants as alleged, PLAINTIFF suffered physical and emotional injuries all of which have caused, and continue to cause, PLAINTIFF great mental, physical and nervous pain and suffering.    PLAINTIFF is informed and believes and thereon alleges that these injuries will result in some permanent disability to him.    As a result of these injuries, PLAINTIFF has suffered general damages in amounts not yet ascertained.

160.    As a further proximate result of Defendants' acts, PLAINTIFF has been damaged in that he has been required to expend money and incur obligations for legal services, medical services, drugs, and other sundries reasonably required in the treatment and relief of the injuries herein alleged in amounts not yet ascertained.

**THIRD AMENDED COMPLAINT**

161.    As a further proximate result of the acts of Defendants, PLAINTIFF has incurred, and will continue to incur, legal, medical and related expenses.  The full amount of the aforementioned expenses are not known to PLAINTIFF at this time.

162.    As a further proximate result of the acts of defendant, PLAINTIFF was prevented from attending to his usual occupation and thereby lost earnings to his damage in amounts not yet ascertained.

163.    As a further proximate result of Defendants' actions, PLAINTIFF'S present and future earning capacity has been greatly impaired in amounts not yet ascertained.

164.    The aforementioned acts of Defendants in falsely arresting and imprisoning PLAINTIFF were willful and malicious, or grossly negligent, and were intended to oppress and cause injury to PLAINTIFF.

165.    As a further direct and proximate result of Defendants' unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation, and punitive damages under the California Tort Claims Act, CGC § 810 et seq. and compensation and damages under the California Bane Act, CCC § 52.1, for the common law tort of false imprisonment.

### SIXTH CAUSE OF ACTION
### DEFAMATION, SLANDER AND LIBEL
#### Entitling relief under CGC § 810 et seq
#### (DEFENDANT COOK)

166.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 though 165 above.

167.    On or about, October 10, 2006, defendant COOK committed acts, outside the scope of her official duties, which consisted of issuing a false and unprivileged publication which exposed PLAINTIFF to hatred, contempt, ridicule, disgrace, which caused PLAINTIFF to be shunned, avoided and injured his occupation.

1    168.    The false and unprivileged publication made by COOK concerning PLAINTIFF

2    was made with her knowledge that it was false or with reckless disregard as to whether it was

3    false or not.

4    169.    On or about, October 27, 2006, PLAINTIFF demanded defendant COOK to

5    retract and correct the false and unprivileged publication made by COOK concerning

6    PLAINTIFF.

7    170.    Defendant COOK failed to correct the false and unprivileged publication

8    concerning the PLAINTIFF.

9    171.    Defendant COOK made the false and unprivileged publication concerning the

10    PLAINTIFF in the deliberate and successful attempt to destroy PLAINTIFF'S present and

11    future employment, reputation and family relationships.

12    172.    Defendant's conduct was not only outrageous, it was intentional and malicious,

13    exhibiting a reckless disregard for PLAINTIFF'S rights, causing PLAINTIFF to suffer

14    humiliation, mental anguish, stress and emotional and physical distress and PLAINTIFF was

15    injured financially, and injured in mind and body, all to his damage in amounts according to

16    proof.

17    173.    Defendant's conduct was also intentional and malicious, exhibiting a reckless

18    disregard for PLAINTIFF'S rights, causing PLAINTIFF to suffer humiliation, mental anguish,

19    stress and emotional and physical distress.    Defendant was therefore guilty of malice,

20    oppression amounting to despicable conduct so as to justify an award of exemplary or punitive

21    damages.

22    174.    As a further direct and proximate result of Defendants' unlawful actions as

23    alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages

24    entitling him to compensation, and punitive damages under the California Tort Claims Act,

25    CGC § 810 et seq and CCC §§ 44-48a.

26

**THIRD AMENDED COMPLAINT**

1
2
3

**SEVENTH CAUSE OF ACTION**
**CONSPIRACY PURSUANT TO 42 U.S.C. §§ 1983 and 1985**
**(ALL DEFENDANTS)**

4
5

175.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 though 174 above.

6
7
8
9
10

176.    In a combination of two or more persons, Defendants acted in concert to commit an individual act, or a lawful act by unlawful means, to deprive plaintiff of a protected right and to inflict a wrong against or injury upon PLAINTIFF.  In committing the individual act, or a lawful act by unlawful means, the Defendants made an agreement to inflict a wrong against or injury upon PLAINTIFF.

11
12
13
14
15
16

177.    Defendants further obstructed justice by conspiring to deter, by force, intimidation, or threat, a witness in the Superior Court of California from testifying to a matter pending in the underlying criminal matter, and to prevent a witness from testifying freely, fully, and truthfully, and/or to injure said witness in his person or property on account of his having so attended or testified, or to influence the presentment of the underlying criminal matter at the preliminary hearing and/or subsequent pre-trial hearings and/or trial.

17
18
19

178.    Defendant's further obstructed justice by conspiring for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice in the underlying criminal matter, with intent to deny to the plaintiff his right to due process and the equal protection of the laws.

20
21
22

179.    As a result of the Defendants' acts, PLAINTFF was deprived of his constitutional right to be free from unlawful searches and seizures, and his right to be free from violence or intimidation, and deprived of his right to equal protection, and due process.

23
24
25

180.    Defendants' conduct was not only outrageous, it was intentional and malicious, exhibiting a reckless disregard for PLAINTIFF'S rights, causing PLAINTIFF to suffer humiliation, mental anguish, stress and emotional and physical distress and PLAINTIFF was

26

1    injured financially, and injured in mind and body, all to his damage in amounts according to

2    proof.

3        181.    Defendants' conduct was also intentional and malicious, exhibiting a reckless

4    disregard for PLAINTIFF'S rights, causing PLAINTIFF to suffer humiliation, mental anguish,

5    stress and emotional and physical distress.    Defendants were therefore guilty of malice,

6    oppression amounting to despicable conduct entitling him to compensation under 42 U.S.C.

7    Sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in

8    pursuing these claims under 42 U.S.C. Section 1988.

9

10                        **EIGHTH CAUSE OF ACTION -**
       **VIOLATION OF CONSTITUTIONAL RIGHTS – PROCEDURAL DUE PROCESS**
11              **CLAIMS, TO WIT: DENIAL OF A FAIR TRIAL**
              **Entitling relief under 42 U.S.C. Sections 1983 and 1985**
12                    **(ALL DEFENDANTS EXCEPT POTTS)**

13        182.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1

14    through 181 above.

15        183.    As alleged herein, Defendants, each of them, withheld exculpatory evidence, and

16    *Brady Material*, from PLAINTIFF, during the prosecution of the underlying criminal matter.

17        184.    The aforementioned acts of Defendants were willful and malicious, or grossly

18    negligent, and were intended to oppress and cause injury to PLAINTIFF.

19        185.    As a direct and proximate result of Defendants' unlawful actions as alleged

20    herein, PLAINTIFF was, under a color of law, deprived of his due process right to a fair trial,

21    and his Fifth Amendment right to due process of the law as applied to the states under the

22    Fourteenth Amendment.

23        186.    As a further direct and proximate result of Defendants' unlawful actions, which

24    were willful, wanton, malicious and oppressive or negligent as alleged herein, PLAINTIFF

25    suffered physical and emotional and other monetary damages entitling him to compensation

26

1   under 42 U.S.C. Sections 1983 and 1985 according to proof, as well as reasonable attorneys

2   fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

3

### NINTHTH CAUSE OF ACTION -
### VIOLATION OF CONSTITUTIONAL RIGHTS –TO WIT: DENIAL OF A FAIR TRIAL
### AND DENIAL OF DUE PROCESS
### Entitling relief under CCC § 52.1 and CGC § 810 et seq
### (ALL DEFENDANTS)

7   187.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1

8   through 187 above.

9   188.    As alleged herein, Defendants, each of them, withheld exculpatory evidence, and

10  *Brady Material*, from PLAINTIFF, during the prosecution of the underlying criminal matter.

11  189.    The aforementioned acts of Defendants were willful and malicious, or grossly

12  negligent, and were intended to oppress and cause injury to PLAINTIFF.

13  190.    As a direct and proximate result of Defendants' unlawful actions as alleged

14  herein, PLAINTIFF was deprived of his due process right to a fair trial, and his Fifth

15  Amendment right to due process of the law as applied to the states under the Fourteenth

16  Amendment.

17  191.    As a direct and proximate result of Defendants' unlawful actions as alleged

18  herein, PLAINTIFF was deprived of his due process right to a fair trial, and his right to due

19  process of the law as provided by the Constitution of the State of California, Article I, Section

20  15.

21  192.    The constitutional violations alleged herein were made under color of law and

22  was accomplished by the use of threats, intimidation, or coercion.

23  193.    As a further direct and proximate result of Defendants' unlawful actions as

24  alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages

25  entitling him to compensation, and punitive damages under the California Tort Claims Act,

26  CGC § 810 et seq and the California Bane Act, CCC § 52.1.

1
2
3
4

**TENTH CAUSE OF ACTION**
**VIOLATION OF CONSTITUTIONAL RIGHTS BY FAILING TO ADEQUATELY**
**TRAIN AND SUPERVISE DEPUTY DISTRICT ATTORNEYS**
**Entitling relief under 42 U.S.C. Sections 1983 and 1985**
**(DEFENDANTS: COUNTY, DA'S OFFICE, and MULLINS)**

5
6

194.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 through 193 above.

7
8
9
10

195.    Defendants COUNTY, DA'S OFFICE, and MULLINS had knowledge of the constitutional violations alleged herein, and/or should have known, and had constructive knowledge of the constitutional violations, because the violations were so prevalent that the supervisor should have known of them in the proper exercise of his duties.

11
12
13

196.    Defendants, COUNTY, DA'S OFFICE, and MULLINS, failed to rectify the violations, and failed to adequately train or supervise subordinate employees in order to prevent the constitutional violations.

14
15
16
17
18

197.    As a direct and proximate result of defendant's unlawful actions as alleged herein, PLAINTIFF was deprived of his Fourth Amendment Right to be free from unreasonable search and seizure and to be free from from cruel and unusual punishment as a pre-trial detainee, and his Fifth Amendment right to due process of the law as applied to the states under the Fourteenth Amendment.

19
20
21
22
23

198.    As a further direct and proximate result of defendant's unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation under 42 U.S.C. Sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

24
25
26

**THIRD AMENDED COMPLAINT**

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF CONSTITUTIONAL RIGHTS BY FAILING TO ADEQUATELY**
**TRAIN AND SUPERVISE DEPUTY DISTRICT ATTORNEYS**
**Entitling relief under 42 U.S.C. Sections 1983 and 1985**
**(DEFENDANTS: COUNTY, DA'S OFFICE, and PASSALACQUA)**

199.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 through 198 above.

200.    Defendants, COUNTY, DA'S OFFICE, and PASSALACQUA, had knowledge of the constitutional violations alleged herein, and/or should have known, and had constructive knowledge of the constitutional violations, because the violations were so prevalent that the supervisor should have known of them in the proper exercise of his duties.

201.    Defendants, COUNTY, DA'S OFFICE, and PASSALACQUA, failed to rectify the violations, and failed to adequately train or supervise subordinate employees in order to prevent the constitutional violations.

202.    As a direct and proximate result of defendant's unlawful actions as alleged herein, PLAINTIFF was deprived of his Fourth Amendment Right to be free from unreasonable search and seizure and to be free from cruel and unusual punishment as a pre-trial detainee, and his Fifth Amendment right to due process of the law as applied to the states under the Fourteenth Amendment.

203.    As a further direct and proximate result of defendant's unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation under 42 U.S.C. Sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

**TWELTH CAUSE OF ACTION**
**FOURTH AMENDMENT MALICIOUS PROSECUTION**
**UNDER *ALBRIGHT V. OLIVER*, 510 U.S. 266**
**AND COMMON LAW TORT**
**Entitling relief under 42 U.S.C. Sections 1983 and 1985, and**
**CCC § 52.1 and CGC § 810 et seq**
**(ALL DEFENDANTS)**

204.    PLAINTIFF refers to and incorporates herein the allegations in Paragraphs 1 through 203 above.

205.    The constitutional violations alleged herein were made under color of law and was accomplished by the use of threats, intimidation, or coercion.

206.    As a direct and proximate result of Defendants' unlawful conscience-shocking actions as alleged herein, PLAINTIFF was deprived of liberty without due process of law, in that Defendants intentionally or with reckless indifference fabricated, falsified evidence to provide the appearance of probable cause to hold plaintiff on murder charges and withheld evidence that would enable PLAINTFF to prove his innocence and/or terminate the underlying criminal case at the preliminary hearing stage, and/or other pretrial stage of said criminal case.

207.    As a direct and proximate result of Defendants' unlawful actions plaintiff suffered four years of detention and great humiliation, ridicule, and mental anguish.

208.    As a further direct and proximate result of defendant's unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation under 42 U.S.C. Sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

209.    As a further direct and proximate result of Defendants' unlawful actions as alleged herein, PLAINTIFF suffered physical and emotional and other monetary damages entitling him to compensation, and punitive damages under the California Tort Claims Act, CGC § 810 et seq and the California Bane Act, CCC § 52.1.

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a trial by jury on all of the above causes of action.

WHEREFORE, PLAINTIFF prays for the following relief as to all causes of action:

    A.    A judgment awarding PLAINTIFF general, damages to plaintiff in an amount to be determined by the trier of fact as sufficient to compensate the plaintiff for the injuries described in this complaint;

    B.    An award of punitive damages to plaintiff in an amount to be determined by the trier of fact as sufficient to punish each defendant against whom these damages are awarded and sufficient to deter similar conduct in the future by these defendants;

    C.    A judgment awarding PLAINTIFF reasonable attorneys fees;

    D.    A judgment awarding PLAINTIFF  his costs of suit; and

    E.    Such other and further relief as the Court deems proper.

Dated: July 28, 2008

-------------------/s/--------------------
Editte Lerman
Attorney for Plaintiff
ZACHARIAH JUDSON RUTLEDGE

**THIRD AMENDED COMPLAINT**

## DECLARATION OF SERVICE

I, Editte D. Lerman, declare as follows:
I am a resident of the State of California, residing or employed in Mendocino, California.
I am over the age of 18 years and am not a party to the above-entitled action. My business
address is 45060 Ukiah Street P.O. Box 802, Mendocino C.A. 95460.

On July 29, 2008,

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR: VIOLATION OF
CIVIL RIGHTS INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS; FALSE ARREST AND IMPRISONMENT; UNLAWFUL SEIZURE;
SLANDER AND LIBEL; AND FOR DAMAGES UNDER THE CALIFORNIA
BANE ACT AND THE CALIFORNIA TORT CLAIMS ACT**

was filed and served upon the following parties via the Court's PACER-ECF electronic
filing system.

***Attorneys for Defendant Michael Potts***
EDMUND G BROWN, JR.
Attorney General of the State of California
JOHN P. DEVINE, ESQ.
Deputy Attorney General of the State of California
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

***Attorneys for Defendants County of Sonoma, Sonoma County Sheriff's
Department, Sonoma County District Attorney's Office, Stephan Passalacqua,
J. Michael Mullins, Greg Jacobs, Christine M. Cook, Russel L. Davidson,
James Patrick Casey, and Detective***
Beau M. Martin
Michael D. Senneff
Bonnie A. Freeman
SENNEFF FREEMAN & BLUESTONE, LLP
50 Old Courthouse Square, Suite 401
P.O. Box 3727
Santa Rosa, CA 95402-3729


I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed this 29th day of July, 2008, at Mendocino, California.


---------------/s/-------------------
Edite Lerman