1
2
3

**J. DAVID NICK, Esq. (**SB#157687)
99 Osgood Place, Ste 1
San Francisco, CA 94133
Tel: (415) 552-4444
Fax: (415) 358-5897

4
5
6
7

**EDITTE LERMAN, Esq. (**SB#241471)
45060 Ukiah Street
P.O. Box 802
Mendocino, CA 95460
Tel: (707) 937-1711
Fax: (707) 937-2207

8
9

Attorneys for Plaintiff
ZACHARIAH JUDSON RUTLEDGE

10
11

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

12

* * * * * *

13
14
15
16

ZACHARIAH JUDSON RUTLEDGE,

        Plaintiff,

    vs.

17
18
19
20
21
22
23

COUNTY OF SONOMA, MICHAEL
POTTS, RUSSEL L. DAVIDSON,
JAMES PATRICK CASEY, CHRISTINE
M. COOK, BEAU R. MARTIN,
J. MICHAEL MULLINS, STEPHAN R.
PASSALACQUA, GREG JACOBS,
SONOMA COUNTY SHERIFF'S
DEPARTMENT, SONOMA COUNTY
DISTRICT ATTORNEY'S OFFICE,
and DOES 1 through 40.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:  CV 07-04274 CW

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT;
POINTS AND AUTHORITIES**

Date:    September 16, 2008
Time:    2:00 p.m.
Courtroom: 2 (4th Floor)
Judge: Hon. Claudia Wilken

24
25
26

# TABLE OF CONTENTS

I.    LEGAL STANDARD   …1

II.    DEFENDANT'S THEORY, THAT PLAINTIFF'S CLAIM IS UNTIMELY, FAILS BECAUSE THE FALSE ARREST CAUSE OF ACTION ACCRUED DURING THE 2006 TRIAL …2

    A.  THE CAUSE OF ACTION FOR FALSE ARREST DID NOT ACCRUE AT THE ARRAINGMENT OR THE 2004 DISMISSAL …2

    B.  A GOVERNMENT CLAIM ACCRUES ON THE DATE THE UNDERLYING CAUSE OF ACTION ACCRUES. …4

    C.  TORT ACTIONS ACCRUE ON THE OCCURRENCE OF THE LAST ELEMENT ESSENTIAL TO THE CAUSE OF ACTION.  …5

    D.  HOWEVER, THE ACCRUAL DATE IS DEPENDENT ON THE DATE THE PLAINTIFF LEARNS THE FACTS ESSENTIAL TO HIS CLAIM. …6

    E.  BELATED DISCOVERY RULE – ACCRUAL OCCURS AT THE TIME THE PLAINTIFF BECAME AWARE OF THE LAST ESSENTIAL FACT REQUIRED TO PLEA THE CAUSE OF ACTION …6

    F.  IN ORDER TO PLEAD A CAUSE OF ACTION FALSE ARREST INVOLVING A WARRANT, A PLAINTIFF MUST BE ABLE TO SHOW THAT THE WARRANT WAS INVALID ON ITS FACE …7

    G.  A WARRANT IS INVALID ON ITS FACE IF IT WAS OBTAINED THROUGH JUDICIAL DECEPTION. …8

    H.  THE ARREST WARRANT WAS BASED UPON STATEMENTS PROVIDED BY POTTS, LEWIS AND BECKER, EACH OF WHICH PROVIDED PROBABLE CAUSE.  …9

    I.  THE RECORD IN THE UNDERLYING CRIMINAL MATTER ESTABLISHES THAT PROBABLE CAUSE CONTINUED TO EXIST ON THE FACE OF THE WARRANT AFTER THE STATEMENTS MADE BY POTTS WERE OMITTED…9

**J. SINCE THE ARREST WARRANT WAS BASED UPON STATEMENTS PROVIDED BY POTTS, LEWIS AND BECKER, EACH OF WHICH PROVIDED PROBABLE CAUSE, THE PLAINTIFF MUST BE ABLE TO SHOW THAT STATEMENTS ATTRIBUTED TO EACH WITNESS IS FALSE, OR THAT EXCULPATORY EVIDENCE CONNECTED TO EACH WITNESS WAS OMITTED, IN ORDER TO SHOW THE WARRANT IS INVALID. …. 12**

**K. PLANTIFF DISCOVERED THAT THE WARRANT WAS VOID ON SEPTEMBER 15, 2006. …12**

**1. <u>POTTS</u> – DISCOVERY THAT THE STATEMENTS ATTRIBUTED TO POTTS WERE FALSE WAS MADE AT A POINT IN TIME BETWEEN JANUARY 27, 2004 AND MAY 19, 2004 …12**

**2. <u>LEWIS</u> - ON, OR ABOUT, MARCH 26, 2006, PLAINTIFF DISCOVERED THAT THE STATEMENTS ATTRIBUTED TO LEWIS WERE FALSE …14**

**3. <u>BECKER</u> – ON SEPTEMBER 15, 2006, PLAINTIFF DISCOVERED THAT THE STATEMENTS ATTRIBUTED TO BECKER WERE FALSE. …14**

**M. SINCE PLAINTIFF WAS NOT ABLE TO SHOW THAT THE WARRANT WAS INVALID UNTILL HE DISCOVERED THAT BECKER'S STATEMENTS WERE FALSE,THE FALSE ARREST CAUSE OF ACTION ACCRUED ON SEPTEMBER 15, 2006. …15**

**N. THE GOVERNMENT CLAIM WAS TIMELY FILED, WITHIN SIX MONTHS OF THE SEPTEMBER 15, 2006, ACCRUAL DATE OF THE FALSE ARREST CAUSE OF ACTION …16**

**III. PLAINTIFF'S 1983 ACTION WAS TIMELY FILED … 16**

**IV. PLAINTIFF'S 1983 ACTION WAS TIMELY FILED, EVEN IF THE ACCRUAL DATE OCCURRED WHEN PLAINTIFF DISCOVERED THAT THE STATEMENTS MADE BY POTTS WERE FALSE. …16**

**A. THE STATUTE OF LIMITATIONS WAS TOLLED TWO YEARS WHILE THE PLAINTIFF WAS IMPRISONED, AND THE § 1983 STATUE OF LIMITATIONS WAS TWO YEARS, THUS THE COMPLAINT WAS TIMELY FILED. ….17**

**B.    EVEN IF THE DISCOVERY RULE DID NOT APPLY TO THIS ACTION, THE STATUTE OF LIMITATIONS WAS TOLLED WHILE THE UNDERLYING CRIMINAL ACTION WAS PENDING.  … 18**

    **1.    UNDER CALIFORNIA STATE LAW THE LIMITATIONS OF AN ACTION AGAINST A PEACE OFFICER IS TOLLED WHILE THE UNDERLYING CRIMINAL ACTION IS PENDING. …18**

    **2.    MICHAEL POTTS WAS A PEACE OFFICER AS DEFINED BY CALIFORNIA PENAL CODE § 830.1 (B) IN CONJUNCTION WITH HIS OFFICIAL JOB DESCRIPTION PROVIDED BY THE CALIFORNIA STATE PERSONNEL BOARD…19**

**V.    CONSPIRACY …20**

**VI.    MALICIOUS PROSECUTION …. 23**

**VII.    CONCLUSION …24**

# TABLE OF AUTHORITIES

*Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144.  …20

*Albright v. Oliver* (1994) 510 U.S. 266  …24

*Andonagui v. May Dept. Stores Co.*, 128 Cal. App. 4th 435, 440  …18

*Baldwin v. Placer County*, (9th Cir. 2005) 418 F.3d 966, 970 …8

*Bastian v. County of San Luis Obispo* (1988) 199 Cal. App. 3d 520, 527, 528.  …7

*Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal. 4th 520, 531 n.4 …5

*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal. App. 4th 1048, 1057-1060. …6

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.* (9th Cir. 1990) 911 F.2d 242, 246-47  …1

*Davies v. Krasna* (1975) 14 Cal.3 d 502, 513  …5

*Franks v. Delaware* (1978) 438 U.S. 154, 156  …8

*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal. App. 4th 1018, 1029 …5

*Greene v. Bloom*, 2008 WL 1882800, at *7-*9 (E.D. Cal.) …18

*Guidi v. Stryker Corp.*, 120 Fed. Appx. 45, 47  …6

*Hardin v. Straub* (1989) 490 U.S. 536, 543-544 …17

*Hampton v. Hanrahan* (7th Cir. 1979) 600 F.2d 600, 620. ….20

*Heyer v. Flaig* (1969) 70 Cal. 2d 223, 230 …. 5

*Jefferson v. County of Kern* (2002) 98 Cal. App. 4th 606, 610-611.  …5

*Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal. App. 4th 1412, 1423  …5

*Leaf v. City of San Mateo* (1980) 104 Cal. App. 3d 398, 406.  …6

*Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 973 …8

*McDougal v. County of Imperial*, 942 F.2d 668, 672(9th Cir. 1991) …18

*Merrill v. Superior Court* (1994) 27 Cal. App. 4th 1586, 1596. at fn.5.  …3

*Morales v. City of Los Angeles* (9th Cir. 2000) 214 F.3d 1151, 1153-1154 …18

*Muller v. Reagh* (1963) 215 Cal. App. 2d 831, 837 ….7

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal. 3d 176, 187  ….5

*Nelson v. Indevus Pharms., Inc.* (2006) 142 Cal. App. 4th 1202, 1206-1208. …6

*NL Indus., Inc. v. Kaplan* (9th Cir. 1986) 792 F.2d 896, 898 …... 1

*Norgart v. Upjohn Co.* (1999) 21 Cal. 4th 383, 389, 397  …5

*Oppenheimer v. City of Los Angeles* (1951) 104 Cal. App. 2d 551, 553 …21

*Owens v. Okure*, 488 U.S. 235, 249-250 (1989) …18

*Panopulos v. Westinghouse Elec. Corp.* (1989) 216 Cal. App. 3d 660, 670 …5

*Pereira v. Dow Chem. Co.* (1982) 129 Cal. App. 3d 865, 874  … 5

*Reddy v. Litton Indus., Inc.* (9th Cir. 1990) 912 F.2d 291, 296. …1

*Reyes v. County of L.A.* (1988) 197 Cal. App. 3d 584, 591. …6

*Smith v Rector & Visitors of Univ. of Virginia* (2000, WD Va) 115 F Supp 2d 680. …21

*Stephens v. County of Tulare* (2006) 38 Cal. 4th 793, 801 …19

*Trimble v. City of Santa Rosa* (9th Cir. 1995) 49 F.3d 583, 585. ..17

*United States v. Ritchie* (9th Cir. 1993) 342 F.3d 903, 909 …1

*Wallace v. Kato* (2007) 127 S. Ct. 1091, 1097 … 17


*Cal. Civ. Proc. Code* § 335.1  …17, 18

*Cal Code Civ Proc* § 340 (1982)  …6
                        340(c) (1982) …18

*Cal Code Civ Proc* § 352.1(a). …17

*Cal Gov Code* § 901  ….5

*California Government Code* section 945.3 ….19

*Cal Pen Code* § 830.1 (b).  ..19


"investigator"  - *Merriam-Webster Dictionary - Online Edition* 2008 …19

"investigator"  - *Oxford's English Dictionary - Online Edition* 2008 …20

**ARGUMENT IN OPPOSITION TO MOTION TO DISMISS**

## I.    LEGAL STANDARD

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan* (9th Cir. 1986) 792 F.2d 896, 898. Although the court is generally confined to a consideration of the allegations in the pleadings, the court may also consider matters of which judicial notice may be taken, and doing so does not convert the motion into one for summary judgment. *United States v. Ritchie* (9th Cir. 1993) 342 F.3d 903, 909. When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.* (9th Cir. 1990) 911 F.2d 242, 246-47. In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.* (9th Cir. 1990) 912 F.2d 291, 296.

If Defendant's motion to dismiss is granted, PLAINTIFF requests leave to amend the complaint to cure any defect requiring dismissal due to insufficient facts being pled in the Third Amended Complaint.

## II.    DEFENDANT'S THEORY, THAT PLAINTIFF'S CLAIM IS UNTIMELY, FAILS BECAUSE THE FALSE ARREST CAUSE OF ACTION ACCRUED DURING THE 2006 TRIAL

### A.    THE CAUSE OF ACTION FOR FALSE ARREST DID NOT ACCRUE AT THE ARRAINGMENT OR THE 2004 DISMISSAL

The first fundamental flaw in defendant, POTTS', argument is his failure to recognize the discovery rule as it applies to the accrual date of tort actions.

1        The second fundamental flaw in defendant, POTTS', argument is his assumption that the

2    June 14, 2004, dismissal of the underlying criminal matter was granted for failure to show

3    probable cause.  The fact of the matter is, that the June 14, 2004, dismissal was the result of

4    prosecutorial misconduct, for *Brady* violations committed prior to the preliminary hearing.  The

5    criminal matter was dismissed because the court found there was a **reasonable probability** that

6    the outcome would have been affected if the magistrate knew of the undisclosed evidence. (See

7    Ruling on 2nd Nonstatutory Motion to Dismiss at P3rdRJN[1] Exhibit 10)

8        The key consideration for a court reviewing the nonstatutory motion to dismiss based

9    upon exculpatory evidence not disclosed to the defense prior to the preliminary examination is

10   "whether there is a **reasonable probability** that the outcome would have been affected if the

11   magistrate knew of the undisclosed evidence;" if there is a reasonable probability that the

12   Magistrate would not have held the defendant to answer, the motion must be granted. *Merrill v.*

13   *Superior Court* (1994) 27 Cal. App. 4th 1586, 1596 at fn.5. *Emphasis added*.

14       In its ruling, on the June 14, 2004, motion to dismiss, the criminal court held that:

15
16       "[U]pon weighing all the evidence, the evidence produced at the preliminary
     hearing and considering the undisclosed evidence and the effect of the undisclosed
     evidence and the effect of the testimony of Mr. Potts, this Court finds that there is a
17   **reasonable probability** that the magistrate would not have found probable cause."
     (P3rdRJN Exhibit 10, pg 32:21-27 *Emphasis added*.)

18
19       "The Court finds that the exculpatory value of the suppressed evidence
     outweighs the possible incriminating evidence presented against the defendant at the
20   preliminary hearing."  (P3rdRJN Exhibit 10, pg 32:28 – 33:2)

21       "I think there's sufficient reason for this Court to turn over the preliminary
     hearing based upon what was not produced, but I'm more concerned about what was
22   produced, and the effect of having this marginal testimony remaining and the effect of
     Mr. Potts's statement that based upon all f his analysis it was a million to 1 that all of
23   these layers matched.  It had to have had an unbelievable – well, completely
     believable effect upon the magistrate, and it completely outweighs the rest of this
24   evidence so the Court is granting the motion." (P3rdRJN Exhibit 10, pg 33:6-14)

25

26   ---
     [1] Plaintiff's 3rd Request for Judicial Notice in Support of Opposition to Defendants' 2nd Motion to Dismiss
     Page 3 of 24
     PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1    Immediately after the Court dismissed the criminal case, the Court ordered that the

2    Plaintiff to be released. (P3rdRJN Exhibit 10, pg 33:19)  However, the prosecutor stated that she

3    will not release PLAINTIFF, but will generate the appropriate paperwork unrelated to this case."

4    (P3rdRJN Exhibit 10, pg 34:26 -35:1)  The Court then noted that "If the paperwork gets that

5    before the defendant is released, he will be held on the new paper." (P3rdRJN Exhibit 10, pg.

6    35:2-4)

7        During the April 2006, second preliminary hearing in the underlying criminal matter, the

8    People offered the statements of BECKER and JAMES LARRY LEWIS, JR. as evidence linking

9    the Petitioner to the crimes charged. (3rd Amended Complaint  (Doc 50) "3rd AC" ¶¶ 63 and 65)

10   On April 21, 2006, at the conclusion of the preliminary hearing, the Court found that the People

11   offered sufficient evidence to hold Petitioner to answer to the crimes charged. (3rd AC ¶ 66)

12       In summary, the underlying criminal matter was dismissed, not for lack of probable

13   cause, but for reasons that there was a reasonable possibility that there may have been a

14   different outcome of the first preliminary hearing if the magistrate would have been aware of

15   the suppressed evidence.  During the second preliminary hearing, the prosecutor submitted

16   evidence that consisted of statements made by LEWIS and BECKER, but did not submit

17   evidence connected to POTTS.  At the conclusion of the second preliminary hearing the Court

18   found that there was probable cause to hold PLAINTIFF to answer.  Since the arrest warrant

19   affidavit was based upon statements provided by LEWIS, BECKER and POTTS.   The warrant

20   continued to be valid after the dismissal, due to the evidence attributed to LEWIS and

21   BECKER. Therefore, POTTS' theory that the cause of action for false arrest accrued at the

22   dismissal fails.  This issue will be discussed in the following sections of this brief.

23       **B.    A GOVERNMENT CLAIM ACCRUES ON THE DATE THE
           UNDERLYING CAUSE OF ACTION ACCRUES.**

24

25       For purposes of computing time limitation periods of the claim filing requirements of the

26   Tort Claims Act, (*Cal Gov Code* § 911.2) the date of accrual of a cause of action to which the

1  claim relates is the date on which the cause of action would be deemed to accrue for purposes of

2  the applicable statute of limitations if there were no requirement of filing a claim. (*Cal Gov Code*

3  § 901)  If the relevant facts are in dispute and the issue is raised in connection with a tort claim,

4  the date of accrual for a cause of action under *Government Code* Section 901 is subject to a jury

5  determination.  *Jefferson v. County of Kern* (2002) 98 Cal. App. 4th 606, 610-611.

### C. TORT ACTIONS ACCRUE ON THE OCCURRENCE OF THE LAST ELEMENT ESSENTIAL TO THE CAUSE OF ACTION.

6
7
       In ordinary tort actions, the limitations period begins to run on the occurrence of the last

8  element essential to the cause of action.  *Panopulos v. Westinghouse Elec. Corp.* (1989) 216 Cal.

9
10  App. 3d 660, 670  At that time, the cause of action is said to accrue.  A right to recover nominal

11  damage will not trigger the running of the limitations period when actual damages are an element

12  of the cause of action.  *Davies v. Krasna* (1975) 14 Cal.3 d 502, 513  "The mere breach of duty,

13  […] causing only nominal damages, speculative harm, or the threat of future harm -- not yet

14  realized normally does not suffice to create a cause of action." *Id.*

15
       A period of limitation does not begin to run until a cause of action accrues, and a cause of

16  action invariably accrues when there is a remedy available  (*Heyer v. Flaig* (1969) 70 Cal. 2d

17  223, 230; *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal. App. 4th 1018, 1029, (limitation

18  period does not begin to run until cause of action accrues, i.e., all essential elements are present

19  and claim becomes legally actionable)).

20
       Stated alternatively, in ordinary tort actions, the statute of limitations begins to run on the

21  occurrence of the last element essential to the cause of action (*Neel v. Magana, Olney, Levy,*

22  *Cathcart & Gelfand* (1971) 6 Cal. 3d 176, 187; *Buttram v. Owens-Corning Fiberglas Corp.*

23  (1997) 16 Cal. 4th 520, 531 n.4; see *Norgart v. Upjohn Co.* (1999) 21 Cal. 4th 383, 389, 397

24  (when cause of action is complete with all its elements); see also *Keru Investments, Inc. v. Cube*

25  *Co.* (1998) 63 Cal. App. 4th 1412, 1423 (cause of action accrues at moment party who owns it is

26  entitled to bring or prosecute action thereon)).

**D.    HOWEVER, THE ACCRUAL DATE IS DEPENDENT ON THE DATE THE PLAINTIFF LEARNS THE FACTS ESSENTIAL TO HIS CLAIM.**

A limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his or her claim. *Reyes v. County of L.A.* (1988) 197 Cal. App. 3d 584, 591.

For certain causes of action, including false arrest the limitations period does not begin to run until the injured party discovers or should have discovered the facts supporting liability. *Guidi v. Stryker Corp.*, 120 Fed. Appx. 45, 47, and *Cal Code Civ Proc* § 340. The discovery rule operates to protect the plaintiff who is blamelessly ignorant of his or her cause of action. *Leaf v. City of San Mateo* (1980) 104 Cal. App. 3d 398, 406. When the rule of discovery applies, the issue of whether discovery of the cause of action was reasonably delayed and whether due diligence was used is typically a question of fact. *Pereira v. Dow Chem. Co.* (1982) 129 Cal. App. 3d 865, 874; *Leaf v. City of San Mateo* (1980) 104 Cal. App. 3d 398, 409)

The fact of injury alone will not trigger the running of the limitations period. To trigger the running of the limitations period, the plaintiff must suspect or have reason to suspect that his or her injuries were caused by someone's wrongdoing. *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal. App. 4th 1048, 1057-1060. Moreover, the plaintiff must actually be on notice of possible wrongdoing to start the discovery period. The fact that other members of the general public were aware of possible wrongdoing, but the plaintiff was not, is insufficient to start the limitations period on that plaintiff's claim. *Nelson v. Indevus Pharms., Inc.* (2006) 142 Cal. App. 4th 1202, 1206-1208.

**E.    BELATED DISCOVERY RULE – ACCRUAL OCCURS AT THE TIME THE PLAINTIFF BECAME AWARE OF THE LAST ESSENTIAL FACT REQUIRED TO PLEA THE CAUSE OF ACTION**

Under the belated discovery rule, a cause of action does not accrue from the occurrence of the last essential fact, or from discovery of the damage, but rather, from the time the plaintiff

became aware, or could have become aware, of the defendant's negligence as a cause. _Bastian v. County of San Luis Obispo_ (1988) 199 Cal. App. 3d 520, 527. To raise the issue of belated discovery, the plaintiff must state when the discovery was made, the circumstances behind the discovery, and plead facts showing that the failure to discover was reasonable, justifiable, and not the result of a failure to investigate or act. Once belated discovery is pleaded, the issue of whether the plaintiff exercised reasonable diligence in discovering the negligent cause of the injury is a question of fact. (_Id._)

The test for belated discovery is whether the plaintiff had information of circumstances sufficient to put a reasonable person on inquiry, or had the opportunity to obtain knowledge from sources open to his or her investigation. If the plaintiff believed, because of injuries he or she suffered, that someone had done something wrong, such a fact is sufficient to alert a plaintiff to the necessity for investigation and the pursuit of his or her remedies. _Bastian v. County of San Luis Obispo supra_ 199 Cal. App. 3d 527. The test for diligence is not whether the plaintiff was successful in his or her timely investigation of the cause of injury, but whether his or her efforts were reasonable. _Id._ at 528

### F.    IN ORDER TO PLEAD A CAUSE OF ACTION FALSE ARREST INVOLVING A WARRANT, A PLAINTIFF MUST BE ABLE TO SHOW THAT THE WARRANT WAS INVALID ON ITS FACE.

"The pleading in an action [for false arrest] following an arrest with a warrant is necessarily different from that in an ordinary action . . . for a truthful statement of the facts will disclose that the arresting officer had a warrant. In order to establish the wrongful nature of the confinement, therefore, the pleader must show that the arrest was unlawful (not privileged), e.g., that the warrant was invalid on its face. This calls for a pleading of facts; general allegations to the effect that the warrant, or the affidavit for its issuance, was 'unlawful,' or 'unauthorized,' or that the imprisonment was unlawful or void, wholly insufficient." _Muller v. Reagh_ (1963) 215 Cal. App. 2d 831, 837

## G.    A WARRANT IS INVALID ON ITS FACE IF IT WAS OBTAINED THROUGH JUDICIAL DECEPTION.

The Fourth Amendment is the guarantee of every citizen that his home will be his castle, safe from the arbitrary intrusion of official authority. It is no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate. *Baldwin v. Placer County*, (9th Cir. 2005) 418 F.3d 966, 970. A Fourth Amendment violation occurs where "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 973.

The burden a plaintiff must meet in order to show a Fourth Amendment violation the plaintiff must 1) make a "substantial showing" of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred. Put another way, the showing necessary to get to a jury in a 1983 action is the same as the showing necessary to get an evidentiary hearing under *Franks v. Delaware infra*. *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 973. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks v. Delaware* (1978) 438 U.S. 154, 156. Thus, a plaintiff must show, not only deliberate falsehoods or reckless disregard for the truth were connected to the warrant, the plaintiff must also show that when all of the false evidence, or omissions are bleached from the warrant, nothing remains that could provide probable cause for the arrest.

**H.    THE ARREST WARRANT WAS BASED UPON STATEMENTS PROVIDED BY POTTS, LEWIS AND BECKER, EACH OF WHICH PROVIDED PROBABLE CAUSE.**

Here, CASEY, POTTS, and DAVIDSON agreed to present a false affidavit containing false evidence to the magistrate through the Declaration in Support of Warrant of Arrest that was dated May 8, 2002. (3rdAC ¶ 25)    DAVIDSON authored a Declaration in Support of Warrant of Arrest, which was dated May 8, 2002, under the direct supervision of CASEY. (3rdAC ¶ 25) The May 8, 2002, Declaration in Support of Warrant of Arrest, submitted by DAVIDSON to the magistrate, included statements which provided that:

A.)   On October 27, 2008, BECKER, a witness in the underlying criminal matter, provided statements to DAVIDSON that connected Plaintiff to the purchase of 7.62 x 39 mm ammunition on Monday, October 5, 1998, prior to the murders. On September 7, 1999, BECKER provided statements that connected petitioner to a knife that was consistent with the knife discovered at the scene of the crime.  On September 7, 1999, she also provided statements that showed that Petitioner "lost" his knife during the month of the murders. Specifically, some of the statements attributed to BECKER in the Narrative were as follows:

"On October 30, 1998, at 2:00 P.M., DEBBIE BECKER from King's Sport and Tackle telephoned me as a follow-up to my inquiry at their store.  She told me that a person named "ZACK," age 21 to 22 years with red/blond hair, purchased 7.62 x 39mm ammunition on Monday, October 5, 1998."

"[On or about September 7, 1999,] BECKER estimated that RUTLEDGE came in to the store about two to two-and-a-half weeks before the homicides. BECKER recalled that she provided me with the exact date that Rutledge purchased that ammunition.  She recalled this because she referenced a calendar when she called me on October 30, 1998.  [….. ] RUTLEDGE was also wearing a knife in a sheath on his right hip.  She stated that the knife was contained in a brown sheath, which was attached to his belt. […]  BECKER stated that RUTLEDGE came into the store and paid cash for either two or three boxes of TCW 7.62 x 39 mm caliber ammunition."

"[On or about September 7, 1999,] She stated that she recently learned that his full name is ZACH RUTLEDGE.  She described him as a strange guy who bought that same caliber of ammunition that I previously inquired about at their store.  On that occasion during the purchase, "ZACK" had  knife on his right side.  After the homicides, the same subject came into the store looking

at knives in their display case.  BECKER recognized him and asked him what happened to his other knife to which the subject replied that he had lost it."

B.)      On September 27, 2008, JAMES LEWIS JR., a witness in the underlying criminal matter, provided statements to DAVIDSON, suggesting that defendant was the owner of a knife that was similar to one located at the crime scene.  Specifically, the statements attributed to LEWIS in the Narrative are as follows:

"James stated that two weeks before the murders, Rutledge telephoned James from a bar and told him that Jason had "sucker punched" him.  Rutledge went to James' house where they shared some marijuana.  Rutledge told James that "Jason kicked my ass."  James stated that Rutledge owned a knife with a sheath and that James had borrowed it from Rutledge.  After the previous conversation, Rutledge called James and asked him for his knife back.  Rutledge asked James where he could get his hands on a gun, preferably an "SK."  Rutledge told him he needed to go hunting and asked James if he could borrow his binoculars.  James never knew Rutledge to hunt.  About two hours later, Rutledge arrived at James' s residence and retrieved the knife.

"James' description of Rutledge's knife is consistent with the knife collected as #CF-1, including the fact that the strap on the sheath went over the thumb guard.  I showed him a photograph of Item #CF-1 and he stated "Nope, that's it." I pointed out the blue substance on the tip and asked him if it was present when he had it.  He stated he sharpened it and there was nothing blue on the blade.  I asked James if he ever saw the knife and sheath that he returned to Rutledge again.  He stated, "Nope, 'Cept for uh, when I opened up the newspaper and it was there."

C.) In August 2000 MICHAEL POTTS, submitted a forensic report which provided that PLAINTIFF was the owner of a knife found at the scene of the murders.  Specifically, one of the statements, within the report, attributed to POTTS in the Narrative is as follows:

"In August 2000, I received a report from California Department of Justice Senior Criminalist, Michael L. Potts.  His report details his microscopic examination of the blade of the knife (CF-1), which revealed paint consisting of four different colored layers:  1) a blue-colored topcoat, over 2) a turquoise layer, covering 3) a white layer, followed by 4) a tan colored bottom layer.  Further analysis of this paint showed it to be an architectural type paint.  Paint of similar type, color, and color layer sequence was also found in the piece of plaster board of Item RD-27 and on the wood of Item RD-30a, collected from RUTLEDGE's residence.  Therefore, the paint on the knife could have come from a source painted with the same color paint and with the same layer sequence as the paint on Items RD-27 and RD-30a."

(3rd AC  ¶ 23)

CASEY and DAVIDSON agreed to omit known exculpatory evidence from the Declaration in Support of Warrant of Arrest in an effort to deceive and mislead the magistrate into issuing the requested Arrest Warrant attached to PLAINTIFF. (3<sup>rd</sup>AC ¶ 29)

DAVIDSON omitted from the affidavit the fact that the statements made by BECKER were made after the July 13, 1999 press release issued by the Sonoma County Sheriff, which released photographs of the knife and asked for assistance in the investigation of the murders, while also offering a $100,000.00 reward for information in the case. (3<sup>rd</sup>AC ¶ 31)  He omitted from the affidavit the fact that he knew that the statements attributed to BECKER were unreliable and false, and failed to inform the magistrate that the statements made by BECKER were not reliable, since she was seeking to recover the $100,000.00 reward offered by the victim's estate. (3<sup>rd</sup>AC ¶ 32)  He also omitted from the affidavit the fact that he knew that the statements attributed to JAMES LEWIS JR. were unreliable and false. (3<sup>rd</sup>AC ¶ 33)  Finally, he omitted from the affidavit the fact that he knew that the statements attributed to POTTS were false. (3<sup>rd</sup>AC ¶ 34)

POTTS omitted from the affidavit the fact that he knew that the statements attributed to himself were false. (3<sup>rd</sup>AC ¶ 35)

## I.    THE RECORD IN THE UNDERLYING CRIMINAL MATTER ESTABLISHES THAT PROBABLE CAUSE CONTINUED TO EXIST ON THE FACE OF THE WARRANT AFTER THE STATEMENTS MADE BY POTTS WERE OMITTED.

During the second preliminary hearing of the underlying criminal matter, the Prosecution offered the statements of JAMES LARRY LEWIS, JR. as evidence linking the PLAINTIFF to the crimes charged. (3<sup>rd</sup>AC ¶ 63)  The People also offered the statements of BECKER as evidence linking the Petitioner to the crimes charged. (3<sup>rd</sup>AC ¶ 65)  However, the People did not offer evidence connected to POTTS at the second preliminary hearing.  On April 21, 2006, at the conclusion of the second preliminary hearing, the Court found that the People

offered sufficient evidence to hold Petitioner to answer. (3$^{rd}$AC ¶ 66)  Thus, the criminal Court made a finding that there was probable cause that PLAINTIFF committed the crimes charged, regardless of the statements provided by POTTS within the Declaration in Support of Warrant of Arrest, and at the first preliminary hearing.

Since the statements provided by JAMES LARRY LEWIS, JR. and BECKER, both independently linking PLAINTIFF to the murders, were submitted at the second preliminary hearing, and, at the conclusion of that preliminary hearing, the criminal Court found that there was probable cause, the statements provided by LEWIS and BECKER, played a key role in formulating probable cause.

**J.    SINCE THE ARREST WARRANT WAS BASED UPON STATEMENTS PROVIDED BY POTTS, LEWIS AND BECKER, EACH OF WHICH PROVIDED PROBABLE CAUSE, THE PLAINTIFF MUST BE ABLE TO SHOW THAT STATEMENTS ATTRIBUTED TO EACH WITNESS IS FALSE, OR THAT EXCULPATORY EVIDENCE CONNECTED TO EACH WITNESS WAS OMITTED, IN ORDER TO SHOW THE WARRANT IS INVALID.**

Since probable cause in support of the arrest warrant, was based upon statements provided by POTTS, LEWIS and BECKER, and since the statements provided by each witness could independently connect PLAINTIFF to the murders, the cause of action for false arrest did not accrue until PLAINTIFF had a means to discover the statements attributed to each witness were false, or discover that exculpatory evidence connected the statements was omitted.  It will be demonstrated below, that the final fact, necessary to show the warrant was invalid, was discovered on September 15, 2006, during the August 4, 2006 – September 29, 2006 trial.

**K.    PLANTIFF DISCOVERED THAT THE WARRANT WAS VOID ON SEPTEMBER 15, 2006.**

**1.    POTTS – DISCOVERY THAT THE STATEMENTS ATTRIBUTED TO POTTS WERE FALSE WAS MADE AT A POINT IN TIME BETWEEN JANUARY 27, 2004 AND MAY 19, 2004**

On January 27, 2004, POTTS provided assistant district attorney JACOBS information, wherein POTTS admitted to presenting false testimony at the preliminary examination of the underlying criminal matter. More particularly, POTTS sent a January 27, 2004, letter to JACOBS, at the direction of JACOBS, in which POTTS stated that "In review of the transcript of my testimony at the preliminary hearing on November 15, 2002, I realize I had over-simplified the explanation regarding the examinations I conducted on the knife and the wood molding." POTTS stated in his letter that he mislead the Magistrate when he testified that he conducted a chemical analysis on the paint on the molding, stating:

> "My response on page 172, lines 21 through 24, [of the preliminary examination transcript] implies that I conducted a chemical analysis of the paint on the molding. In fact, I had only performed a microscopical computation of the paint on the knife with the paint on the molding."

POTTS further stated in his letter that he mislead the Magistrate at the preliminary examination when he testified that he performed an analysis on each individual colored layers of paint on the knife, stating:

> "Furthermore, in reviewing the transcript, it could be interpreted that I performed an analysis on each individual colored layer of paint on the knife. In fact, because the paint on the knife was in the form of a smear; I was unable to fully separate the paint transfers into distinct individual layers; and therefore, analysis was conducted on more than one layer at the time."

(3$^{rd}$AC ¶ 60)

On May 19, 2004, POTTS clarified, during a pretrial motion in the underlying criminal matter, that he did not conduct a separate analysis on each individual paint layer on the knife. (3$^{rd}$AC ¶ 61)

The precise date that PLAINTIFF discovered the January 27, 2004, POTTS to JACOBS letter, is unknown at this time. Therefore, the discovery that POTTS submitted false statements must have occurred between to January 27, 2004 and May 19, 2004.

1
2

**B.    LEWIS - ON, OR ABOUT, MARCH 26, 2006, PLAINTIFF DISCOVERED THAT THE STATEMENTS ATTRIBUTED TO LEWIS WERE FALSE**

3

4

On, or about, March 26, 2006, during an interview of JAMES LARRY LEWIS, JR., by

5

PLAINTIFF'S investigator, PLAINTIFF discovered that the statements made by LEWIS to

6

DAVIDSON in the underlying criminal action as submitted in the arrest warrant affidavit, and

the statements that he made during the preliminary hearing, were false. (3$^{rd}$AC ¶ 64)

7

8

**C.    BECKER – ON SEPTEMBER 15, 2006, PLAINTIFF DISCOVERED THAT THE STATEMENTS ATTRIBUTED TO BECKER WERE FALSE.**

9

10

During the trial in the underlying criminal matter, between August 4, 2006 and

September 29, 2006 (3$^{rd}$AC ¶ 69), PLAINTIFF discovered that the statements made by DEBBIE

11

BECKER were false. (3$^{rd}$AC ¶ 70)  PLAINTIFF also discovered during the trial that

12

DAVIDSON knew that the statements he attributed to DEBBIE BECKER were false (3$^{rd}$AC ¶

13

71), and that DAVIDSON, knowingly withheld evidence from the magistrate during the

14

preliminary hearing and within the search warrant affidavit that demonstrated that DEBBIE

15

BECKER made the false statements in an attempt to claim the $100,000.00 reward. (3$^{rd}$AC ¶ 72)

16

Furthermore, during the TRIAL, PLAINTIFF discovered that the October 30, 1998, statement

17

attributed to BECKER, within the Declaration in Support of Warrant of Arrest, was false.  Said

18

statement provided evidence that BECKER made statements connected to PLAINTIFF, prior to

19

the July 13, 1999, announcement of the $100,000.00 reward.  PLAINTIFF also discovered

20

during the TRIAL, that DAVIDSON knew that said statements he attributed to BECKER were

21

false.  (3$^{rd}$AC ¶ 73)

22

The precise time that PLAINTIFF discovered that BECKER's statements were false,

23

occurred during the September 15, 2006 testimony of BECKER's employer, Steven Jackson (See

24

County Defendant's Request for Judicial Notice, Exhibit B, pg. 83), who was also a witness

25

26

1  mentioned within the arrest warrant affidavit. (See PRJN (Doc 36) Exhibit 8, page 6 of 17 of the

2  attached police report at Doc 36-4, pg.8)

3      Since, the final statement attributed to BECKER, within the affidavit in support of arrest,

4  provided evidence that: "ZACK … purchased 7.62 x 39mm ammunition on Monday, October 5,

5  1998" about two weeks prior to the murders; that he was also "was also wearing a knife in a

6  sheath on his right hip," and that knife was "knife was contained in a brown sheath," consistent

7  with the knife discovered at the scene of the crime; and that "After the homicides, [ZACK] came

8  into the store looking at knives in their display case, BECKER recognized [ZACK] and asked

9  him what happened to his other knife to which the subject replied that he had lost it;" -

10  BECKER's statement would connect PLAINTIFF to the crimes charged, just as the statements

11  attributed to POTTS connected PLAINTIFF to the crimes charged.

12      Since the forgoing statements were included in the arrest warrant affidavit, PLAINTIFF

13  could not plead a cause of action for false arrest until he could show that the statements

14  attributed to BECKER were false, or until he could show that exculpatory evidence connected to

15  the statements was omitted.   PLAINTIFF made this discovery connected to the BECKER during

16  the trial, when Steven Jackson testified, on September 15, 2006.  Therefore, PLAINTIFF was not

17  able to show that the warrant was void until September 15, 2006.

18      **M.    SINCE PLAINTIFF WAS NOT ABLE TO SHOW THAT THE**
**WARRANT WAS INVALID UNTILL HE DISCOVERED THAT BECKER'S**
19  **STATEMENTS WERE FALSE,THE FALSE ARREST CAUSE OF ACTION**
**ACCRUED ON SEPTEMBER 15, 2006.**
20

21      Since, PLAINTIFF, must be able to make a showing that the arrest warrant was void, in

22  order to plead a cause of action for false arrest, the cause of action for false arrest did not accrue

23  until the discovery that BECKER's statements were false. Therefore, the False Arrest Cause of

24  Action accrued, on September 15, 2006, when JACKSON testified.

25

26
PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1

2

**N.    THE GOVERNMENT CLAIM WAS TIMELY FILED, WITHIN SIX MONTHS OF THE SEPTEMBER 15, 2006, ACCRUAL DATE OF THE FALSE ARREST CAUSE OF ACTION.**

3

4

PLAINTIFF filed timely claims for damages with both COUNTY and the State of

California, which possess jurisdiction over all defendants.   Said claims were subsequently

5

denied and the complaint filed in this case was filed within a six-month period after the denials.

6

(3rdAC ¶ 90)  The cause of action for false arrest accrued on September 15, 2006, as discussed

7

above.   The Government tort claims were filed, and received by VCGCB, on March 6, 2006.

8

(See Def. Req for Judicial Notice (Doc 33) at Doc 33-4 pp. 4-6)    Thus, the government claim

9

was filed within six months of the September 15, 2006 accrual date of the false arrest cause of

10

action.   Therefore, PLAINTIFF truthfully pled that PLAINTIFF filed timely claims for damages

11

in the third amended complaint.

12

**III.    PLAINTIFF'S 1983 ACTION WAS TIMELY FILED.**

13

While Defendant POTTS argues that the cause of action for false arrest accrued on June

14

6, 2002, at the Plaintiff's arraignment, POTTS failed to account for the date PLAINTIFF

15

discovered the facts necessary to plead his cause of action.   Under federal law, a claim "accrues

16

when a party knows or has reason to know of the injury which is the basis of the cause of

17

action," _Kimes v. Stone_ (9th Cir. 1996) 84 F.3d 1121, 1128  (internal quotation marks omitted)

18

As previously discussed, PLAINTIFF did not know of the injury which is the basis of the cause

19

of action, until he discovered the facts necessary to show that the arrest warrant was void on its

20

face. Again, PLAINTIFF discovered that the warrant was invalid on September 15, 2006.  This

21

action was filed on August 20, 2007 (See Doc 1), thus this action was filed less than one year of

22

the, September 15, 2006, accrual date for the false arrest cause of action.   Therefore, this action

23

was timely filed.

24

**IV.    PLAINTIFF'S 1983 ACTION WAS TIMELY FILED, EVEN IF THE ACCRUAL DATE OCCURRED WHEN PLAINTIFF DISCOVERED THAT THE STATEMENTS MADE BY POTTS WERE FALSE.**

25

26

1         Assuming arguendo, that the date the PLAINTIFF discovered the basis of his action

2    occurred on January 27, 2004, when POTTS revealed that he provided false evidence,

3    PLAINTIFF's § 1983 claim would not be time-barred.  This is discussed under two separate

4    theories, below.

**A.     THE STATUTE OF LIMITATIONS WAS TOLLED TWO YEARS**
5    **WHILE THE PLAINTIFF WAS IMPRISONED, AND THE § 1983 STATUE**
**OF LIMITATIONS WAS TWO YEARS, THUS THE COMPLAINT**
6    **WAS TIMELY FILED.**

7         The statute of limitations for section 1983 actions is determined by state law.  Section

8    1983 actions are characterized as personal injury actions for statute of limitations purposes.

9    _Trimble v. City of Santa Rosa_ (9th Cir. 1995) 49 F.3d 583, 585.  In California, the statute of

10   limitations for personal injury actions is two years. _Cal. Civ. Proc. Code_ § 335.1 Defendants

11   continue to argue that a cause of action for false arrest or false imprisonment accrues once the

12   individual is bound over for trial by the magistrate under _Wallace v. Kato_ (2007) 127 S. Ct.

13   1091, 1097[2].   However, state law determines the application of tolling doctrines. _Hardin v._

14   _Straub_ (1989) 490 U.S. 536, 543-544[3].  In California, the statute of limitations for section 1983

15   actions is tolled up to two years while a person is incarcerated by _Cal Code Civ Proc_ § 352.1(a).

16        "Although state law determines the length of the limitations period, federal law

17   determines when a civil rights claim accrues. ….  Under federal law, a claim accrues when the

18

19   [2] In _Wallace v. Kato_, 127 S. Ct 1091 (2007), the Supreme Court held that a
20   Fourth Amendment claim for unlawful arrest, where the arrest is followed by
criminal proceedings, accrues at the time the plaintiff is detained pursuant
to legal process -- "when, for example, he is bound over by a magistrate or
21   arraigned on charges." _Id_. at 1096. Wallace is distinguishable, however,
because there was no delay in the plaintiff's discovery of the conduct that
22   gave rise to his cause of action. Furthermore, unlike the present case, it
involved a claim of unlawful arrest without process of any kind.
[3] In _Wallace v. Kato_, 127 S. Ct 1091 (2007), the Supreme Court held that a
23   Fourth Amendment claim for unlawful arrest, where the arrest is followed by
criminal proceedings, accrues at the time the plaintiff is detained pursuant
24   to legal process -- "when, for example, he is bound over by a magistrate or
arraigned on charges." _Id_. at 1096. Wallace is distinguishable, however,
25   because there was no delay in the plaintiff's discovery of the conduct that
gave rise to his cause of action. Furthermore, unlike the present case, it
26   involved a claim of unlawful arrest without process of any kind.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1  plaintiff knows or has reason to know of the injury which is the basis of the action." *Morales v.*

2  *City of Los Angeles* (9th Cir. 2000) 214 F.3d 1151, 1153-1154

3  　　　Here, assuming arguendo that the discovery of the injury connected to the first series of

4  torts committed by POTTS was made on or after January 27, 2004, the plaintiff was imprisoned

5  during, and over two years after, the discovery of the injury, thus the limitation of the § 1983

6  action was tolled two years, until January 27, 2006,[4] at the earliest.  Since the statute of

7  limitations for section 1983 action in California is two years[5], the limitation of this action

8  expired, at minimum, on January 27, 2008.  Since the complaint in this action was filed on

9  August 20, 2007 (Doc 1), Plaintiff's § 1983 action was timely filed, before the limitation ran on

10  January 27, 2008.

11  
12  　　　**B.   EVEN IF THE DISCOVERY RULE DID NOT APPLY TO THIS ACTION, THE STATUTE OF LIMITATIONS WAS TOLLED WHILE THE UNDERLYING CRIMINAL ACTION WAS PENDING.**

13  
14  　　　**1.   UNDER CALIFORNIA STATE LAW THE LIMITATIONS OF AN ACTION AGAINST A PEACE OFFICER IS TOLLED WHILE THE UNDERLYING CRIMINAL ACTION IS PENDING.**

15  

16  
17  [4] "At oral argument, Mr. Potts conceded that Plaintiff's claim would not be time-barred if his allegations concerning the [January 27, 2004] date on which he learned of the conduct giving rise to it are true." (See Order (Doc 45) pg. 18:10 - 12)

18  

19  [5] "[T]he two-year limitations period applicable to general personal injury actions applies to this claim. See *Owens v. Okure*, 488 U.S. 235, 249-250 (1989); *McDougal v. County of Imperial*, 942 F.2d 668, 672(9th Cir. 1991); *Greene v. Bloom*, 2008 WL 1882800, at *7-*9 (E.D. Cal.); Cal. Civ. Proc. Code § 335.1." (See Order (Doc 45) pg. 16 fn. 8)

20  
21  　　　In the immediate motion POTTS argues that the previous one year period of limitations  provided by Cal. Code Civ. Proc. § 340(3) (1982) applies to this immediate case because it was in (fn. continued on following page) effect at the time of the injury. However, POTTS' argument is incorrect. "A new statute that enlarges a statutory limitations period applies to actions that are not already barred by the original limitations period at the time the new statute goes into effect. [...]These rules afford warning to potential defendants that until the statute of limitations has run it may be extended." *Andonagui v. May Dept. Stores Co.*, 128 Cal. App. 4th 435, 440  Here, the one year limitation did not run prior to January 1, 2003, date *Cal. Code Civ. Proc.* § 335.1 became effective.

22
23
24
25
26

*California Government Code* section 945.3 provides:

No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.

Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.

## 2. MICHAEL POTTS WAS A PEACE OFFICER AS DEFINED BY CALIFORNIA PENAL CODE § 830.1 (B) IN CONJUNCTION WITH HIS OFFICIAL JOB DESCRIPTION PROVIDED BY THE CALIFORNIA STATE PERSONNEL BOARD.

Under California law, the Attorney General and special agents and investigators of the Department of Justice are peace officers. *Cal Pen Code* § 830.1 (b).

POTTS' official duties as a SENIOR CRIMINALIST, under the California Department of Justice were defined, in part, by the California State Personnel Board as follows:

"This series specification describes four Criminalist classes used by the Department of Justice. These classes are used for positions that conduct, supervise […] complex technical laboratory analyses with respect to the identification of criminals and **investigation of crimes**." *California State Personnel Board*, http://www.dpa.ca.gov/textdocs/specs/s8/s8466.txt *Emphasis added* (P3rdRJN Exhibit 11; see also (3rd AC ¶ 10))

Since *Cal Pen Code* § 830.1 is silent with respect to a specific definition of the term "investigator," the definition is as exhibited by the plain meaning of the actual word. *Stephens v. County of Tulare* (2006) 38 Cal. 4th 793, 801

The definition of the term "investigator" is one who makes a systematic examination; especially: to conduct an official inquiry (see *Merriam-Webster Dictionary - Online Edition* 2008); one who carries out a systematic or formal inquiry into an incident or allegation so as to

1    establish the truth. (See *Oxford's English Dictionary - Online Edition* 2008).   Clearly, one who

2    engages in the "investigation of crimes" is an investigator.

3         Here it is without question that Michael Potts' official duties, as provided by the

4    *California State Personnel Board,* included the "**investigation of crimes**."  Additionally, he was

5    responsible for carrying out a systematic or formal inquiry into the source of the paint that was

6    on the knife, again falling within the definition of an 'investigator.'  Further, it is without

7    question that Michael Potts was a member of the Department of Justice.  Therefore, Michael

8    Potts was an investigator of the Department of Justice, and thus a "peace officer" as defined by

9    *Cal Pen Code* § 830.1 (b).

10         Since a 'criminalist,' who is employed by the California Department of Justice, is a

11   'peace officer,' the tolling provisions of *California Government Code* section 945.3, apply to

12   actions filed against POTTS.

13                              **V.    CONSPIRACY**

14         A conspiracy is a combination of two or more persons acting in concert to commit an

15   individual act, or to commit a lawful act by unlawful means, the principal element of which is an

16   agreement between the parties to inflict a wrong against or injury upon another, and an overt act

17   that results in damage.  *Hampton v. Hanrahan* (7th Cir. 1979) 600 F.2d 600, 620.

18         A plaintiff seeking redress need not prove that each participant in a conspiracy knew the

19   exact limits of the illegal plan or the identity of all the participants, and an express agreement

20   among all the coconspirators is not a necessary element of a civil conspiracy.  The participants in

21   the conspiracy must share the general conspiratorial objective, but they need not know all the

22   details of the plan designed to achieve the objective.  To demonstrate the existence of a

23   conspiratorial agreement, it simply must be shown that there was a single plan, the essential

24   nature and general scope of which was known to each person who is to be held responsible for its

25   consequences.  *Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144.

26

1    To make conspiracy claim under § 1983, plaintiff must show that defendants acted jointly

2    in concert and that some overt act was done in furtherance of conspiracy that resulted in

3    plaintiff's deprivation of constitutional right, and even acquiescence can amount to conspiracy

4    agreement.  *Smith v Rector & Visitors of Univ. of Virginia* (2000, WD Va) 115 F Supp 2d 680.

5    Here, the conspiracy involved POTTS, DAVIDSON, CASEY (3[rd]AC ¶¶ 25, 48 -54) and

6    JACOBS (3[rd]AC ¶¶ 55 -60, 67, 75 -76). CASEY, POTTS, and DAVIDISON agreed to present a

7    false affidavit containing false evidence to the magistrate through the Declaration in Support of

8    Warrant of Arrest that was dated May 8, 2002. (3[rd]AC ¶ 25)  DAVIDSON, POTTS and CASEY

9    possessed knowledge that statements contained within the Declaration in Support of Warrant of

10   Arrest were false. (3[rd]AC ¶¶ 26-28) CASEY and DAVIDSON agreed to omit known exculpatory

11   evidence from the Declaration in Support of Warrant of Arrest in an effort to deceive and

12   mislead the magistrate into issuing the requested Arrest Warrant attached to PLAINTIFF. (3[rd]AC

13   ¶ 29) DAVIDSON omitted exculpatory evidence from the Declaration in Support of Warrant of

14   Arrest Made in an effort to deceive and mislead the magistrate into issuing the requested Arrest

15   Warrant attached to PLAINTIFF. (3[rd]AC ¶ 30) POTTS omitted from the affidavit the fact that he

16   knew that his statements were false[6]. (3[rd]AC ¶ 35)

17   On, or about, May 8, 2002, CASEY made the decision to arrest PLAINTIFF. (3[rd]AC ¶

18   36)  On, or about, May 8, 2002 CASEY, DAVIDSON and DOES 11-20 arrested and imprisoned

19   PLAINTIFF. (3[rd]AC ¶¶ 40-41)  At no time during PLAINTIFF'S arrest did any of the officers

20   have probable cause to arrest PLAINTIFF (3[rd]AC ¶ 42).  Therefore, PLAINTIFF was arrested

21   and imprisoned pursuant to an invalid arrest warrant, which was issued without probable cause

22   pursuant to a falsified affidavit in violation of his Fourth Amendments rights provided by the

23

24

---

[6] All who take part in or assist in committing a false arrest/imprisonment are joint tortfeasors. *Oppenheimer v. City of Los Angeles* (1951) 104 Cal. App. 2d 551, 553

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1   Constitution of the United States and Article I Section 13 of the California Constitution. (3$^{rd}$AC

2   ¶¶ 121 and 132)

3         Prior to the November, 2002, preliminary hearing in the underlying criminal matter,

4   POTTS informed CASEY and DAVIDSON that there was only one article on paint comparison

5   in scientific literature that he was able to find.  POTTS told DAVIDSON that the article allowed

6   him to come to a scientific opinion which could be presented at the preliminary hearing.  POTTS

7   told DAVIDSON that the article may not apply to the case because of its extreme age, being 40

8   plus years old, and because of the fact that it came from a completely different country, Wales.

9   (The study will be hereinafter identified as the Wales Study.)  POTTS also told CASEY that the

10  study might not be applicable to the Rutledge case. (3$^{rd}$AC ¶¶ 48)  However, POTTS provided

11  false testimony at PLAINTIFF'S preliminary hearing in the underlying criminal matter, wherein

12  POTTS testified that "the paint on the knife matches the paint on the other two items [items from

13  PLAINTIFF'S residence], not only in color, but also layer sequence and type of paint."  POTTS

14  further testified that: "we're talking about separate layers and four different colored layers as

15  well. And also the paint on this is the architectural type paint in that it's different in chemical

16  composition from paint that you would find like, for instance, on automobiles and things of that

17  nature," and "It not only matches in color, in other words, the color of the paint on People's 13

18  and 13 is the same as the paint on the knife, but also it's layer sequence, and the colors of each of

19  those layers is the same that appears on the knife matches the same chemical composition of

20  each of those layers that you can see on People's 12 and 13." (3$^{rd}$AC ¶¶ 45)  Furthermore,

21  POTTS testified that the paint on the knife and the wallboard matched, since all four layers

22  matched between the paint on the knife and wallboard, and based upon the Wales Study there

23  was a million to one chance that the paint would match. (3$^{rd}$AC ¶¶ 50)

24        Prior to the November, 2002, preliminary hearing in the underlying criminal matter,

25  CASEY refused to disclose all of POTTS' bench notes and refused to disclose the Wales Study

26

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1  (3rd AC ¶ 51) Prior to the preliminary hearing, POTTS informed CASEY that he needed to

2  perform additional tests on the paint in order to confirm, or eliminate, the match between the

3  paint on the knife and the paint on the samples retrieved from PLAINTFF'S residence. (3rd AC ¶

4  52) CASEY concealed from PLAINTIFF that POTTS required additional tests. (3rd AC ¶ 53)

5          JACOBS knew about the falsity of the statistical evidence provided by POTTS,

6  JACOBS still sought to introduce testimony of POTTS at trial, used the statistical evidence in

7  support of his opposition to petitioner's motions and repeatedly told the Court that he had given

8  PLAINTIFF all exculpatory evidence.  JACOBS never disclosed that Potts's testimony was

9  false as to the use of statistics or in any way attempted to correct the statistical testimony of

10 POTTS.  Despite JACOBS' knowledge that the statistical evidence was false he continued to

11 hide the fact through a contrivance of representing to the Court he was not seeking to present

12 that testimony at trial. (3rd AC ¶¶ 56-57)

13         Allegations connected to the conspiracy continue in further detail wihin the Third

14 Amended Complaint.  However, as presented herein, a clear picture has developed, showing

15 that POTTS, DAVIDSON, JACOBS and CASEY have acted jointly in concert to mislead the

16 magistrate into believing that there was probable cause to arrest and hold PLAINTIFF on

17 charges of murder, while knowing that the they have submitted false evidence in support of

18 probable cause while also omitting evidence showing that their evidence was unreliable.  Thus,

19 to the extent that the Defendant's violated PLAINTIFF'S rights, as set forth within the Third

20 Amended Complaint, each member of the conspiracy must be held to answer.

21                         **VI.     MALICIOUS PROSECUTION**

22         Here, Defendants challenge Plaintiff's Twelfth Cause of Action, on the grounds that they

23 are immune with respect to the those portions based upon state law, and on the grounds that

24 PLAINTFF "impermissibly incorporates claims based on procedural due process."

25

26
PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1    In its ruling on Defendant's first motion to dismiss (Doc 45) this court held,

2    "Plaintiff's twelfth cause of action is brought pursuant to §§ 1983 and 1985 and is
3    asserted against all Defendants. It alleges that Defendants deprived Plaintiff of his
     Fifth Amendment "due process right to a fair trial." Compl. ¶ 140. The Court
4    construes this as a procedural due process claim. The sixteenth cause of action,
     entitled, "Malicious Prosecution," is brought in part pursuant to §§ 1983 and 1985₅
5    and is asserted against all Defendants as well. It also alleges that Plaintiff's due
     process rights were infringed. **The Court will construe this, not as a procedural**
6    **due process claim**, which would be redundant of the twelfth cause of action, nor as a
     substantive due process claim, which would not be viable, see Albright v. Oliver, 510
7    U.S. 266 (1994) (plurality opinion), **but as a Fourth Amendment malicious**
     **prosecution claim**, see id. This claim is distinct from the Fourth Amendment claim
8    for false arrest and imprisonment asserted in the fourth cause of action. It is therefore
     not redundant, and is not dismissed."(Order (Doc 45) pg. 9:5-21)
9

10   Here, PLAINTIFF'S Twelfth Cause of Action, Fourth Amendment Malicious

11   Prosecution Under _Albright v. Oliver_ (1994) 510 U.S. 266, and Common Law Tort, (3ʳᵈ AC ¶¶

12   204 -209) mirrored PLAINTIFF'S Sixteenth Cause of Action in the Second Amended Complaint

13   (Doc 13). Thus, PLAINTIFF'S Twelfth Cause of Action in the Third Amended complaint

14   conformed to this Court's ruling, which sustained this cause of action.  Therefore,

15   DEFENDANTS' motion to dismiss PLAINTIFF'S Twelfth Cause of Action should be denied.

16                              **VII.    CONCLUSION**

17       Defendants' Motion to Dismiss should be denied.  If, for any reason Defendants' Motion

18   to Dismiss is granted, in whole or in part, the order should also inform the plaintiff of the reason

19   for dismissal so that he can make an intelligent choice as to amending, and the Plaintiff should be

20   granted leave to amend the complaint.

21       Dated:  August 26, 2008

22       Respectfully submitted,

23

24       -----------------/s/------------------
         Editte Lerman
25       Attorney for Plaintiff
         **Zachariah Rutledge**
26
                              Page 24 of 24
              PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

**DECLARATION OF SERVICE**

I, Editte D. Lerman, declare as follows:
I am a resident of the State of California, residing or employed in Mendocino, California.
I am over the age of 18 years and am not a party to the above-entitled action. My business
address is 45060 Ukiah Street P.O. Box 802, Mendocino C.A. 95460.

On August 26, 2008,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES**

was filed and served upon the following parties via the Court's PACER-ECF electronic
filing system.

***Attorneys for Defendant Michael Potts***
EDMUND G BROWN, JR.
Attorney General of the State of California
JOHN P. DEVINE, ESQ.
Deputy Attorney General of the State of California
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

***Attorneys for Defendants County of Sonoma, Sonoma County Sheriff's
Department, Sonoma County District Attorney's Office, Stephan Passalacqua,
J. Michael Mullins, Greg Jacobs, Christine M. Cook, Russel L. Davidson,
James Patrick Casey, and Detective***
Beau M. Martin
Michael D. Senneff
Bonnie A. Freeman
SENNEFF FREEMAN & BLUESTONE, LLP
50 Old Courthouse Square, Suite 401
P.O. Box 3727
Santa Rosa, CA 95402-3729

I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed this 26th day of August, 2008, at Mendocino, California.

---------------/s/-------------------
Edite Lerman