United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ZACHARIAH JUDSON RUTLEDGE,

Plaintiff,

v.

COUNTY OF SONOMA, et al.,

Defendants.
_____________________________________/

No. C 07-4274 CW

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 159, 171, 182 & 183)

Defendant Michael Potts and Defendants County of Sonoma, Sonoma County Sheriff's Department, Sonoma County District Attorney's Office, Stephan Passalacqua, J. Michael Mullins, Greg Jacobs, Christine M. Cook, Russell L. Davidson and James Patrick Casey (collectively, the County Defendants) separately move for summary judgment or, in the alternative, for partial summary judgment. Plaintiff Zachariah Judson Rutledge opposes both motions. The matter was heard on August 6, 2009. Having considered oral argument and all of the papers submitted by the parties, the Court grants County Defendants' motion and Defendant Potts' motion.

BACKGROUND

This case arises out of Plaintiff's prosecution for two murders that occurred in 1998. Plaintiff was acquitted of these

crimes after a jury trial. He now charges malfeasance by a number of the individuals who were involved in his prosecution.

Plaintiff claims that in August, 2000, Defendant Potts, a criminalist for the California Department of Justice, authored a forensic laboratory report containing false statements. Specifically, Plaintiff alleges the report stated that a paint sample found on a knife at the crime scene visually had the same sequence of colored layers as a paint sample collected from Plaintiff's residence, but did not disclose that the paints may have been chemically different.

Mr. Potts allegedly colluded with Defendant Casey, a deputy district attorney, and Defendant Davidson, a detective with the Sonoma County Sheriff's Department, to present a declaration containing the false evidence described above to a magistrate in May, 2002 to secure a warrant for Plaintiff's arrest. Plaintiff claims that Mr. Casey and Mr. Davidson omitted exculpatory evidence from the declaration, and included fabricated evidence. Plaintiff was arraigned in mid-May, 2002. County Defs.' Req. for Judicial Notice (RJN), Ex. B at 3.[1]

On October 30, 2002, the superior court ordered the prosecution to produce "any and all notes pertaining to forensic tests or analyses performed in this case" to Plaintiff's attorney. See Pl.'s Opp'n Ex. 39 at 9; Third Am. Compl. ¶¶ 46-47; County Defs.' RJN, Ex. B at 3. On the same day, Mr. Casey telephoned Mr. Potts to notify him that Plaintiff's attorney would be requesting Mr. Potts' bench notes, which contained Mr. Potts' raw observations

---

[1] The Court grants the Requests for Judicial Notice by County Defendants and Mr. Potts (Docket Nos. 168 & 172).

and data. See Pl.'s Opp'n Ex. 33 at 3; Pl.'s Opp'n Ex. 36 at 77. Mr. Potts, however, produced only approximately one-third of his bench notes to Plaintiff's attorney. See Pl.'s Opp'n Ex. 39 at 4-18; Jacobs Decl. Ex. B (Potts' memorandum to Casey). Mr. Potts claimed that he believed the public defender's office did not request his entire set of notes. See Pl.'s Opp'n Ex. 39 at 10. In a memorandum written by Mr. Potts at the same time he sent his bench notes to the public defender's office, Mr. Potts informed Mr. Casey that he needed to perform additional tests on the paint in order to confirm the match between the paint on the knife and the paint retrieved from Plaintiff's residence. See Pl.'s Opp'n Ex. 36 at 6; Jacobs Decl. Ex. B. Plaintiff alleges that these actions show that Mr. Casey and Mr. Potts concealed the infirmity in the forensic report. See Pl.'s Opp'n at 9-11; Pl.'s Opp'n Ex. 39 at 4-18.

On November 15, 2002, Mr. Potts provided the following testimony at Plaintiff's first preliminary hearing, which Plaintiff alleges was false:

> [T]he paint on the knife matches the paint on the other two items [from Plaintiff's residence], not only in color, but also layer sequence and type of paint. . . . [W]e're talking about separate layers and four different colored layers as well. And also the paint on this is the architectural type paint in that it's different in chemical composition from paint that you would find like, for instance, on automobiles and things of that nature. . . . It not only matches in color, in other words, the color of the paint on People's 13 and 12 is the same as the paint on the knife, but also it's the layer sequence, and the colors of each of those layers is the same that appears on the knife [and] matches the same chemical composition of each one of those layers that you can see on People's 12 and 13.

Pl.'s Opp'n Ex. 69 at 172. Mr. Potts also testified at the hearing that the odds were at least "a million to one" that the paint would

match. Id. at 173-74. Plaintiff was held to answer the charges.

Plaintiff claims that Mr. Potts' testimony was based on an obsolete and inapplicable article on paint comparison (the Wales study), and that Mr. Potts was aware of this fact and the consequent weakness in his testimony. Had Mr. Potts' undisclosed bench notes been provided, Plaintiff claims, he would have been able to demonstrate the unreliability of Mr. Potts' testimony.

On January 27, 2004, Mr. Potts sent Defendant Jacobs, who by that time had taken over the prosecution of the case from Mr. Casey, a letter in which he admitted to "over-simplifying" his testimony regarding the examination he had performed on the paint samples. In particular, the letter stated:

> My response [at the preliminary hearing] implies that I conducted a chemical analysis of the paint on the molding. In fact, I had only performed a microscopical computation of the paint on the knife with the paint on the molding.
>
> Furthermore, in reviewing the transcript, it could be interpreted that I performed an analysis on each individual colored layer of paint on the knife. In fact, because the paint on the knife was in the form of a smear, I was unable to fully separate the paint transfers into distinct individual layers; and therefore, analysis was conducted on more than one layer at the time.

Jacobs Decl. Ex. A.

On March 8, 2004, Plaintiff moved to dismiss the charges against him based on "recently discovered misrepresentations made by senior criminalist Michael Potts of the California Department of Justice at the preliminary examination." County Defs.' RJN Ex. B at 13 (Docket No. 168.) This motion was denied. Plaintiff renewed his motion to dismiss in May, 2004 based on the prosecution's failure to disclose all of Mr. Potts' bench notes before the first

preliminary hearing. See id. at 30; County Defs.' RJN Ex. D 110:27-111:8; Jacobs Decl. Ex. B. In ruling on Plaintiff's renewed motion to dismiss, the presiding judge reviewed the entirety of the evidence presented at the preliminary hearing. She found that Mr. Potts' testimony was central to the prosecution's case:

> [U]pon weighing all the evidence, the evidence produced at the preliminary hearing and considering the undisclosed evidence and the effect of the undisclosed evidence and the effect of the testimony of Mr. Potts, this Court finds that there is a reasonable probability that the magistrate would not have found probable cause [in the absence of Mr. Potts' testimony].
>
> The Court finds that the exculpatory value of the suppressed evidence outweighs the possible incriminating evidence presented against the defendant at the preliminary hearing.
>
> But during one of the arguments that [Mr. Rutledge's counsel] made that this Court finds compelling, it's not only what wasn't produced, it's what was produced.
>
> I think there's sufficient reason for this Court to turn over the preliminary hearing based upon what was not produced, but I'm more concerned about what was produced, and the effect of having this marginal testimony remaining and the effect of Mr. Potts' statement that based upon all of his analysis it was a million to 1 that all of these layers matched. It had to have had an unbelievable -- well, completely believable effect upon the magistrate, and it completely outweighs the rest of this evidence so the Court is granting the motion.

Pl.'s Opp'n Ex. 39 at 32-33.

Accordingly, the case was dismissed on June 14, 2004. The next day, the prosecution filed another complaint against Plaintiff. In March, 2006, a second preliminary hearing was held, at which Mr. Potts did not testify. Plaintiff was again held to answer. The action proceeded to trial, after which Plaintiff was acquitted.

United States District Court
For the Northern District of California

PROCEDURAL HISTORY

Plaintiff filed a third amended complaint on July 29, 2008 alleging twelve causes of action. (Docket No. 49.) On September 26, 2008, this Court dismissed with prejudice Plaintiff's first (state law intentional/negligent infliction of emotional distress), third (state law false arrest), fourth (state law false imprisonment) and ninth (state law violation of constitutional rights) causes of action against Defendant Potts. (Docket No. 60.) The September, 2008 order also dismissed with prejudice Plaintiff's twelfth cause of action for state law malicious prosecution against all Defendants. Id.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an

essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id. at 1103.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." See id.

DISCUSSION

I. Immunity

A. Absolute Immunity for Prosecutor Defendants

County Defendants assert that the prosecutor Defendants (Casey, Jacobs, Cook, Passalacqua and Mullins) are absolutely immune from liability for Plaintiff's claims because their actions

United States District Court
For the Northern District of California

related to the criminal prosecution of Plaintiff.[2] County Defendants assert absolute immunity under federal case law and state statutes. Plaintiff contends that prosecutor Defendants are not absolutely immune because their conduct was investigative, served a police function or was otherwise non-judicial (e.g., the fabrication of evidence).

1. Federal and State Prosecutorial Immunities

Under federal law, absolute immunity bars claims for damages against prosecutors performing "quasi-judicial" functions. Broam v. Bogan, 320 F.3d 1023, 1029 (9th Cir. 2003). The party asserting absolute immunity bears the burden of establishing that it is warranted. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993). Courts generally apply federal absolute prosecutorial immunity only to federal claims. See, e.g., Cousins v. Lockyer, 568 F.3d 1063 (9th Cir. 2009); Rosenthal v. Vogt, 229 Cal. App. 3d 69 (1991).

"[I]n deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must first determine whether a prosecutor has performed a quasi-judicial function. If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights." Broam, 320 F.3d at 1029 (internal citation omitted); see Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993). For example, a prosecutor is absolutely immune from liability for filing an information or motion, see Kalina v. Fletcher, 522 U.S. 118, 129 (1997), "for failure to

[2] County Defendants do not claim absolute immunity for the state defamation claim against Defendant Cook.

investigate the accusations against a defendant before filing charges," "for the knowing use of false testimony at trial," for his or her decision not to preserve or turn over exculpatory material in violation of Brady v. Maryland, 373 U.S. 83 (1963), and "for gathering additional evidence after probable cause is established or criminal proceedings have begun," Broam, 320 F.3d at 1029-30.

If a prosecutor performs administrative or investigatory functions, however, he or she is entitled to only qualified, not absolute, immunity. See Van de Kamp v. Goldstein, ___ U.S. ___, 129 S. Ct. 855, 861 (2009); Kalina, 522 U.S. at 125-29. Prosecutors are not absolutely immune, for example, when they take part in the preliminary gathering of evidence that may ripen into a potential prosecution, fabricate evidence or make out-of-court statements in a press conference. See Buckley, 509 U.S. at 273-77. Nor are prosecutors absolutely immune when they give advice to the police in the investigative phase of a criminal case before trial, see Burns v. Reed, 500 U.S. 478, 495-96 (1991), or act as a complaining witness by preparing a declaration in support of an arrest warrant, see Kalina, 522 U.S. at 129-30; Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999).

California Government Code § 821.6 states, "A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Immunity under § 821.6 covers "actions taken in preparation for formal proceedings, including investigation, which is an essential step toward the institution of formal proceedings."

Paterson v. City of Los Angeles, 175 Cal. App. 4th 1393, 1405 (2009) (citation omitted). It also applies to government employees in malicious prosecution cases involving "the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff." Sullivan v. County of Los Angeles, 12 Cal. 3d 710, 720 (1974). The immunity extends to emotional distress claims to the extent that the conduct challenged involves the institution of formal proceedings. Amylou R. v. County of Riverside, 28 Cal. App. 4th 1205, 1209-10 (1994).

Section 821.6 does not apply, however, to false arrest or false imprisonment claims where the employee "knowingly imprison[s] a person without proper legal authority." Sullivan, 12 Cal. 3d at 720; see also Asgari v. City of Los Angeles, 15 Cal. 4th 744, 752 (1997). A public employee is not shielded from liability where the "public employee [takes] a very active role in actually securing the arrest warrant and [participates] in having it served by a fellow [public employee] under his own authority." Harden v. S.F. Bay Area Rapid Transit Dist., 215 Cal. App. 3d 7, 17 (1989). State false arrest and imprisonment claims arising out of criminal prosecutions may challenge only conduct preceding the suspect's arraignment. Asgari, 15 Cal. 4th at 757-58. In other words, § 821.6 does not immunize a public employee from false arrest and imprisonment claims for knowing misconduct occurring before a suspect's arraignment. See id.; see also County of Los Angeles v. Superior Court, 78 Cal. App. 4th 212, 221 (2000). State law immunities do not apply to federal constitutional claims. See Asgari, 15 Cal. 4th at 758 n.11.

2. Defendant Casey

Plaintiff challenges Defendant Casey's conduct before Plaintiff's May, 2002 arrest, before the first preliminary hearing in November, 2002 and during the first preliminary hearing. As a deputy district attorney, Mr. Casey assumed responsibility for the double homicide in the summer of 2001 before Plaintiff was arrested. Casey Decl. ¶¶ 4-5. Mr. Casey has not been involved in the prosecution of Plaintiff since "shortly after" the November, 2002 preliminary hearing. Casey Decl. ¶ 5.

Plaintiff alleges that Defendant Casey colluded with Defendants Davidson and Potts to present a declaration containing false evidence to a magistrate in order to secure a warrant for Plaintiff's arrest. Plaintiff alleges these Defendants also omitted exculpatory evidence from the warrant. Plaintiff further alleges that Mr. Casey, along with Mr. Potts, withheld exculpatory evidence before the preliminary hearing and conspired to present false testimony from Mr. Potts at the preliminary hearing.

a. Before Plaintiff's May, 2002 Arrest

Plaintiff argues that, before Plaintiff's arrest, Mr. Casey was acting as an investigator, not as a prosecutor, because he had conversations and meetings with Mr. Davidson and then Detective Bradford Burke, asked Mr. Davidson to prepare a synopsis and requested that Mr. Davidson or Mr. Burke conduct interviews with witnesses. The pre-arrest conduct that Plaintiff challenges is that the arrest declaration contained false information and Mr. Casey knew of the falsity when the declaration was presented to the magistrate. However, Plaintiff presents no evidence that Mr. Casey fabricated evidence or instructed Mr. Davidson to include witness

statements that Mr. Casey knew were false. Nor is there evidence from which a jury could infer that Mr. Casey had knowledge of any falsity. For this conduct, the Court need not determine whether federal or state immunities apply because Plaintiff has not presented evidence that Mr. Casey had knowledge of any falsity in the arrest warrant declaration.

b. Before November, 2002 Preliminary Hearing

Plaintiff claims that Mr. Casey acted as an investigator, not a prosecutor, before the November, 2002 preliminary hearing because he participated in an interview of James Larry Lewis Jr. just prior to the preliminary hearing. Pl.'s Opp'n Ex. 44 at 122-23. He also spoke with other witnesses in preparation for the preliminary hearing. See Pl.'s Opp'n Ex. 36 at 90 (Davidson Testimony, May 19, 2004).

Mr. Casey also had several conversations and meetings with Defendant Potts in the weeks before the preliminary hearing. Pl.'s Opp'n Ex. 36 at 58-64 (Casey Testimony, May 19, 2004). After these interactions, Mr. Potts only produced approximately one-third of his bench notes to Plaintiff's attorney, despite the superior court's order requiring the prosecution to disclose all relevant notes. As noted above, the superior court's dismissal of the case against Plaintiff was based in part on the prosecution's failure to disclose exculpatory evidence, including Mr. Potts' complete bench notes. See Pl.'s Opp'n Ex. 39. Mr. Potts' and Mr. Casey's versions of the circumstances of the withholding of the bench notes are conflicting. See Pl.'s Opp'n Ex. 39 at 9-17 (summary of both versions); see also Pl.'s Opp'n Ex. 36 (Potts testimony, May 19, 2004).

Nonetheless, Mr. Casey's conduct before the first preliminary hearing was related to the judicial process because it was undertaken in preparation for the preliminary hearing. Mr. Casey is therefore entitled under federal law to absolute immunity on the federal claims based on such conduct, including any failure to disclose exculpatory evidence, even if his conduct violated Plaintiff's rights. See Buckley, 509 U.S. at 272-73; Broam, 320 F.3d at 1029-30. Moreover, he is also entitled under California Government Code § 821.6 to immunity on the state law malicious prosecution, emotional distress and civil rights claims. Mr. Casey cannot be held liable for state law false arrest and imprisonment because these claims do not apply to conduct that followed Plaintiff's May, 2002 arraignment. See Asgari, 15 Cal. 4th at 757 (holding that a claim of false arrest and imprisonment applies to conduct before arraignment).

c. November, 2002 Preliminary Hearing

Mr. Casey was the prosecutor who handled the November, 2002 preliminary hearing. He examined multiple witnesses at the preliminary hearing, including Mr. Potts, Mr. Davidson and Mr. Lewis Jr. Mr. Casey is entitled to absolute immunity under federal and state law against any claims for his conduct at the preliminary hearing, even if he conspired to elicit and did elicit false testimony, because it was part of the judicial process after criminal proceedings began. See Broam, 320 F.3d at 1029-30; Cal. Gov. Code § 821.6.

Accordingly, summary judgment is granted on Plaintiff's federal and state law claims against Defendant Casey on the basis of federal and state immunities and lack of evidence.

3. Defendant Jacobs

Plaintiff contends that Assistant District Attorney Jacobs' conduct was investigative when he interviewed new witnesses or directed Mr. Davidson to interview witnesses, and concealed exculpatory evidence. However, Plaintiff presents no evidence that Mr. Jacobs fabricated evidence, concealed exculpatory evidence or presented false testimony. Further, Mr. Jacobs became involved in this matter in 2003, after the first preliminary hearing and during pretrial motion practice. See Jacobs Decl. ¶ 3.

Due to his prosecutorial role, Mr. Jacobs is entitled under federal law to absolute immunity against any federal claims for damages for his conduct, even for any alleged Brady violation, because it was part of the judicial process after criminal proceedings began. See Broam, 320 F.3d at 1029-30. Mr. Jacobs is also entitled under California Government Code § 821.6 to immunity from state law claims related to this conduct. Even if he were not immune, summary judgment would nonetheless be proper because Plaintiff failed to present evidence of Mr. Jacobs' wrongdoing. Thus, summary judgment is granted as to all federal and state law claims against Defendant Jacobs.

4. Defendant Cook

In the third amended complaint, the only conduct by Defendant Cook that Plaintiff challenges is her out-of-court statements during a radio broadcast. County Defendants do not claim absolute immunity for the state defamation claim against Defendant Cook.

In his opposition, however, Plaintiff challenges other conduct by Ms. Cook. Plaintiff asserts that Ms. Cook, with Mr. Jacobs and Mr. Passalacqua, filed a new complaint against Plaintiff despite

knowing that Tyson McLain committed the murders. He claims that her conduct was investigatory, not prosecutorial, because she and Kris Allen re-interviewed James Larry Lewis Sr. The filing of the second complaint and the re-interview of Mr. Lewis Sr. occurred during the criminal proceedings. Even if Ms. Cook were involved in filing the second complaint and re-interviewing Mr. Lewis Sr. during the proceedings, she is entitled under federal law to absolute immunity against any claims for damages for this conduct because it was part of the judicial process. See Kalina, 522 U.S. at 129 (absolute immunity for filing information); Broam, 320 F.3d at 1029-30. Ms. Cook is entitled under § 821.6 to immunity for state law claims because this conduct involved the prosecution of a criminal case in court. Moreover, even if these immunities did not apply, Plaintiff has provided no evidence showing intentional misconduct on the part of Ms. Cook. Summary judgment is granted as to all federal and state law claims against Ms. Cook. The defamation claim against Ms. Cook is discussed below.

5. Supervisor District Attorney Defendants Passalacqua and Mullins

Plaintiff alleges that the District Attorney, Defendant Passalacqua, and the former District Attorney, Defendant Mullins, failed to establish procedures to ensure communication of all relevant information on each case to every lawyer, to supervise or train prosecutors to disclose exculpatory evidence and to supervise or train prosecutors to refrain from using perjured testimony. Third Am. Compl. ¶¶ 78, 80. Plaintiff also claims that these supervisor Defendants enacted and/or maintained policies that established discovery procedures which interfered with the

disclosure of exculpatory evidence. Id. at ¶¶ 79, 81.

County Defendants argue that supervisor Defendants Passalacqua and Mullins are entitled to absolute immunity for any lack of supervision or failure to establish procedures for conduct intimately related to the judicial phase of the criminal process. Plaintiff does not respond to the County Defendants' argument in his opposition. The claims against Defendant Mullins have already been dismissed (Docket No. 220).

The Supreme Court recently held that supervisor prosecutors were entitled to absolute immunity for claims that the prosecution failed to disclose impeachment material due to the supervisors' failure to train properly, supervise and establish an information system regarding impeachment material. Van de Kamp v. Goldstein, ___ U.S. ___, 129 S. Ct. 855, 861-62 (2009). Though the plaintiff was challenging the District Attorney's administrative procedures, the Supreme Court reasoned that absolute immunity extended to "administrative obligation[s]" that are "directly connected with the conduct of a trial." Id. at 862. The Court further noted that the challenged acts "necessarily require legal knowledge and the exercise of related discretion." Id.

Under Van de Kamp, supervisor Defendant Passalacqua is entitled under federal law to absolute immunity for Plaintiff's federal claims because the disclosure of exculpatory evidence and use of perjured testimony are "directly connected with the conduct of a trial" and "require legal knowledge and the exercise of related discretion." See id. Mr. Passalacqua also is entitled to immunity under California Government Code § 821.6 for Plaintiff's state law claims because his conduct related to his prosecution of

United States District Court
For the Northern District of California

a criminal case in court. Summary judgment is granted as to all federal and state law claims against Defendant Passalacqua.

B. Qualified Immunity For Defendant Davidson

County Defendants argue that Defendant Davidson is entitled to qualified immunity. Plaintiff responds that Mr. Davidson is not entitled to qualified immunity because he ignored exculpatory evidence that would negate a probable cause finding and the arrest warrant was based on false evidence he fabricated.

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The Court need not reach the question of qualified immunity because Plaintiff presents no evidence of wrongdoing by Mr. Davidson. Plaintiff makes § 1983 and state law claims of false arrest, false imprisonment and malicious prosecution by Defendant Davidson in violation of the Fourth Amendment. Plaintiff also claims that Mr. Davidson withheld exculpatory evidence during the criminal proceedings in violation of Plaintiff's due process rights. Third Am. Compl. ¶¶ 187-93. Plaintiff's claims are based on allegations that Defendant Davidson submitted a false declaration in support of the arrest warrant, fabricated evidence, and withheld exculpatory evidence. There is no evidence from which

a jury could reasonably infer that Mr. Davidson's declaration was false, that he fabricated evidence or that he withheld exculpatory evidence during the criminal proceedings. Plaintiff's conclusory statements and hypotheses do not constitute evidence.

Plaintiff contends that Mr. Davidson's declaration was false because it referred to Mr. Potts' August, 2000 report which was false. Mr. Davidson's declaration described Mr. Potts' report, including language from the report. County Defs.' RJN Ex. A at 20; Potts' Decl. Ex. A. Plaintiff has not submitted evidence that Mr. Davidson knew of the alleged falsity of Mr. Potts' report at the time of his May, 2002 declaration.

Plaintiff alleges that Mr. Davidson misrepresented Plaintiff's alibi in the arrest warrant declaration by including statements suggesting that Plaintiff had said that he was with two individuals at the same time on the evening before the discovery of the murders, and that the two individuals said they had not been together. Plaintiff claims that he told Mr. Davidson that he spent time with these two individuals that evening, not that both individuals were with him together. In his declaration, Mr. Davidson did not state that Plaintiff said that he was actually with these two individuals at the same time that evening. County Defs.' RJN Ex. A at 17, 19-20. At most, Mr. Davidson reported that the two individuals had been asked whether they were with Plaintiff at the same time. This does not amount to evidence that the arrest warrant declaration was false.

Plaintiff also asserts that Mr. Davidson fabricated the date of Debbie Becker's statements in his arrest warrant declaration. Plaintiff argues that Mr. Davidson falsely declared that she made

certain statements in October, 1998.  In July, 1999, the Sheriff's Department issued a press release announcing a reward in the case. Plaintiff hypothesizes that Mr. Davidson lied about the date of Ms. Becker's first statements in order to misrepresent that she made them before the reward was announced.  This hypothesis is unsupported.

Plaintiff further asserts that statements by Mr. Lewis Sr. described in Mr. Davidson's declaration were not reliable because Mr. Lewis Sr. later made inconsistent statements in his interview with Ms. Cook.  But there is no evidence that Mr. Davidson knew at the time his declaration was presented to the magistrate in May, 2002 that the statements by Mr. Lewis Sr. were unreliable; Mr. Lewis Sr. made the inconsistent statements after 2002.

Plaintiff has failed to present any evidence that Mr. Davidson engaged in conduct resulting in Plaintiff's false arrest, false imprisonment or malicious prosecution.  Nor is there evidence from which a jury could reasonably infer such misconduct.  Accordingly, summary judgment is granted as to all § 1983 and state law claims against Mr. Davidson.  Further, without evidence of Mr. Davidson's misconduct, there is likewise no evidence that Mr. Davidson intentionally or negligently inflicted emotional distress upon Plaintiff or denied Plaintiff a fair trial or due process.  Thus, summary judgment is granted as to all federal and state law claims against Mr. Davidson.[3]

---

[3] County Defendants also assert immunity for Mr. Davidson from state law claims under California Civil Code § 43.55 and California Penal Code § 847(b)(1).  California Civil Code § 43.55 provides immunity from liability to "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the

United States District Court
For the Northern District of California

C. Absolute Immunity for Defendant Potts

Mr. Potts argues that he is entitled to absolute immunity for his testimony at the preliminary hearing and his alleged involvement in withholding material evidence. Plaintiff appears to contend that there is no immunity for conspiracies where conduct in addition to the false testimony is challenged. Neither party is entirely correct.

A witness has absolute immunity from civil liability for his or her testimony, including false testimony, and from allegations of conspiracy to commit perjury. Franklin v. Terr, 201 F.3d 1098, 1099, 1101-02 (9th Cir. 2000); see Briscoe v. LaHue, 460 U.S. 325, 329-31 (1983). But this immunity is limited. It "does not shield non-testimonial conduct" or shield conduct not "inextricably tied" to the testimony, such as fabricating or tampering with evidence, or "effort[s] to keep certain witnesses or physical evidence from the opposing party." Paine v. City of Lompoc, 265 F.3d 975, 981-82 (9th Cir. 2001); see Cunningham v. Gates, 229 F.3d 1271, 1291 (9th Cir. 2000). A witness is not "insulated from liability" for all of his or her conduct simply because of his or her role as a witness. Paine 265 F.3d at 982.

Therefore, to the extent that Plaintiff's claims are based on Mr. Potts' testimony at the preliminary hearing, even if that

---

reasonable belief that the person arrested is the one referred to in the warrant." California Penal Code § 847(b)(1) provides peace officers and law enforcement officers with immunity from liability for false arrest or false imprisonment when "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." There is no evidence showing that Mr. Davidson acted with malice or without a reasonable belief that the arrest was lawful. Thus, Mr. Davidson would also be immune from Plaintiff's state law claims.

testimony was false as Plaintiff alleges, Mr. Potts is entitled to absolute immunity. Mr. Potts is also entitled to absolute immunity from allegations of a § 1983 conspiracy to commit perjury during his testimony. Mr. Potts is not, however, entitled to absolute immunity from Plaintiff's § 1983 claims for any non-testimonial conduct or conduct not "inextricably tied" to his testimony at the preliminary hearing, including allegations of falsifying his August, 2000 report or withholding potentially exculpatory evidence, or conspiring to falsify or withhold evidence.

There may be disputed evidence as to Plaintiff's § 1983 false arrest and imprisonment, malicious prosecution and conspiracy claims against Mr. Potts based on the allegations that he falsified his report and withheld exculpatory evidence. However, Plaintiff cannot pursue the § 1983 false arrest and imprisonment and malicious prosecution claims because collateral estoppel applies, as discussed below. Further, any disputed evidence regarding Mr. Potts' conversations with Mr. Casey, even viewed in the light most unfavorable to Mr. Potts, is insufficient to surmount summary judgment on the § 1983 conspiracy claim against him. See Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983). There, the Ninth Circuit affirmed a grant of summary judgment on the plaintiff's § 1983 conspiracy claim when the plaintiff failed to provide sufficient evidence showing that the defendants had a "meeting of the minds" to violate her civil rights. Id. "Mere acquiescence" is insufficient to show the requisite agreement. Id. The evidence that Defendants Potts and Casey communicated, without more, is insufficient to amount to evidence that they agreed to violate Plaintiff's rights. Accordingly, summary judgment is granted on

United States District Court
For the Northern District of California

Plaintiff's § 1983 conspiracy claim against Defendant Potts.

## II. Collateral Estoppel Regarding Probable Cause to Arrest and Probable Cause to Prosecute

Plaintiff must establish lack of probable cause to arrest to support his § 1983 claims based on false arrest and imprisonment and a lack of probable cause to prosecute to support his § 1983 malicious prosecution claim. See Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (false arrest and imprisonment); Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (malicious prosecution).

County Defendants contend that collateral estoppel bars Plaintiff from relitigating probable cause to arrest because findings of probable cause were made by the state court judge, at the second preliminary hearing to hold Plaintiff for trial[4] and in rulings on various motions in the criminal proceedings. Plaintiff responds that, because a magistrate's finding of probable cause at a preliminary hearing to hold a defendant for trial is not necessarily a finding that there was probable cause to arrest, litigation of probable cause to arrest is not barred.

County Defendants contend that collateral estoppel likewise bars Plaintiff from relitigating probable cause to prosecute.

---

[4] The probable cause finding to hold Plaintiff at the first preliminary hearing in November, 2002 is not at issue here. In June, 2004, the trial court granted Plaintiff's non-statutory motion to dismiss the first complaint. County Defs.' RJN Ex. G; Pl.'s Opp'n Ex. 39. Based on Mr. Potts' undisclosed bench notes, the undisclosed memorandum from Mr. Potts to Mr. Casey regarding the bench notes and Mr. Potts' testimony at the preliminary hearing, the court held that there was a reasonable probability that the magistrate would not have found probable cause to hold Plaintiff to answer at the first preliminary hearing had all of these facts been known. County Defs.' RJN Ex. G at 32; Pl.'s Opp'n Ex. 39 at 32.

United States District Court
For the Northern District of California

Plaintiff did not respond to this basis for summary judgment in his reply.[5]

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003) (quoting Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990)). Under California law, collateral estoppel (or issue preclusion) is applied if (1) the issue sought to be precluded is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party to be estopped was a party to the former proceeding or in privity with a party to the former proceeding. Id.

A probable cause determination at a preliminary hearing is considered a final judgment on the merits because the defendant can immediately appeal the determination. See Haupt v. Dillard,

[5] Mr. Potts did not plead collateral estoppel as an affirmative defense in his answer to Plaintiff's complaint or in his summary judgment motion. Generally, the failure to plead an affirmative defense in the responsive pleading waives the defense. Fed. R. Civ. P. 8(c)(1). However, County Defendants asserted collateral estoppel in their summary judgment motion. (Docket No. 182.) Plaintiff responded to it and did not claim waiver or prejudice. Pl.'s Opp'n 31-33. Although Mr. Potts did not move for summary judgment based on collateral estoppel or join in County Defendants' motion, a federal court may dismiss claims as to non-moving defendants where such defendants are in a position similar to that of moving defendants, or where the claims against all defendants are integrally related. See Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008); Silverton v. Department of the Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981). Thus, the Court may grant summary judgment on the § 1983 false arrest and imprisonment and malicious prosecution claims against Defendant Potts.

17 F.3d 285, 288-89 (9th Cir. 1994);[6] McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1145-46 (1999). In California, an accused can immediately appeal the determination by filing a motion to set aside the preliminary hearing under California Penal Code § 995 and then obtain review of the decision on this motion by filing a writ of prohibition under California Penal Code § 999a. See McCutchen, 73 Cal. App. 4th at 1146. Though Haupt only requires that a determination be immediately appealable for the purposes of finality, Plaintiff actually appealed the determination through a motion to set aside the preliminary hearing under California Penal Code § 995. See County Defs.' RJN Ex. X, Ex. C at 34; see also McCutchen, 73 Cal. App. 4th at 1146. This motion was denied, thereby affirming the probable cause determination.

A determination cannot be considered final when "the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials." Awabdy, 368 F.3d at 1068. Awabdy is not applicable here because the decision to hold Plaintiff to answer at the second preliminary hearing was not based on fabricated evidence or other wrongful conduct. Mr. Potts' allegedly false and misleading testimony was made during the first preliminary hearing and the prosecution did not offer Mr. Potts as a witness in the second preliminary hearing. By the time of the second preliminary hearing, Plaintiff had the opportunity to review the exculpatory evidence that had been withheld at the time

[6] The Haupt court applied Nevada law of collateral estoppel. 17 F.3d at 288. Nevada's collateral estoppel law is identical to California's. See McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1145 (1999).

of the first preliminary hearing: Mr. Potts' bench notes and the memorandum from Mr. Potts to Mr. Casey. Thus, the probable cause determination at Plaintiff's second preliminary hearing serves as a final judgment on the issue. Haupt, 17 F.3d at 288-89.

A. False Arrest and Imprisonment Claims

A finding of probable cause to hold at a preliminary hearing may bar relitigation of probable cause to arrest in a subsequent civil action if the evidence at the time the arrest warrant issued is the same as the evidence presented at the preliminary hearing. See Haupt, 17 F.3d at 288-89.

The plaintiff in Haupt argued that a probable cause finding at a preliminary hearing was different from the probable cause to arrest. Id. The court concluded that, because the plaintiff did not identify any evidence presented at the preliminary hearing that was not available to the officers when they obtained the arrest warrant, the finding of probable cause at the preliminary hearing was identical to the issue of probable cause to arrest. Id. A finding of probable cause at a preliminary hearing would not be conclusive as to whether there was probable cause to arrest only if additional evidence, discovered after the arrest, had been presented at the preliminary hearing. Id.

Here, as in Haupt, Plaintiff points to no new inculpatory evidence presented at the second preliminary hearing that was not presented by the County Defendants when they obtained his arrest warrant. Further, the allegedly false information in the arrest warrant declaration was not proffered at the second preliminary hearing and all of the exculpatory information was presented.

Citing Schmidlin v. City of Palo Alto, 157 Cal. App. 4th 728

(2007), Plaintiff urges this Court to not rely on Haupt.  In

Schmidlin, the court stated that the "issue of probable cause to

arrest (or sufficient cause to detain) is simply not the same as --

let alone identical to -- that of sufficient cause to hold the

defendant for trial." Id. at 767 (citation omitted).  However, the

court stated that "an order . . . denying a motion to suppress

evidence on the ground that officers detained the defendant

unlawfully" provides a probable cause determination identical to a

probable cause determination at arrest.  Id. at 768.

Such an order exists here.  Before his second preliminary

hearing, the state court denied Plaintiff's motion to suppress

evidence obtained pursuant to a May 8, 2002 search warrant.  See

County Defs.' RJN, Ex. W at 4; County Defs.' RJN Ex. F 1720:3-17.

Probable cause for the search warrant was supported by the training

and experience of the detective who applied for the warrant, the

incorporation by reference of the declaration in support of the

arrest warrant leading to Plaintiff's initial arrest, and the

applying detective's knowledge that Plaintiff lived at two

different addresses.  County Defs.' RJN Ex. W at 4.  Plaintiff

argued that the search warrant was defective because the arrest

warrant was not supported by sufficient probable cause given the

falsities contained in Mr. Davidson's declaration in support of the

arrest warrant.  Id. at 19.  Under Schmidlin, the denial of

Plaintiff's suppression motion after all of the challenged facts

were litigated provides a determination of probable cause identical

to the determination of probable issue for arrest.  Even under

United States District Court
For the Northern District of California

Schmidlin,[7] collateral estoppel would apply.

Thus, the determination that the unchallenged inculpatory evidence at the second preliminary hearing amounted to probable cause to hold for trial, even in the light of the exculpatory evidence, amounts to a determination that the same inculpatory evidence was sufficient to support the arrest warrant. Haupt, 17 F.3d at 289. Collateral estoppel therefore bars Plaintiff from relitigating the issue of probable cause to arrest, and summary judgment must be granted on Plaintiff's § 1983 false arrest and imprisonment claims against Mr. Potts.

B. Malicious Prosecution Claim

Under the analysis discussed above, because the state court proceedings in the second preliminary hearing provided a final determination that there was probable cause to prosecute, collateral estoppel bars Plaintiff from relitigating this issue in connection with his malicious prosecution claim. Plaintiff provided no argument or evidence disputing County Defendants' argument on this point. Summary judgment is therefore granted as to Plaintiff's § 1983 claim for malicious prosecution against Mr. Potts.

III. Entity Liability for 42 U.S.C. § 1983 Claims

In their reply, the County Defendants assert for the first time that under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978), Plaintiff has failed to present evidence

[7] The Court does not decide whether Schmidlin is controlling California law. Schmidlin conflicts with McCutchen, and the California Supreme Court has not spoken on this issue. Because the McCutchen court primarily relies upon Haupt for its analysis, McCutchen offers no support for Plaintiff's position. See McCutchen, 73 Cal. App. 4th at 1145-47.

of liability against the entity County Defendants (the County, Sheriff's Department and District Attorney's Office) for his § 1983 claims. At the hearing, the Court provided Plaintiff with the opportunity to submit a supplemental brief responding to the County Defendants' Monell argument. (Docket No. 220.) Plaintiff did not do so.

Local governments are "persons" subject to liability under § 1983 only where an official policy or custom causes a constitutional violation. See Monell, 436 U.S. at 690-91. They may not be held vicariously liable for the unconstitutional acts of their employees under the theory of respondeat superior. See Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Plaintiff has not identified or presented evidence of an official policy or custom of any entity Defendant that caused the alleged constitutional violations. Summary judgment is granted as to Plaintiff's § 1983 claims against the entity Defendants.

IV. Claims under 42 U.S.C. § 1985

Plaintiff appears to assert a conspiracy claim under both § 1985(3) for deprivation of Plaintiff's rights and § 1985(2) for obstruction of justice in state court. See Third Am. Compl. ¶¶ 176-79. Mr. Potts contends that Plaintiff has not sufficiently plead a conspiracy claim under § 1985(3) because Plaintiff does not

United States District Court
For the Northern District of California

allege or provide evidence that the conspiracy was based on his race or gender.  Plaintiff did not respond to Mr. Potts' argument in his opposition.

To state a claim under § 1985(3), a plaintiff must allege a conspiracy to deprive him or her of a right, motivated by racial or other class-based discrimination, and the plaintiff must be a member of the protected class.  McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990), amended on denial of rh'g and rh'g en banc (9th Cir. 1992); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002).

"Section 1985(2) contains two clauses that give rise to separate causes of action."  Portman v. County of Santa Clara, 995 F.2d 898, 908 (9th Cir. 1993).  The first clause concerns access to federal courts and the second clause concerns access to state or territorial courts.  Id. at 909.  Plaintiff's § 1985(2) claim is based on the alleged obstruction of justice in state court.  Like a § 1985(3) claim, a claim under § 1985(2) for obstruction of justice in state court requires allegations of class-based discrimination.  See id.

Plaintiff's conspiracy claims under § 1985(3) and § 1985(2) fail as a matter of law because he has not alleged or provided evidence of discrimination based on his membership in a protected class.  The Court grants summary judgment against Plaintiff on his § 1985 claims against all Defendants.[8]

---

[8] Though County Defendants did not move for summary judgment on Plaintiff's § 1985 claim, summary judgment is nonetheless proper.  See n.4 above.

V. State Law Defamation Claim

After Plaintiff was acquitted, a local radio station interviewed Plaintiff's counsel and his mother. Ms. Cook called the radio station during this interview and made statements that were broadcast. Cook Decl. ¶¶ 4-8. In his defamation claim, Plaintiff challenges two statements by Ms. Cook. First, Ms. Cook stated that Plaintiff was not found innocent and that "finding a person not guilty, does not mean they are innocent." Third Am. Compl. ¶ 87 (Docket No. 49.) No defamation claim can be based on this statement because it is true. See Cal. Civil Code § 46 (slander must be false). Plaintiff was not "found innocent"-- he was, in fact, found not guilty.

Second, Ms. Cook stated that Plaintiff took a valid polygraph examination and "failed it miserably, the worst results that [the] Department of Justice Examiner had ever seen in her career." Third Am. Compl. ¶ 87. Plaintiff asserts that Ms. Cook's statement that Plaintiff had failed a valid exam was false because the polygraph exam administered to Plaintiff was invalid and the polygraph examiner and Ms. Cook knew it. Plaintiff has not, however, submitted evidence that Ms. Cook had knowledge of the alleged invalidity of the exam. Plaintiff's conclusory statements and hypotheses are not evidence.

No defamation claim can be based on Ms. Cook's statement reporting the examiner's opinion because there is no evidence that Ms. Cook's statement was false. The evidence shows that the examiner did make that statement of opinion to the prosecutors, see Gomez Decl. ¶ 4; Cook Decl. ¶ 8; Allen Decl. ¶ 3, and Plaintiff presents no evidence that she did not. Ms. Cook was not providing

United States District Court
For the Northern District of California

her own opinion, but describing the examiner's opinion, as stated to her.

Plaintiff's defamation claim is summarily adjudicated in favor of Defendant Cook.[9]

VI. Entity Liability for State Law Claims

Plaintiff asserts various state law claims against the entity County Defendants, apparently under a respondeat superior theory.

California Government Code § 815.2(b) states, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Thus, a public employer is immune from liability if its employee is immune under § 821.6. See, e.g., Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1050 (2007).

To the extent that individual County Defendants Casey, Jacobs, Cook, and Passalacqua are granted immunity under California Government Code § 821.6, the entity County Defendants are also immune from liability for claims based on their conduct. See Cal. Gov. Code § 815.2(b). The entity County Defendants cannot be liable for Defendants Davidson's and Casey's conduct on Plaintiff's state law civil rights, false arrest and imprisonment and emotional distress claims because Plaintiff failed to show evidence of Mr. Davidson's and Mr. Casey's liability. Accordingly, summary judgment is granted as to all state law claims against the entity County Defendants.

---

[9] Because the defamation claim is summarily adjudicated in favor of Defendant Cook, the Court does not examine County Defendants' state law immunity arguments with regard to that claim.

VII. Evidentiary Objections

To the extent that the Court relied upon evidence to which Defendants object, those objections are overruled. Defendants object to several of Plaintiff's exhibits on the basis of authentication and foundation. The Court notes that almost all of Plaintiff's exhibits are documents that were produced by Defendants to Plaintiff during discovery. See Lerman Decl. (Docket No. 211.) Defendants have not suggested any reason to believe that the documents they produced are not authentic.

To the extent the Court did not rely on evidence to which the parties objected, the objections are overruled as moot.

CONCLUSION

For the foregoing reasons, Mr. Potts' motion for summary judgment (Docket Nos. 171 & 183) and the County Defendants' motion for summary judgment (Docket Nos. 160 & 182) are GRANTED.

1. Summary judgment is granted as to all claims against Defendants Jacobs and Passalacqua based on absolute immunity under federal law and immunity under California Government Code § 821.6, as well as lack of evidence.

2. Summary judgment is granted as to all claims against Defendant Casey based on absolute immunity under federal law, immunity under California Government Code § 821.6 and lack of evidence.

3. Summary judgment is granted as to all claims against Defendant Cook. To the extent that Plaintiff's claims are based on Defendant Cook's conduct related to the second complaint filed against Plaintiff and witness interviews during the criminal proceedings, summary

judgment is granted as to those claims based on absolute immunity and lack of evidence. The defamation claim is summarily adjudicated in favor of Defendant Cook based on a lack of evidence.

4. Summary judgment is granted as to the § 1983 and state law claims against Defendant Davidson because there is no evidence to support them. Mr. Davidson is also entitled under both California Civil Code § 43.55 and California Penal Code § 847(b)(1) to immunity from liability for Plaintiff's state law claims.

5. To the extent that Plaintiff's § 1983 claims against Mr. Potts are based on Mr. Potts' testimony at the preliminary hearing, summary judgment is granted as to those claims based on absolute immunity. There is no evidence to support Plaintiff's § 1983 conspiracy claim against Mr. Potts. Collateral estoppel bars Plaintiff from relitigating probable cause to arrest and probable cause to prosecute, which prevents him from pursuing his § 1983 claims for false arrest and imprisonment and malicious prosecution. Summary judgment is therefore granted as to Plaintiff's § 1983 claims against Mr. Potts.

6. Summary judgment is granted as to Plaintiff's § 1983 claims against the entity County Defendants under Monell.

7. Summary judgment is granted as to Plaintiff's state law claims against the entity County Defendants under California Government Code § 815.2(b) (for claims based on the conduct of Casey, Jacobs, Cook and Passalacqua)

United States District Court
For the Northern District of California

and for lack of evidence.

8. Summary judgment is granted as to Plaintiff's §§ 1985(2) and 1985(3) conspiracy claims against all Defendants for failure to provide evidence of class-based discrimination.

9. Defendants' objections to Plaintiff's evidence (Docket No. 207) are overruled. Plaintiff's motion to reschedule the summary judgment hearing and reopen discovery (Docket No. 211) is denied as moot.

IT IS SO ORDERED.

Dated: September 22, 2009

CLAUDIA WILKEN
United States District Judge